IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JOSE JUARBE,

                          Plaintiff,        Civil Action No.
                                            9:15-CV-1485 (MAD/DEP)

        v.

JOHN CARNEGIE, *et al.*,

                          Defendants.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

JOSE JUARBE, *Pro se*
14-A-5209
Attica Correctional Facility
P.O. Box 149
Attica, NY 14011

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN       KYLE W. STURGESS, ESQ.
New York State Attorney General  Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

This is a civil rights action brought by *pro se* plaintiff Jose Juarbe, a New York State prison inmate, against three corrections officers employed at the correctional facility in which he was confined at the relevant times, pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff alleges that he was assaulted by multiple corrections officers, including the defendants and, as a result, suffered significant injuries.

Now that discovery in the action is complete, defendants have moved for the entry of summary judgment dismissing plaintiff's claims. In their motion, defendants argue that plaintiff's claims are precluded by both a disciplinary determination finding him guilty of several infractions, including violent conduct and assault on staff, and a criminal conviction, based upon his plea of guilty, of assaulting one of the corrections officers involved in the underlying incident. Defendants further argue that even if plaintiff's disciplinary determination and conviction do not foreclose him from bringing this suit, the court should find that no reasonable factfinder could credit plaintiff's version of the salient events and rule in his favor. For the reasons set forth below, I recommend that defendants' motion be granted.

I.   <u>BACKGROUND</u>[1]

Plaintiff is a prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Dkt. No. 1. While he is currently incarcerated elsewhere, at the times relevant to the events forming the basis of his claims in this action, plaintiff was confined at the Mid-State Correctional Facility ("Mid-State"), located in Marcy, New York. *Id.*

Plaintiff was transferred into Mid-State in or about January or February 2015. Dkt. No. 91-1 at 35. In June 2015, he was assigned to Mid-State's 4A dormitory unit. Dkt. No. 91-1 at 43; *see also* Dkt. No. 91-2 at 2. That unit consists of a series of open rooms, or cubes, each containing a varying number of bunks, a large common area or day room, a common bathroom, and an office or "bubble" in which the unit's dormitory officer is stationed. Dkt. No. 91-5 at 2. Dkt. No. 91-9 at 43-45.

At approximately 11:30 p.m. on the evening of June 24, 2015, Corrections Officer Mark R. Tolman, one of the defendants in this action, observed plaintiff acting furtively in the unit's common area bathroom, and appearing to place an object or item into his right front shirt pocket. Dkt.

---

[1]   In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

No. 91-3 at 4. When Officer Tolman instructed plaintiff to surrender the unknown item or object from his shirt pocket, plaintiff refused and instead reached into the pocket, appeared to retrieve the item or object, and placed his hands behind his back while walking backwards toward one of the bathroom's toilets.[2] *Id.*; *see also* Dkt. No. 91-1 at 46-48. When Officer Tolman attempted to stop plaintiff from flushing the item down the toilet by grabbing his shirt to restrain him, Juarbe pulled away, tearing his own shirt in the process, and flushed the item down the toilet. Dkt. No. 91-3 at 4; Dkt. No. 91-5 at 6-7; Dkt. No. 91-1 at 46-48. At that point, defendant Tolman issued a radio call for assistance, and the unit's inmates returned to their cubes and stood by their bunks. Dkt. No. 91-1 at 49, Dkt. No. 91-5 at 6, 11; Dkt. No. 91-3 at 4. While in his cube, defendant changed his torn shirt.[3] Dkt. No. 91-1 at 48-50.

Corrections Officers John Carnegie and Robert Hart, who are also named as defendants in plaintiff's complaint, responded to defendant Tolman's call for assistance by reporting to housing unit 4A. Dkt. No. 91-3 at 4; Dkt. No. 91-4 at 2; Dkt. No. 91-2 at 2. After their arrival on the scene,

---

[2]    During his deposition, plaintiff identified the unknown object or item as a cigarette. *See* Dkt. No. 91-1 at 46-48.

[3]    As will be seen, plaintiff has given contradictory statements regarding whether he changed his torn shirt after returning to his cube, at one point denying that he did so, while at another admitting that he did. *See* pp. 21-22, *post*.

those officers, together with Officer Tolman, escorted plaintiff out of the 4A unit and into a hallway leading to the building exit and to the entrances to three similar dormitory units. Dkt. No. 91-3 at 4; Dkt. No. 91-4 4; Dkt. No. 91-2 at 2. The three officers intended to perform a frisk search of plaintiff for weapons and contraband, and to place Juarbe in mechanical restraints and escort him into the facility's special housing unit ("SHU") to await a disciplinary hearing concerning his refusal to comply with defendant Tolman's orders.[4] Dkt. No. 91-2 at 2; Dkt. No. 91-5 at 6, 11.

In preparation for the pat frisk, plaintiff was ordered to face a wall of the hallway, with his hands against the wall, an order with which he initially complied. Dkt. No. 91-1 at 56; Dkt. No. 91-2 at 2; Dkt. No. 91-3 at 4. According to defendant Carnegie, who was standing behind plaintiff, the officer placed his hand on plaintiff's back, at which point Juarbe abruptly turned and threw his left elbow violently into the officer's face and nose, causing the officer to fall backwards. Dkt. No. 91-3 at 4; Dkt. No. 91-4 at 4; Dkt. No. 91-2 at 2.

According to defendants, at this point plaintiff turned away from the wall toward defendants Hart and Tolman and attacked those officers with

---

[4]    Pat frisks of inmates are performed in the outer hallway to prevent interference from other inmates and to protect the officers performing them. Dkt. No. 91-1 at 136-37.

5

closed fist punches. Dkt. No. 91-3 at 4; Dkt. No. 91-4 at 4; Dkt. No. 91-2 at 2-3. While the officers attempted to restrain plaintiff, stop his assault, and secure his arms and legs, he repeatedly refused to comply with the orders to stop his assault and resume his place on the wall. *Id.*

During the course of the altercation, according to defendants, plaintiff attempted to wrestle defendant Carnegie's baton away from him after the officer struck him twice in the lower leg with the baton in an effort to end the assault and regain control over plaintiff. Dkt. No. 91-3 at 4; Dkt. No. 91-2 at 3-4. When defendant Carnegie pulled his baton out of plaintiff's grasp, Juarbe fell to the ground where defendants Hart and Tolman were able to secure him in body holds and place him in mechanical restraints. *Id.*

In his response to defendants' statement of undisputed material facts pursuant to Local Rule 7.1(a)(3), plaintiff denies striking defendant Carnegie and the other two officers as well as resisting their efforts to restrain him. *See* Dkt. No. 91-6 at 5; Dkt. No. 97 at 3. It should be noted, however, that plaintiff fails to cite evidence in the record supporting his denials as required by the court's governing local rule.[5] Moreover, as will

---

5       Local Rule 7.1(a)(3) provides, in pertinent part, as follows:

          Summary Judgment Motions. Any motion for
          summary judgment shall contain a Statement of Material
          Facts. The Statement of Material Facts shall set forth, in

numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.

The moving party shall also advise *pro se* litigants about the consequences of their failure to respond to a motion for summary judgment. See also L.R. 56.2.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs, followed by a specific citation to the record where the fact is established.

N.D.N.Y.L.R.7.1(a)(3). (emphasis in original). In addition to being non-compliant with Local Rule 7.1(a)(3), and in several instances at odds with statements that he has made on other occasions, plaintiff's response to defendants' statement of undisputed material facts appears to be somewhat arbitrary and, to a degree, bizarre. In many instances, for example, plaintiff responds that he admits portions of a statement but not other parts, without disclosing which he is admitting and which he is denying. *See*, *e.g.*, Dkt. No. 97 at 4. In several instances, moreover, plaintiff claims to lack sufficient knowledge and information to form a belief concerning facts stated despite the fact that he should have sufficient knowledge to admit or deny the statement, including, for example, regarding the following asserted fact:

When Officer Carnegie, who was standing behind the Plaintiff, placed his hand on the Plaintiff's back, the Plaintiff abruptly turned and threw his left elbow violently into Officer Carnegie's face and nose.

Dkt. No. 91-6 at 4; Dkt. No. 97 at 3. Interestingly, plaintiff does admit the following statement:

Discovery is now complete in the instance action, and summary judgment is appropriate for the Defendants with respect to the

7

be seen, plaintiff has given several conflicting accounts of the incidents and, at one point, when questioned by Sergeant David Riley immediately following the incident, insisted that he had "blacked out" as a result of "PTSD" and could not recall anything about the incident. Dkt. No. 91-5 at 3, 12.

Plaintiff and defendants Carnegie, Hart and Tolman all suffered injuries during the course of the altercation. Dkt. No. 91-5 at 12. Following the incident, plaintiff was taken to the infirmary for evaluation, where he was found to suffer from minor scratches and abrasions, and swelling. *Id.* at 8. Plaintiff was given ice and Motrin, and held overnight for evaluation by a doctor on the following morning. *Id.* at 3, 8-9, 12-13. Defendants Hart and Tolman both missed subsequent work shifts as a result of their injuries. Dkt. No. 91-5 at 12; Dkt. No. 91-6 at 6. Defendant Carnegie required hospitalization for treatment of his injuries, which included a broken nose and broken ribs suffered during the course of the altercation with plaintiff.[6] Dkt. No. 91-2 at 3; Dkt. No. 91-5 at 12; 91-6 at 6.

---

Plaintiff's claims.

Dkt. No. 91-6 at 10; Dkt. No. 97 at 5.

[6]   Following the incident defendant Carnegie never again worked a full shift at Mid-State, and instead elected to retire despite previously intending to work several more years. Dkt. No. 91-2 at 3.

As a result of the incident, plaintiff was issued a misbehavior report accusing him of refusing to obey an order, assault on staff, violent conduct, and having property in an unauthorized area.[7] Dkt. No. 91-1 at 113; *see also id.* at 166. A Tier III disciplinary hearing was subsequently conducted, on June 30, 2015, at the Auburn Correctional Facility, where plaintiff was then housed, to address the charges set forth in the misbehavior report.[8] *See id.* at 107-62. At the outset of the hearing, plaintiff pleaded guilty to the property possession and refusal to obey an order charges and, following the hearing, was found guilty of the remaining two counts. *Id.* at 158-59, 166. As a result of that finding, the hearing officer imposed a disciplinary penalty which included 1,095 days of disciplinary SHU confinement. *Id.* The hearing officer's Tier III determination was upheld on review by the then-acting superintendent,

---

[7]     The record does not include a copy of the misbehavior report issued to the plaintiff.

[8]     The DOCCS conducts three types of inmate disciplinary hearings. *See* 7 N.Y.C.R.R. § 270.3; *see also Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998). Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. *Hynes*, 143 F.3d at 655 n.1. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. *Id.* Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *Id.*

and has never been overturned, vacated, or otherwise expunged. *Id.* at 4, 171.

Plaintiff was indicted by an Oneida County Grand Jury on November 18, 2015, and charged with two counts of second degree assault, stemming from the June 24, 2015 incident. Dkt. No. 91-1 at 178. On February 29, 2016, the day plaintiff's criminal jury trial was set to commence, he entered a plea of guilty to the first count of the indictment. *Id.* at 180-95, 97. During his plea allocution, plaintiff admitted that contact between plaintiff's elbow and defendant Carnegie's face caused the officer to suffer a broken nose, and that as a result of the officer's fall, he suffered broken ribs. *Id.* at 193. Plaintiff also admitted during the allocution that he intentionally prevented defendant Carnegie from performing a lawful duty and maintaining disciplinary order within the facility, and that his interference resulted in injury to the officer. *Id.* at 193-94. As part of his guilty plea, plaintiff waived his right to appellate review of his conviction, which has never been invalidated or overturned. *Id.* at 185, 190-91, 197.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on or about December 16, 2015. Dkt. No. 1. Named as defendants in plaintiff's complaint are Corrections Officers John Carnegie, Robert Hart and Mark Tolman. *Id.* Plaintiff claims that his Eighth and Fourteenth Amendment rights were violated as a result

of the assault by the three defendants, and seeks recovery of damages in the amount of $5 million. *Id.*

On March 7, 2016, in lieu of answering plaintiff's complaint, defendants moved for the entry of summary judgment, dismissing plaintiff's claims based upon his alleged failure to exhaust available administrative remedies before commencing suit. Dkt. No. 20. Plaintiff subsequently cross-moved for the entry of summary judgment in his favor on the issue of liability on April 8, 2016. Dkt. Nos. 28, 29. On October 7, 2016, I issued a report recommending that both motions for summary judgment be denied. Dkt. No. 44. That recommendation was approved and adopted by District Judge Mae A. D'Agostino on November 23, 2016. Dkt. No. 47.

Following the close of discovery, defendants again moved on August 28, 2017 for the entry of summary judgment dismissing plaintiff's claims. Dkt. No. 91. In their current motion, defendants do not press the exhaustion of remedies issue; instead, they argue that plaintiff's claims are precluded under *Heck v. Humphrey*, 512 U.S. 477 (1994), based upon the fact that his Tier III disciplinary hearing determination and criminal conviction arising out of the incident in question remain unchallenged and have not been vacated. *Id.*; *see* Dkt. No. 91-7 at 10-15. In addition, defendants urge the court to invoke the limited exception

11

acknowledged by the Second Circuit in *Jeffreys v. City of N.Y.*, 426 F.3d 549 (2d Cir. 2005) to the general rule that a court may not make credibility determinations when deciding a motion for summary judgment, and conclude, based upon plaintiff's multiple inconsistent statements concerning the incident and the lack of any corroborating evidence, that no reasonable factfinder could determine he was subjected to the unlawful use of excessive force. *Id.*; *see* Dkt. No. 91-7 at 15-19. Plaintiff has since responded in opposition to defendants' motion. Dkt. No. 97. Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.  DISCUSSION

A.  Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391

F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys*, 426 F.3d at 553. A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250. When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Emp'rs' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir.

13

2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

    B.   *Heck v. Humphrey*

In their motion, defendants first argue that plaintiff's excessive force claims in this action are inconsistent with his assault conviction and the allocution associated with that conviction, as well as the Tier III disciplinary determination arising out of the June 24, 2015 incident, and, consequently, that his claims are barred by the Supreme Court's decision in *Heck v. Humphrey* and its progeny. Dkt. No. 91-7 at 10-15. Plaintiff opposes this aspect of defendants' motion, arguing that those matters do not necessarily preclude a finding that defendants used excessive force against him, and further that his assault conviction relates only to defendant Carnegie and does not bar his claims against the other two defendants. Dkt. No. 97-1 at 7-8.

In *Heck v. Humphrey*, the Supreme Court held that,

> to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ

14

of habeas corpus, 28 U.S.C. § 2254.

*Heck*, 512 U.S. at 486-87 (footnote omitted); *see also Estes v. Doe*, No. 97-CV-8133, 1999 WL 983886, at *3 (S.D.N.Y. Oct. 29, 1999) (quoting *Heck*). "A claim for damages relating to a conviction that has not been so invalidated is not cognizable under Section 1983."[9] *Estes*, 1999 WL 983886, at *3.

The pivotal question in deciding the *Heck* issue is whether a finding in favor of plaintiff on his excessive force claim would necessarily imply the invalidity of the two determinations cited by defendants. *Heck*, 512 U.S. 487; *see also Jackson v. Suffolk Cty. Homicide Bureau*, 135 F.3d 254, 356 (2d Cir. 1998). "Application of [the *Heck*] principles requires the court to examine the relationship between the criminal conviction and each of the plaintiff's civil claims." *Jackson*, 135 F.3d at 256.

There are circumstances under which an unchallenged assault conviction could potentially be entirely consistent with a claim by an inmate that excessive force was used by a victim of the inmate's assault. An excessive force claim, for example, would not necessarily be inconsistent with an assault conviction where an inmate's assault on

---

[9]   Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

prison guards has culminated and is followed by the subsequent use of excessive force by the corrections officers. *See Shapard v. Attea*, 2017 WL 4548439, at \*2, \*3 (2d Cir. Oct. 12, 2017) (summary order). Another example would be where a conviction of an assault on an officer, while a factor in determining how much force applied by that officer would be reasonable, would not preclude a finding that the amount of force used by the officer or other officers was not reasonable. *Powell v. Scanlon*, 390 F. Supp. 2d 172, 179 (D. Conn. 2005).

Having carefully reviewed the record now before the court, I conclude that this is not one of those instances where plaintiff's current account in support of his excessive force claim is so diametrically opposed to the version given in connection with his assault conviction and the hearing officer's finding as to necessarily imply the invalidity of those determinations. When all inferences are drawn in his favor, plaintiff's deposition testimony could support a finding that once he was subdued, the officers involved continued to beat him until told to stop by a sergeant who arrived on the scene. At one point during the encounter, according to plaintiff, he and the officers went to the ground. Dkt. No. 91-1 at 65. Plaintiff claims that he had already been fully restrained once defendant Tolman held his legs and defendant Hart bent his right arm behind his back. *Id.* at 65. He alleges that despite being subdued, defendants Tolman

16

and Hart, along with another unidentified corrections officers, continued to punch and kick him. *Id.* at 66-67. According to plaintiff, the incident ended only when a sergeant told the officers to stop kicking and punching plaintiff. Dkt. No. 91-1 at 69.

This presents a close case. Undeniably, this action has many of the factual attributes of cases cited by defendants, in which the rule of *Heck* was found to preclude plaintiff's claims. *See, e.g.*, *Dye v. Virts*, No. 03-CV-6273L, 2004 WL 2202638, at *4 (W.D.N.Y. Sept. 28, 2004) (concluding that *Heck* barred the plaintiff's excessive force claim because if the prisoner was merely defending himself, then the defendant would not have been performing a lawful duty, which would necessarily negate an element of the offense for which the plaintiff was convicted); *Wiggins v. Figurora* No. 13-CV-1731, 2015 WL 729730, at *3 (W.D.N.Y. Feb. 18, 2015) (dismissing the plaintiff's excessive force claim because a judgment in his favor would contradict his plea allocution wherein he admitted both that he was the aggressor and that he attempted to prevent the defendants from transporting him to jail); *Douglas v. Smith,* No. 05-CV-1000, 2009 WL 789450, at *2 (N.D.N.Y. Jan. 26, 2009); *Simmons v. Carriero*, No. 95-CV-1078, 2000 WL 432793, at *3 (W.D.N.Y. Apr. 17, 2000). What distinguishes this case, however, is the fact that, when all inconsistencies and ambiguities are resolved in plaintiff's favor, the record could lead a

reasonable factfinder to conclude that while plaintiff acted unlawfully in initiating the incident, and hence committed the assault for which he was both disciplined and convicted, defendants could also be found nonetheless to have acted unlawfully by continuing to kick and punch plaintiff, as he has alleged in his deposition, after the officers regained control over him. Accordingly, dismissal under the rule of *Heck* is not appropriate at this procedural juncture. *See Dabney v. J. Pegano*, No. 9:10-CV-1109, 2013 WL 5464776, at *17-18 (N.D.N.Y. Sept. 30, 2013) (concluding that the plaintiff's success on his excessive force claim against the defendants would not necessarily invalidate his Tier III disciplinary convictions for assault, weapons possession, refusing a direct order, and refusing a search and frisk). Accordingly, I recommend against dismissal of plaintiff's excessive force claims in this action on the basis of the favorable termination rule enunciated in *Heck*.

C.    Merits of Plaintiff's Excessive Force Claims

As a second basis for dismissing plaintiff's excessive force claims, defendants argue that this is one of those rare occasions when a court may make a credibility determination on a motion for summary judgment and conclude that plaintiff's account in support of his claims is so contradictory and incomplete that, even when drawing all inferences in his favor, the court is able to conclude that no reasonable person could credit

18

plaintiff's testimony.

Generally speaking, on a motion for summary judgment, if the record evidence, including the inmate-plaintiff's allegations, if credited, could reasonably permit a rational factfinder to conclude in plaintiff's favor, it is inappropriate for the court to dismiss his excessive force claim. *Wright*, 554 F.3d at 269 (citing *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003); *Griffin*, 193 F.3d at 91)). As the Second Circuit has noted, "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."). *Rule v. Brine, Inc.* 85 F.3d 1002, 1011 (2d Cir. 1996) (That court, however, has recognized a very limited exception to this general rule in *Jeffreys*, 426 F.3d 549. In that case, the Second Circuit held that summary judgment may be awarded in the rare circumstance where there is nothing in the record to support plaintiff's allegations of defendants' use of excessive force, aside from his own contradictory and incomplete testimony, and even after drawing all inferences in the light most favorable to plaintiff, the court determines that "no reasonable person" could credit his testimony. *Jeffreys*, 426 F.3d at 54-55.

To qualify for the *Jeffreys* exception, a defendant must satisfy each of the following three requirements: (1) "the plaintiff must rely 'almost exclusively on his own testimony,'" (2) the plaintiff's "testimony must be

'contradictory or incomplete,'" and (3) the plaintiff's testimony must be contradicted by evidence produced by the defense. *Benitez v. Ham*, No. 04-CV-1159, 2009 WL 3486379, at *20-21 (N.D.N.Y. Oct. 21, 2009) (Mordue, J., *adopting report and recommendation by* Lowe, M.J.) (quoting *Jeffreys*, 426 F.3d at 554).

This case presents a classic situation in which the *Jeffreys* rule is appropriately invoked. When first questioned shortly after the incident by Sergeant Riley, plaintiff stated that he had blacked out and could not recall anything about the altercation. Dkt. No. 91-5 at 3. During his Tier III hearing, plaintiff stated that he did not recall striking Officer Carnegie but did not specifically deny doing so, instead merely stating that he could not honestly say that he did not strike the officer. Dkt. No. 91-1 at 149-50, 157. At that disciplinary hearing plaintiff also stated that he did not remember much about the incident. Dkt. No. 91-1 at 119-20. Plaintiff further testified that while he did not remember striking the officer, if he did it was in self-defense. *Id.* at 119.

By the time plaintiff's complaint in this action was filed, he had refined his story, alleging that he never struck or interfered with any officer and that he neither initiated nor participated in an altercation with defendants on June 24, 2015. Dkt. No. 91-6 at 9; Dkt. No. 97 at 4. Shortly after filing his complaint, however, plaintiff contradicted that position during

20

his plea allocution in Oneida County Supreme Court. Dkt. No. 91-1 at 193-94. In allocuting in connection with his guilty plea, plaintiff admitted that there was a physical altercation between himself and defendant Carnegie as a result of which Juarbe's elbow came into contact with the officer's face. Dkt. No. 91-1 at 193. He also admitted during that proceeding that he was intentionally preventing defendant Carnegie from performing a lawful duty, maintaining discipline and order within the facility and as a result defendant Carnegie was injured. *Id.* at 193-94.

During pretrial discovery, plaintiff again reversed course. In plaintiff's answers to defendants' request for admissions of fact and to defendants' interrogatories, plaintiff made statements which are inconsistent with his claims elsewhere. Dkt. No. 91-6 at 10; Dkt. No. 97 at 4; see Dkt. No. 91-1 at 199-219. In response to defendants' request for admissions, plaintiff expressly denied that he either initiated or participated in a physical altercation with defendants by "striking or attempting to strike one or more of them." Dkt. No. 91-1 at 213; Dkt. No. 91-1 at 218. In his answers to defendants' interrogatories, plaintiff stated, under oath, that he never "during his current term of imprisonment . . . interfered with the duties of a correctional officer or any other employee or agent of [DOCCS]. Dkt. No. 99-1 at 202, 208.

Casting further doubt on plaintiff's credibility is the fact that he has

given conflicting statements regarding other issues. For example, during
his Tier III disciplinary hearing, plaintiff claimed that he did not change his
torn shirt when he returned back to his cube after the encounter. Dkt. No.
91-1 at 129. In response to defendants' statement of material facts not in
dispute pursuant to Local Rule 7.1(a)(3), however, plaintiff admitted that
he did change his shirt after retreating to his cube. Dkt. No. 91-6 at 4; Dkt.
No. 97 at 3; *see* Dkt. No. 91-1 at 50.

In sum, there is no corroborating evidence for plaintiff's account of
the events of June 24, 2015, and, hence, prevailing on his excessive force
claim will depend entirely upon his credibility. The shifting nature of
plaintiff's various accounts and inconsistencies in statements regarding
material issues undercut plaintiff's version of the event. Moreover, the
objective evidence contradicts plaintiff's claims, and specifically, his
contention is that during the course of the altercation, he was the victim of
vicious punches and kicks from defendants. The objective evidence
reflects that defendants Carnegie, Tolman, and Hart all suffered injuries as
a result of the incident, and that defendant Carnegie's injuries were so
serve that he was hospitalized, and chose to retire as a direct result of
plaintiff's assault. By contrast, plaintiff suffered only minor injuries during
the encounter, and those injuries were addressed by providing him with
ice and Motrin. Dkt. No. 91-5 at 8-9, 12-13. In addition, the three

22

defendants have all given statements which are consistent among themselves, and all three deny plaintiff's version of the relevant events. *See* Dkt. Nos. 91-2, 91-3, 91-4.

In sum, given plaintiff's changing version of the relevant events, his assault conviction, and particularly his statement, shortly after the incident, to the effect he did not remember what occurred, I find that the sole evidence of supporting his claims is "'too incredible to be believed by reasonable minds[,]'" thus warranting summary dismissal of plaintiff's excessive force claims. *Schmidt v. Tremmel*, No. 93 CIV. 8588, 1995 WL 6250, at *3 (S.D.N.Y. Jan. 6, 1995) (quoting *Price v. Worldvision Enter., Inc.*, 455 F. Supp. 252, 266 n. 25 (S.D.N.Y. 1978)); *see also Pulliam v. Lilly*, 2010 WL 935383, at *5 (E.D.N.Y. Mar. 11, 2010). In light of all of these facts, I recommend that the court invoke the *Jeffreys* exception and dismiss plaintiff's excessive force claim on this basis.

## IV.   SUMMARY AND RECOMMENDATION

While defendants argue that plaintiff's excessive force claim is inconsistent with his assault conviction and disciplinary determination, neither of which has ever been reversed or vacated, and therefore that his claims must be dismissed, I find the existence of triable issues of fact surrounding the incident, and in particular whether excessive force was applied to plaintiff after he was subdued, in which case, if proven, plaintiff's

excessive force claims would not be incompatible with those determinations. Accordingly, I recommend that plaintiff's claims not be dismissed at this procedural juncture on the basis of the favorable termination rule of *Heck* and its progeny.

I do find, however, that given the inconsistencies in plaintiff's various versions of the events of June 24, 2015, the lack of any evidence corroborating plaintiff's account, and the existence of objective evidence supporting defendants' denials of plaintiff's claims, and, significantly, his plea to second degree assault as a result of the incidents involved in this action, no reasonable factfinder could credit plaintiff's allegations and conclude that he was subjected to the use of excessive force in connection with that incident.[10]   Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 91) be GRANTED, and that plaintiff's complaint in this action be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this

---

[10]     In light of this recommendation, I have not addressed defendants' alternative argument, claiming their entitlement to qualified immunity from plaintiff's suit.

report.[11] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      February 16, 2018
            Syracuse, NY

---

[11]    If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by McRae v. City of Hudson, N.D.N.Y., January 21, 2015

2009 WL 3486379
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Henry BENITEZ, Plaintiff,
v.
HAM, et al., Defendant.

No. 9:04–CV–1159.
|
Oct. 21, 2009.

**Attorneys and Law Firms**

Henry Benitez, Malone, NY, for Plaintiff.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Timothy P. Mulvey, Esq., of Counsel, Syracuse, NY, for Defendants.

**Opinion**

### *ORDER*

NORMAN A. MORDUE, Chief Judge.

**\*1** The above matter comes to me following a Report–Recommendation by Magistrate Judge George H. Lowe, duly filed on the 30th day of September 2009. Following ten days from the service thereof, the Clerk has sent me the file, including any and all objections filed by the parties herein.

After careful review of all of the papers herein, including the Magistrate Judge's Report–Recommendation, and no objections submitted thereto, it is

ORDERED that:

1. The Report–Recommendation is hereby adopted in its entirety.

2. Defendants' motion for summary judgment (Dkt. No. 92) is GRANTED IN PART AND DENIED IN PART. The following claims are dismissed pursuant to Defendants' motion for summary judgment: (1) the Eighth

Amendment claims against Defendants Weissman and Richards arising from their treatment of Plaintiff's severe body itch, left wrist, and right ankle; (2) the claims against Defendant Ham; (3) the claims against Defendants Brousseau and Donelli for their handling of Plaintiff's grievance regarding Defendant Ham; (4) the retaliation claim against Defendants Nephew, Desotelle, and Snyder based on their filing of misbehavior reports against Plaintiff; (5) the claims against Defendants Brousseau, Donelli, Girdich, and Eagen regarding their handling of Plaintiff's grievances regarding the events of January 2 and 3, 2003; (6) the claim against Defendant LaClair; (7) the claims against Defendant Bullis; and (8) the Eighth Amendment claim against Defendants Weissman and Girdich for approving the imposition of the loaf diet.

It is further ordered that the following claims are dismissed sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B): (1) Plaintiff's retaliation claim against Defendants Weissman and Richards; and (2) the claim against Defendant Selsky.

It is further ordered that the following claims survive summary judgment and sua sponte review and proceed to trial: (1) the conspiracy claim against Defendants Wright, Snyder, and Duprat; (2) the excessive force claim against Defendants Snyder, Duprat, Bogett, and Wright; (3) the retaliation claim against Defendants Snyder, Duprat, Bogett, and Wright arising from the use of excessive force; (4) the retaliation claim against Wright arising from his filing of a misbehavior report against Plaintiff; (5) the failure to intervene claims against Defendants Bezio and Duprat; (6) the retaliation claim against Defendant Bezio; and (7) the Eighth Amendment claims against Defendants Hensel, Goodwin, Kuhlman, and Costello.

3. The Clerk of the Court shall serve a copy of this Order upon all parties and the Magistrate Judge assigned to this case.

**IT IS SO ORDERED.**

### *REPORT–RECOMMENDATION AND ORDER*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Norman

A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Henry Benitez alleges that 21 employees of the New York Department of Correctional Services ("DOCS") violated his constitutional rights by subjecting him to excessive force, denying him medical care, falsifying misbehavior reports, denying him assistance to prepare for a disciplinary hearing, and imposing a loaf diet on him as punishment. Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 92.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

## I. FACTUAL AND PROCEDURAL SUMMARY

**\*2** Unless otherwise noted, the facts in this summary are taken from Plaintiff's verified complaint [1]. Plaintiff, a New York state prisoner, was transferred to Upstate Correctional Facility on September 14, 2002. (Dkt. No. 1 ¶ 8.) Plaintiff alleges that he was suffering from "ongoing severe pain in his left hand wrist and right foot ankle due to nerve damage." (Dkt. No. 1 ¶ 9.) From the time he arrived at Upstate, he made "numerous requests" to Defendant Drs. Evelyn Weissman and Richards to receive a medication called Atarax that had been prescribed to him previously at Auburn Correctional Facility, an MRI of his left wrist and right ankle, and a referral to an orthopedist. (Dkt. No. 1 ¶ 12.) Plaintiff alleges that Defendants Weissman and Richards refused his requests for Atarax, the MRI, and the referral "in retaliation for his having filed numerous formal grievances against them [and other Upstate medical staff members] within a period of two years, and for the purpose of preventing [Plaintiff] from demonstrating in a civil rights action against prison officials the extent of the injuries of his left hand and right foot." (Dkt. No. 1 ¶ 12–13.) Plaintiff alleges that, as a result, he continues to experience severe pain in his left wrist and right ankle, numbness in different areas of his left hand and right foot, an inability to walk or stand for longer than ten minutes, and ongoing severe body itch. (Dkt. No. 1 ¶ 14.)

Regarding Plaintiff's requests for Atarax, Dr. Weissman declares that Atarax is

> non-formulary, which means we do not regularly stock that medication, and special approval must be obtained to issue that medication.

However, Vistaril and Hydroxyzine is the substitute we use for the same purpose as Atarax. Hydroxyzine is the generic form of Atarax. I prescribed Vistaril for [P]laintiff on October 2, 2002 ... Dr. Richards requested approval for Atarax in April 2004 and it was suggested that [P]laintiff try Claritin, which had become a formulary (regularly stocked) drug. Dr. Richards requested approval for Atarax again in June 2004, and the response was that if the generic (Hydroxyzine) had not worked, it was unclear that the branded drug Atarax would work ... Plaintiff's complaints of itching were not ignored, and he [was] constantly given medication for itching.

(Weissman Aff. ¶¶ 4–10.)

As to Plaintiff's other claims, Dr. Weissman declares:

> Regarding [P]laintiff's claim that his request for an MRI was denied, Dr. Richards and I felt, in our medical judgment, an MRI was not warranted. However, because his pain and numbness was improving with time, Dr. Richards requested, and I approved, physical therapy for [P]laintiff beginning in January 2003. Regarding [P]laintiff's claim that his request for an orthopedic consult was denied, that is incorrect. Dr. Richards requested an orthopedic consult for [P]laintiff on August 19, 2003 and [P]laintiff saw an orthopedist on September 4, 2003. The orthopedist ... did not suggest an MRI and determined that [P]laintiff was improving and "... there is not much else that I can suggest for Henry to improve or accelerate his healing. For the time being, I am just going to suggest that he be patient."

**\*3** (Weissman Aff. ¶¶ 11–13.)

Plaintiff was transferred to Elmira Correctional Facility Reception Center on November 7, 2002, for a court appearance. Upon arrival, Plaintiff informed Defendant Correction Officer Ham that he suffered "ongoing severe pain in his left hand wrist and right foot ankle due to nerve damage, and that the handcuffs and leg irons ... were too tight and causing him swelling and enormous

pain." Ham observed that Plaintiff's hands were swollen. However, he refused to remove or loosen the restraints. Plaintiff remained in the restraints, suffering enormous pain and swelling, until he was transferred to Five Points Correctional Facility three hours later. (Dkt. No. 1 ¶ 9.)

Plaintiff was returned to the Elmira Correctional Facility Reception Center on November 14, 2002. At that time, Plaintiff again informed Defendant Ham that the restraints were too tight and were causing him swelling and extreme pain. Defendant Ham "again verbally acknowledged that [Plaintiff's hands were ... swollen" but refused to remove the restraints. Plaintiff remained in the restraints, suffering enormous pain and swelling, until he was transferred out of the facility three hours later. (Dkt. No. 1 ¶ 10.)

On January 2, 2003, Defendant Correction Officers Nephew and Desotelle strip-frisked Plaintiff[2] in preparation for transferring Plaintiff for a court appearance. Defendant Sgt. Snyder was also in the room. When they had completed the search, Defendant Nephew ordered Plaintiff to put on his coat. Plaintiff told Nephew that wearing the coat would "severely aggravate his continuing body itch stemming from his hepatitis virus." (Dkt. No. 1 ¶ 15.) Defendant Snyder called Plaintiff a "spick" and threatened to forcibly put the coat on Plaintiff. Plaintiff told Defendants Snyder, Nephew, and Desotelle that he would sue them if they used force. (Dkt. No. 1 ¶ 15.)

Shortly thereafter, Defendant Lt. Wright approached Plaintiff and asked him if he had spit at staff. Before Plaintiff could respond, Defendant Wright ordered several guards to get a video camera and put a "spittle mask" on Plaintiff. After the guards did so, Defendant Wright escorted Plaintiff to his cell. He asked Plaintiff to explain what had happened in the frisk room. Plaintiff said that Defendant Wright would not believe his account of the incident, accused Defendant Wright of interfering with his court trip and unjustifiably putting a spittle mask on him, and said he would sue Defendants Wright and Snyder. Defendant Wright told Plaintiff that "transportation vans don't have cameras. You're going to learn not to spit ... [at] staff and ... threaten us with lawsuits." (Dkt. No. 1 ¶ 16.)

After Defendant Wright left Plaintiff's cell, Defendant Capt. Bezio approached and asked Plaintiff to explain what happened in the frisk room. Plaintiff told Defendant

Bezio what had happened, denied that he had threatened to spit at a staff member, and asked Defendant Bezio to protect him while he was being transported to court. Defendant Bezio told Plaintiff to be "up and ready to go to court" and that "people don't like to get spat ... on."[3] (Dkt. No. 1 ¶ 19.)

**\*4** On January 3, 2003, Defendant Correction Officer Duprat escorted Plaintiff to the transportation van. Defendant Duprat told Plaintiff to "remember what we told you about the van."[4] As they were walking, Plaintiff saw Defendant Bezio and told him that Defendant Duprat had threatened to "employ physical abuse" against him in the van. Defendant Bezio shrugged his shoulders. (Dkt. No. 1 ¶ 20.) Defendant Duprat drove Plaintiff in a van to a different building, where he called Defendant Snyder "to arrange a beating" of Plaintiff. After the phone call, Defendant Duprat drove Plaintiff back to the first building. When they arrived, Defendant Snyder entered the rear section of the van and told Plaintiff that "you like ... suing us. Wright, my boss, doesn't like that and sent this as a reminder." Defendant Snyder then punched and slapped Plaintiff, who was in handcuffs and leg irons, in the face and the back of his head, knocking him unconscious. When Plaintiff revived, Defendants Duprat and Correction Officer Bogett entered the rear section of the van and punched and slapped Plaintiff several times in the head, chest, and right ear. When Plaintiff began to bleed from his right inner ear, Defendants Duprat and Bogett tied a spittle mask on Plaintiff's head. (Dkt. No. 1 ¶¶ 21–22.)

When Plaintiff arrived at Five Points Correctional Facility later that day, he notified Defendant Nurse Hensel that he had been bleeding from his inner right ear due to a beating by Upstate officials, that he was suffering severe pain in his head and right ear, and that he wanted to be examined by a doctor. Defendant Hensel refused to examine Plaintiff, made no record of his complaints, and refused to schedule Plaintiff to see a doctor.[5] (Dkt. No. 1 ¶ 23.)

Plaintiff's medical record from Five Points indicates that on January 3, 2003, the day he arrived, Plaintiff was seen by Nurse Nancy O'Connor Ryerson. She noted that Plaintiff arrived via van with cuffs and chains and spit net, and that he complained of pain and itching. "It was noted that he takes Naprosyn and Benadryl, and he was escorted to 12 Building. Apparently Naprosyn was not

sent with him and it is a medication for which he would need a prescription from a doctor. Since this was not an emergency, the procedure is to place the inmate on the regular physician call-out list for an appointment. Nurse Ryerson also noted that he was Hepatitis C positive." (Bannister Aff. ¶ 5.)

On January 4, 2003, Plaintiff notified Defendant Nurse Goodwin [6] that he needed emergency medical treatment because of severe pain in his liver, left wrist, and right ear, and that he wanted medicine for his severe body itch. Defendant Goodwin refused to examine Plaintiff, made no record of his complaints, and did not provide any treatment to Plaintiff. (Dkt. No. 1 ¶ 24.)

Plaintiff's medical records from Five Points indicate that on January 4, 2003, Plaintiff was seen by Nurse "Goon" at his cell after security staff told the nurse that Plaintiff stated his asthma was acting up. Nurse "Goon" 's note indicated that Plaintiff never acknowledged shortness of breath and that she checked Plaintiff's transfer form and the computer and found that he had no history of asthma. (Bannister Aff. ¶ 6.)

**\*5** On January 5, 2003, Plaintiff alleges that he informed Defendant Nurse Kuhlman [7] that he had been bleeding from his inner right ear and that he was suffering from an ongoing, extreme body itch due to his hepatitis C and B virus. Defendant Kuhlman told Plaintiff that she would review his medical chart and return to him. Defendant Kuhlman refused to examine Plaintiff, made no record of his medical complaints, and refused to provide treatment. (Dkt. No. 1 ¶ 25.)

Plaintiff's medical records from Five Points show that Defendant Kuhlman saw Plaintiff on January 5, 2003. Her note indicates that she went to his cell for his 4:00 p.m. medications and he complained about the way she distributed the medication [8]. He stated that the nurse would be getting a grievance. He was uncooperative and argumentative. (Bannister Aff. ¶ 7.)

On January 6, 2003, Plaintiff informed Defendant Nurse Costello that he needed treatment due to great pain in his right ear and his ongoing severe body itch. Defendant Costello refused to examine Plaintiff's right ear, made no record of his medical complaint, and refused to promptly provide medical treatment. (Dkt. No. 1 ¶ 26.)

Plaintiff's medical records from Five Points show that Defendant Costello saw him on January 6, 2003. She noted that he was complaining that he needed an emergency prescription for severe headache and severe itching. She noted that he requested a prompt examination by a physician. She instructed him that she would have to find the chart or the transfer paperwork because nurses cannot give medications until they verify allergies and prescription orders. (Bannister Aff. ¶ 8.)

Plaintiff's medical records from Five Points show that he was seen again the next day by Defendant Costello. Plaintiff's chart was still not available, and he again requested a prescription for itching, Hepatitis C, and a physical exam. Defendant Costello again noted that she would have to verify his requests and then possibly schedule an appointment. (Bannister Aff. ¶ 9.)

Plaintiff's medical records from Five Points show that he was seen later that day by non-defendant Nurse Gardner at the request of security staff. Plaintiff stated "I was knocked out and beaten everywhere" and claimed that he had a lump on his head. Nurse Gardner examined him and noted no redness, bruising, or bump on head. (Bannister Aff. ¶ 10.)

Plaintiff alleges that Wright, Nephew, Desotelle, and Snyder retaliated against him for his threat to sue them by filing false misbehavior reports. (Dkt. No. 1 ¶¶ 17–18.) Defendant Correction Officer LaClair was assigned to assist Plaintiff with preparing for the subsequent disciplinary hearing. (Defs.' Ex. 14.)

According to a misbehavior report filed by Defendant LaClair, when he went to Plaintiff's cell to assist him, Plaintiff "stated ... that [LaClair] was to get him what he wanted." Defendant LaClair "informed him that what he needed had to be pertained (sic) to the misbehavior report. [Plaintiff] then stated "Get what I want or I'll fuck you up." Defendant La Clair "informed him the interview was over and left the area." (Defs.' Ex. 15 at 2–3.) Plaintiff alleges that Defendant LaClair "falsified [the] misbehavior report against [Plaintiff] in order to refrain" from assisting Plaintiff. (Dkt. No. 1 ¶ 35.)

**\*6** On January 15, 2003, Defendant Bullis arrived at Plaintiff's cell and informed him that he would conduct the disciplinary hearing that day. He asked Plaintiff whether

he wanted to attend the hearing. Plaintiff said that he did not because Defendant LaClair had not assisted him, but asked Defendant Bullis to interview Defendant LaClair and an inmate witness about the events leading to Defendant LaClair's refusal to provide assistance. Plaintiff asked Defendant Bullis not to impose a loaf diet as a punishment if he found Plaintiff guilty because the loaf diet caused Plaintiff severe abdominal pains and constipation due to his hepatitis. (Dkt. No. 1 ¶ 36.)

Defendant Bullis did not interview Defendant LaClair or the inmate witness. He found Plaintiff guilty and imposed a penalty of 21 days of the loaf diet. (Dkt. No. 1 ¶ 37.) Plaintiff alleges that Defendants Weissman and Girdich "maliciously" approved the penalty in "reckless disregard" of the pain it would inflict on Plaintiff. (Dkt. No. 1 ¶ 38.) Plaintiff alleges that "[d]ue to the danger that the ... loaf diet posed" to his well-being, he refused to eat it. As a result, he lost 33 pounds and suffered severe abdominal pains and emotional distress that exacerbated his hepatitis. (Dkt. No. 1 ¶ 39.)

Plaintiff alleges that Defendants Brousseau, Donelli, Selsky, Girdich, and Eagen mishandled the grievances and appeals he filed or attempted to file regarding his claims. (Dkt. No. 1 ¶¶ 28–34, 40.)

Plaintiff filed this lawsuit on October 6, 2004. The parties proceeded to discovery, which proved contentious. Plaintiff successfully moved to compel responses to his discovery requests, and thereafter filed four motions for sanctions seeking Defendants' compliance with the order compelling discovery. (Dkt.Nos.56, 73, 94, 103.) I granted each of those motions in part. (Dkt. Nos.62, 79, 99, 107.) As is relevant here, I ruled that because not all of the pages of the Five Points Movement and Control Log Book for November 14, 2003, had been provided to Plaintiff before the original was destroyed, Plaintiff could ask the Court to draw factual inferences favorable to him. (Dkt. No. 99 at 2.) I ruled that because Defendants could not locate the SHU log book for January 2003, Plaintiff could "ask the Court to draw factual inferences favorable to him based upon the missing pages for January 14, 2003" in opposition to Defendants' motion for summary judgment. (Dkt. No. 99 at 1–2.) I noted that Defendants had told Plaintiff that photographs taken of him on January 10, 2003, would be produced but that, without explanation, Defendants could no longer find the photographs. Accordingly, I ruled that Plaintiff could ask

the Court to draw factual inferences favorable to him based upon the missing photographs. (Dkt. No. 99 at 2–3.) I ordered that if photographs taken of Plaintiff on January 3, 2003, no longer existed, Plaintiff could similarly request favorable inferences. (Dkt. No. 99 at 3.)

**\*7** On March 16, 2009, Plaintiff again moved for sanctions. (Dkt. No. 103.) I noted that the photographs from January 3 and 10, 2003, were still missing. (Dkt. No. 107 at 1.) I reiterated that Plaintiff could ask the Court to draw factual inferences favorable to him based upon the missing photographs. (Dkt. No. 107 at 2.)

Currently pending before the Court is Defendants' motion for summary judgment. (Dkt. No. 92.) Plaintiff has opposed the motion. (Dkt. No. 109.)

## II. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Major League Baseball Properties, Inc. v. Salvino, Inc.,* 542 F.3d 290, 309 (2d Cir.2008). Only after the moving party has met this burden is the non-moving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." [9] Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." [10] In determining whether a genuine issue of material [11] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. [12]

### B. Legal Standard Governing Motion to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnise Gen. Transatlantique,* 405 F.2d 270, 273–74 (2d Cir.1968) (citations omitted); *accord, Katz v. Molic,* 128 F.R.D. 35, 37–38 (S.D.N.Y.1989) ("This Court finds that ... a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Moreover, even where a defendant has not advanced such a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte,* address whether a *pro se* prisoner has failed to state a claim upon which relief may be granted. [13] For these reasons, it is appropriate to briefly summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

**\*8** Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2); [14] or (2) a challenge to the legal cognizability 14 of the claim. [15]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) (emphasis added). By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [16] The main purpose of this rule is to "facilitate a proper decision on the merits." [17] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and

provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [18]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556–57, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not *shown*—that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 (emphasis added).

It should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [19] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*" [20] In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [21] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [22] Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [23] Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint. [24] In addition, an opportunity to amend is not required

2009 WL 3486379

where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [25]

**\*9** However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit has observed), [26] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12. [27] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [28] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." [29]

### III. ANALYSIS

#### A. Weissman/Richards Health Care
Plaintiff alleges that Defendant Drs. Weissman and Richards violated his Eighth Amendment right to adequate medical care by prescribing an ineffective medication for his body itch, refusing to order an MRI of his left wrist and right ankle, and refusing to refer him to an orthopedist. (Dkt. No. 1 ¶ 12.) Defendants move for summary judgment of these claims, arguing that (1) Plaintiff did not suffer from a serious medical need; and (2) Defendants were not deliberately indifferent. (Dkt. No. 92–10 at 13–14.)

#### 1. *Eighth Amendment Standard*
The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle,* 429 U.S. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Thus, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer,* 511 U.S. at 832 (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).

A viable Eighth Amendment claim must contain both an objective and a subjective component. *Farmer,* 511 U.S. at 834. To satisfy the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.' " *Id.* (quoting *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). Analyzing the objective element of an Eighth Amendment medical care claim requires two inquiries. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin v. Goord,* 467 F.3d 263, 279 (2d Cir.2006). The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester County Dept. of Corr. Med. Dept.,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008).

**\*10** The second inquiry is "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin,* 467 F.3d at 280. The focus of the second inquiry depends on whether the prisoner claims to have been completely deprived of treatment or whether he claims to have received treatment that was inadequate. *Id.* If "the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id.* A "serious medical need" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) (citations omitted), *accord, Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1996), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3)

the existence of chronic and substantial pain. *Chance,* 143 F.3d at 702–03.

If the claim is that treatment was provided that was inadequate, the second inquiry is narrower. *Salahuddin,* 467 F.3d at 280. For example, "[w]hen the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation" is sufficiently serious. *Smith v. Carpenter,* 316 F.3d 178, 185 (2d Cir.2003).

To satisfy the subjective component of an Eighth Amendment medical care claim, the defendant's behavior must be "wanton." What is considered "wanton" must be determined with "due regard for differences in the kind of conduct against which an Eighth Amendment objection is raised." *Whitley v. Albers,* 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Where a prisoner claims that a defendant provided inadequate medical care, he must show that the defendant acted with "deliberate indifference." *Estelle,* 429 U.S. at 105; *Wilson v. Seiter,* 501 U.S. 294, 302–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance,* 143 F.3d at 703 (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer,* 511 U.S. at 837; *Chance,* 143 F.3d at 702–703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer,* 511 U.S. at 835; *Ross v. Giambruno,* 112 F.3d 505, at *2 (2d Cir.1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle,* 429 U.S. at 105–06. Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim ... under the Eighth Amendment." *Id.* Stated another way, "medical malpractice does not become a

constitutional violation merely because the victim is a prisoner." *Id.; Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). However, malpractice that amounts to culpable recklessness constitutes deliberate indifference. Accordingly, "a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Chance,* 143 F.3d at 703 (citation omitted). Medical decisions that are contrary to accepted medical standards may constitute deliberate indifference if "the doctor has based his judgment on something other than sound medical judgment." *Stevens v. Goord,* 535 F.Supp.2d 373, 385 (S.D.N.Y.2008) (citation omitted). For instance, a doctor may be deliberately indifferent if he opts for an easier and less efficacious treatment plan "not on the basis of [his or her] medical views, but because of monetary incentives." *Chance,* 143 F.3d at 704.

### 2. *Atarax*

**\*11** Plaintiff claims that Defendants Weissman and Richards violated his Eighth Amendment rights by refusing to prescribe Atarax. (Dkt. No. 1 ¶¶ 1, 12.) Defendants move for summary judgment, arguing that Plaintiff's claim regarding the Atarax medication fulfills neither the objective nor the subjective prong of a viable Eighth Amendment claim. (Dkt. No. 92–10 at 13–14.)

Regarding the objective prong, the parties' briefs focus entirely on whether Plaintiff suffered from a serious medical need.[30] Applying the analytical framework described above, I must first address whether Plaintiff was actually deprived of adequate medical care. I find that there is a triable issue of fact that the refusal to prescribe Atarax constituted a denial of adequate or reasonable care. I base this finding on the fact that Defendant Dr. Richards twice requested approval to prescribe Atarax, noting that he had already tried treating Plaintiff with Hydroxyzine, Vistril, Allegra, and Zytrec "all of which worsened [Plaintiff's] condition." (Weissman Aff. Ex. A– 9.)

Because Plaintiff alleges that he was provided with inadequate treatment, rather than completely deprived of treatment, the next inquiry is whether the *deprivation*

was sufficiently serious. This requires an analysis of what harm, if any, the failure to prescribe Atarax caused or will cause Plaintiff. Here, there is simply no evidence before the Court that being deprived of Atarax harmed or threatened to harm Plaintiff. Rather, the evidence shows that Plaintiff suffered from a severe body itch. While this condition was undoubtedly unpleasant, it simply does not rise to the level of an Eighth Amendment violation. Therefore, I find that Plaintiff has not raised a triable issue of fact regarding the objective prong of his Eighth Amendment claim regarding Defendant Weissman and Richards' failure to prescribe Atarax.

Having found that there is not a triable issue of fact as to the objective prong, it is not necessary to analyze the subjective prong. However, I will briefly address the parties' contentions for the sake of completeness. Defendants argue that the refusal by Defendants Weissman and Richards to prescribe Atarax was not deliberate indifference because the decision of "which medicine to prescribe for a particular condition amount[s] to nothing more than a disagreement with the course of treatment-not deliberate indifference." (Dkt. No. 92–10 at 13–14.) Defendants' argument regarding deliberate indifference is based entirely on the affidavit of Dr. Weissman. [31] Interestingly, in contrast to her statements regarding Plaintiff's orthopedic care (discussed below), Dr. Weissman does *not* state that the decision not to prescribe Atarax was based on her medical judgment. Rather, she states that Atarax is a "non-formulary" medication and "special approval must be obtained to issue that medication." (Weissman Aff. ¶ 4.) Dr. Weissman does not say who was authorized to approve the use of non-formulary drugs. Dr. Richards twice requested approval to prescribe Atarax to Plaintiff. (Weissman Aff. ¶¶ 7–8, Ex. A–9 and A–10.) In one of these requests, he stated that the other medications he had tried "worsened" Plaintiff's condition. (Weissman Aff. Ex. A–9.) His requests were denied. (Weissman Aff. ¶¶ 7–8, Ex. A–9 and A–10.) This sequence of events raises two interesting and related issues: does the acquiescence of Dr. Weissman and Dr. Richards to a course of treatment for Plaintiff with which they disagreed constitute deliberate indifference? [32] Or does the fact that the decision not to prescribe Atarax was made by someone other than Dr. Weissman and Dr. Richards indicate that they were not personally involved with, and thus not liable for, the decision? *See Johnson v. Wright,* 412 F.3d 398 (2d Cir.2005) (claims against administrators who refused

to approve treatment requested by treating physicians survived summary judgment; treating physicians were not named as defendants). The parties have not addressed these issues, and, due to my finding that there is no triable issue of fact as to the objective prong and in the absence of briefing, I decline to do so.

### 3. *MRI and Orthopedic Referral*

**\*12** Plaintiff claims that Defendants Weissman and Richards violated his Eighth Amendment rights by refusing to take MRIs of his left wrist and right ankle or to refer him to an orthopedist who could determine if medical footwear was necessary to correct his right foot problem. (Dkt. No. 1 ¶ 12.) Defendants argue that (1) any deprivation was not sufficiently serious to trigger Eighth Amendment scrutiny; and (2) they were not deliberately indifferent. (Dkt. No. 92–10 at 13–14.) Defendants are correct.

Even if one assumes that the deprivation was sufficiently serious to trigger Eighth Amendment scrutiny, the evidence does not raise a triable issue of fact that Defendants were deliberately indifferent. Regarding the MRIs, Dr. Weissman declares that "Dr. Richards and I felt, in our medical judgment, an MRI was not warranted." Because Plaintiff's "pain and numbness was improving with time, Dr. Richards requested, and I approved, physical therapy for [P]laintiff beginning in January 2003." (Weissman Aff. ¶ 11.) In September 2003, Dr. Richards referred Plaintiff to an orthopedist for treatment of his left wrist because, after completing physical therapy, Plaintiff was "still having [a] considerable amount of pain." (Weissman Aff. Ex. A–13.) The orthopedist examined Plaintiff and reported that Plaintiff "seems to be improving at this point and unfortunately, there is not much else I can suggest for Henry to improve or accelerate his healing." (Weissman Aff. Ex. A–14.)

Plaintiff filed a grievance a year after seeing the orthopedist complaining that Dr. Richards and Dr. Weissman "willfully refused to examine my injuries, to provide medical treatment for said injuries, and to order an MRI test of said injuries conducted ... in an attempt to prevent me from proving the precise nature and extent of my injuries in a court of law and, thus, to dissuade me from suing." (P.'s Decl. in Opp'n to Aff. of Evelyn Weissman, Ex. D.) Plaintiff argues that this grievance proves that he "continued to complain to these

defendants about continuing severe pain in his left wrist and right ankle for more than one year after he had been evaluated by the orthopedist." (Dkt. No. 109 at 24–25.) The grievance Plaintiff cites does not mention any "continuing severe pain in his left wrist and right ankle." Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's Eighth Amendment claims against Defendants Weissman and Richards. [33]

### B. Ham/Grievances

Plaintiff alleges that Defendant Ham violated his Eighth Amendment rights by refusing to loosen or remove his restraints on November 7 and 14, 2002. (Dkt. No. 1 ¶¶ 9–10.) He further alleges that Defendants Brousseau and Donelli violated his constitutional rights by refusing to forward his grievance regarding Defendant Ham for an investigation. (Dkt. No. 1 ¶¶ 28–29.) Defendants argue that (1) Plaintiff failed to exhaust his administrative remedies regarding his claims against Defendant Ham; (2) Plaintiff's allegations are not "sufficiently serious" to implicate the Eighth Amendment; and (3) Plaintiff's allegations regarding the handling of his grievance do not raise a constitutional claim. (Dkt. No. 92–10 at 21–23, 38.)

### 1. Exhaustion of Administrative Remedies

**\*13** Defendants argue that Plaintiff failed to exhaust his administrative remedies regarding his claims against Defendant Ham. (Dkt. No. 92–10 at 21–23.) I find that there is a triable issue of fact that Plaintiff's failure to receive a final decision on the merits of his grievance regarding Defendant Ham was justified.

The Prison Litigation Reform Act ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." [34] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." [35] The Department of Correctional Services ("DOCS") has available a well-established three-step inmate grievance program. [36]

Generally, the DOCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances. [37] First, an inmate must file a complaint with the facility's IGP clerk within twenty-one (21) calendar days of the alleged occurrence. If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen (16) calendar days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen (16) calendar days of receipt of the grievance, and issues a written decision within two (2) working days of the conclusion of the hearing. Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven (7) calendar days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within twenty (20) calendar days of receipt of the grievant's appeal. Third, a grievant may appeal to the central office review committee ("CORC") within seven (7) working days of receipt of the superintendent's written decision. CORC is to render a written decision within thirty (30) calendar days of receipt of the appeal. It is important to note that any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process. [38] If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

Here, Plaintiff declares that on the day of the first incident with Defendant Ham, he asked a Five Points Correctional Facility officer for a grievance form. (P.'s Decl. in Opp'n to Aff. of Karen Bellamy ¶ 17.) The officer did not give Plaintiff a form and told Plaintiff that he would need to file his grievance at Elmira Correctional Facility, where the incident had occurred. *Id.* Although an April 16, 2004, revision to the inmate grievance procedure specified that grievances "may only be filed at the facility where the inmate is housed even if it pertains to another facility," (*Id.,* at Ex. A), the procedures in effect at the time Plaintiff asked for a form to file a complaint against Defendant Ham were silent as to which facility should handle a particular grievance. Even if one assumes that the Five Points officer's advice was correct under DOCS practice at the time, it is difficult to see how Plaintiff

could have filed a grievance at Elmira. Plaintiff was only
at Elmira Correctional Facility for a few hours after
receiving these instructions from the officer, during which
time he was handcuffed and shackled. (Dkt. No. 1 ¶ 10.)

**\*14** On December 8, 2002, Plaintiff filed a grievance at
Upstate Correctional Facility regarding Defendant Ham's
actions. (Dkt. No. 92–4, Ex. 4.) Defendant Brousseau, the
IGP supervisor, returned the grievance to Plaintiff because
Plaintiff failed to submit it within fourteen days of the
incident. [39] *Id.*

On December 18, 2002, Plaintiff submitted a grievance
complaining that Defendant Brousseau's refusal to accept
the previous grievance violated his constitutional right
of access to the courts because it prevented him from
exhausting his claims against Defendant Ham. (Dkt. No.
92–4, Ex. 4.) The IGRC denied Plaintiff's grievance on
December 26, 2002. *Id.* The IGRC stated that Defendant
Brousseau's refusal was proper because Plaintiff "did not
present any mitigating circumstances that would warrant
accepting the [untimely] complaint ... [Plaintiff] had been
back at the facility since 11/15/02 and had filed one
grievance during this time period, this shows he had ample
opportunity to file this complaint in a timely manner."
*Id.* The grievance to which the IGRC's decision referred
was a grievance regarding Defendant Richards' denial
of Atarax. (Dkt. No. 92–4, Ex. 3.) Because that event
occurred at Upstate Correctional Facility, there was no
ambiguity about where Plaintiff's grievance should be
filed.

Plaintiff appealed the IGRC's determination to the
Superintendent. (Dkt. No. 92–4, Ex. 4.) Defendant
Donelli affirmed the IGRC's determination on January
15, 2003. *Id.*

Defendants assert that Plaintiff "did not appeal
[Defendant Donelli's decision] to the CORC." (Dkt. No.
92–3, Stmt. Pursuant to Rule 7.1(a)(3) ¶ 8.) For this
proposition, they cite Exhibit 4 and to the Affidavit
of Karen Bellamy. *Id.* Exhibit 4 shows that Plaintiff
signed an "Appeal Statement" stating that he wished
to appeal Defendant Donelli's decision to CORC. (Dkt.
No. 92–4, Ex. 4.) The Appeal Statement was signed
by a grievance clerk. *Id.* That exhibit also shows that
Defendant Brousseau responded to an inquiry regarding
the status of the grievance by stating that the grievance
had been received by CORC and was being processed. *Id.*

However, the record before the Court does include any
final disposition from CORC of Plaintiff's appeal. The
appeal does not appear in a list provided in the Affidavit
of Karen Bellamy of grievances on which Plaintiff received
a final decision from CORC. (Bellamy Aff. Ex. B.) Thus,
Plaintiff never received a decision from CORC and did not
exhaust his administrative remedies. *See Mendez v. Artuz,
No. 01 CIV. 4157, 2002 U.S. Dist. LEXIS 3263, at \* 4,
2002 WL 313796, at \* 2 (S.D.N.Y. Feb.27, 2002).* Even
if CORC had acted on Plaintiff's appeal, I assume that
CORC would have upheld the IGRC's finding and denied
Plaintiff's grievance as untimely. In that event, I would
find that Plaintiff had not exhausted his administrative
remedies because "courts consistently have found that
CORC's dismissal of a grievance appeal as untimely
constitutes failure to exhaust available administrative
remedies." *Soto v. Belcher,* 339 F.Supp.2d 592, 595
(S.D.N.Y.2004).

**\*15** Plaintiff's failure to exhaust, however, does not
end the inquiry. The Second Circuit has held that a
three-part inquiry is appropriate where a prisoner has
failed to exhaust his administrative remedies. [40] First,
"the court must ask whether [the] administrative remedies
[not pursued by the prisoner] were in fact 'available'
to the prisoner." [41] Second, if those remedies were
available, "the court should ... inquire as to whether
[some or all of] the defendants may have forfeited
the affirmative defense of non-exhaustion by failing
to raise or preserve it ... or whether the defendants'
own actions inhibiting the [prisoner's] exhaustion of
remedies may estop one or more of the defendants
from raising the plaintiff's failure to exhaust as a
defense." [42] Third, if the remedies were available and
some of the defendants did not forfeit, and were not
estopped from raising, the non-exhaustion defense, "the
Court should consider whether 'special circumstances'
have been plausibly alleged that justify the prisoner's
failure to comply with the administrative procedural
requirements." [43] Justification "must be determined by
looking at the circumstances which might understandably
lead ... uncounselled prisoners to fail to grieve in the
normally required way." *Giano v. Good,* 380 F.3d 670,
678 (2d Cir.2004). Here, the silence of the regulations
regarding which facility was the proper venue for
Plaintiff's grievance, the bad advice that Plaintiff received
from the officer at Five Points, and Plaintiff's inability
to follow that advice because he was shackled during

his entire tenure at Elmira create a triable issue of fact that Plaintiff's failure to file a timely grievance regarding Defendant Ham's actions was justified. I therefore find that summary judgment is not appropriate on the grounds that Plaintiff failed to exhaust his administrative remedies.

### 2. *"Sufficiently Serious"*

Defendants argue that there is not a triable issue of material fact regarding Plaintiff's Eighth Amendment claim against Defendant Ham because "Plaintiff's alleged 'enormous pain' is nothing more than *de minimis* for Constitutional purposes." (Dkt. No. 92–10 at 22–23.)

Claims that prison officials applied restraints too tightly are analyzed under the Eighth Amendment as claims of excessive force. *See Davidson v. Flynn,* 32 F.3d 27 (2d Cir.1994). When prison officials are "accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The extent of any injury suffered by the inmate "is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation or instead evinced such wantoness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.* at 7 (citation and quotation marks omitted).

> **\*16** In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.

*Id.* (citation and quotation marks omitted). In other words, not "every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and usual punishments

necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9 (officers who punched and kicked handcuffed and shackled inmate used unconstitutional force although inmate required no medical attention) (citations omitted); *Davidson,* 32 F.3d at 30 n. 1 (officers who placed handcuffs too tightly on inmate in retaliation for filing lawsuits used unconstitutional force where inmate suffered permanent scarring and numbness); *compare Warren v. Purcell,* No. 03 Civ. 8736, 2004 U.S. Dist. LEXIS 17792, at *24, 2004 WL 1970642 (S.D.N.Y. Sept.3, 2004) (officers who placed prisoner in tight restraints did not violate constitution where prisoner suffered temporary pain, numbness and swelling and no improper or wanton motive was suggested for the officers' actions). [44]

Plaintiff does not allege that he was permanently injured as a result of Defendant Ham's actions. Plaintiff states that he suffered "enormous pain" and "severe swelling" as a result of being shackled so tightly. (Dkt. No. 109 at 38.) Although this would not end the Eighth Amendment inquiry if Defendant Ham's actions had been more egregious, there is simply no evidence in the record that Defendant Ham applied restraints to Plaintiff "maliciously and sadistically to cause harm" or in a way that was "repugnant to the conscience of mankind." Therefore, I recommend that the Court grant Defendants' motion and dismiss Plaintiff's claims against Defendant Ham.

### 3. *Grievances*

Plaintiff alleges that Defendants Brousseau and Donelli "refused to forward" his complaint regarding Defendant Ham's actions "for an investigation" (Dkt. No. 1 ¶¶ 28–29), thus violating his First Amendment right to petition the government. (Dkt. No. 109 at 50–51.) Defendants argue that Plaintiff's allegation fails to state a constitutional violation. (Dkt. No. 92–10 at 38.) Defendants are correct.

The First Amendment protects a prisoner's right to meaningful access to the courts and to petition the government for the redress of grievances. *See Bill Johnson's Rest., Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). However, inmate grievance programs created by state law are not required by the Constitution and

consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim. *Cancel v. Goord,* No. 00 Civ.2042, 2001 WL 303713, *3 (S.D.N.Y. Mar. 29, 2001). If prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim. *See Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991). "Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983." *Cancel,* 2001 WL 303713, at *3; *see also Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003); *Mahotep v. DeLuca,* 3 F.Supp.2d 385, 390 (W.D.N.Y.1998).

**\*17** *Shell v. Brzezniak,* 365 F.Supp.2d 362, 369–370 (W.D.N.Y.2005). Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the claims against Defendants Brousseau and Donelli for their handling of Plaintiff's grievance regarding Defendant Ham.

### C. Frisk Room Incident/Aftermath/Grievances

Plaintiff alleges that he threatened to sue Defendants Nephew, Desotelle, and Snyder if they used force to put on his coat. (Dkt. No. 1 ¶ 15.) Plaintiff alleges that, in retaliation for this threat, (1) Defendant Wright conspired with Defendant Snyder to subject Plaintiff to excessive force; (2) Defendants Duprat, Snyder, and Bogett used excessive force on Plaintiff; (3) Defendants Wright, Nephew, Desotelle, and Snyder falsified misbehavior reports against Plaintiff; and (4) Defendant Bezio failed to intervene to prevent the use of excessive force.[45] (Dkt. No. 1 ¶¶ 16–22.) He further alleges that Defendants Brousseau and Donelli would not allow Plaintiff to file a grievance regarding these events. (Dkt. No. 1 ¶¶ 30–31.) Finally, he alleges that Defendants Girdich and Eagen denied the grievance he filed regarding Defendant Brousseau and Donelli's refusal to process Plaintiff's grievance. (Dkt. No. 1 ¶¶ 32–34.)

#### 1. *Exhaustion of Administrative Remedies*

Defendants argue that Plaintiff failed to exhaust his administrative remedies regarding any of these claims. (Dkt. No. 92–10 at 25–26, 31.) Plaintiff declares that on January 13, 2003, he attempted to submit a grievance to Defendant Brousseau regarding the claims. (P.'s Decl. in Opp'n to Aff. of Karen Bellamy ¶ 26.) Plaintiff declares

that Defendant Brousseau "refused to file and process the grievance ... in order to prevent me from suing the officials named in the grievance." *Id.* ¶ 27.

On April 3, 2003, Plaintiff submitted a grievance complaining that Defendant Brousseau had refused to accept his January 13 grievance. (Dkt. No. 92–4, Ex. 8.) Plaintiff requested "[t]hat Ms. Brousseau submit the grievance complaint in question to the IGRC. Alternatively, that I be allowed to resubmit a copy of the grievance complaint in issue to the IGRC before moving for judicial intervention." *Id.* CORC denied the grievance on May 28, 2003, stating that it had "not been presented with sufficient evidence to substantiate any malfeasance" by Defendant Brousseau. *Id.*

As discussed above, Second Circuit precedent holds that a defendant may be equitably estopped from raising the exhaustion defense if he or she engaged in conduct that hindered the plaintiff's ability to pursue his or her administrative remedies. *Ziemba v. Wezner,* 366 F.3d 161, 163–64 (2d Cir.2004). A prison official's refusal to accept or forward a prisoner's grievance is conduct that hinders a plaintiff's ability to pursue administrative remedies. *Sandlin v. Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y.2008). Thus, Plaintiff's declaration that Defendant Brousseau refused to accept his grievance raises a triable issue of fact that Defendants are estopped from asserting the exhaustion defense. Therefore, I recommend that the Court reject Defendants' argument that they are entitled to summary judgment as a result of Plaintiff's failure to exhaust his administrative remedies.

#### 2. *Conspiracy*

**\*18** Defendants move for summary judgment of Plaintiff's conspiracy claim.[46] They argue that (a) Plaintiff has not shown that there was any meeting of the minds; and (b) the claim is barred by the intracorporate conspiracy doctrine.[47] (Dkt. No. 92–10 at 31–32.)

##### a. *Meeting of the Minds*

Defendants argue that Plaintiff has not provided any factual basis for a finding that Defendants had a "meeting of the minds" as required for a conspiracy claim. (Dkt. No. 92–10 at 31–32.) I find that Plaintiff has raised a triable issue of fact.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999) (citations omitted).

Plaintiff has raised a genuine issue of material fact as to all of the elements of his § 1983 conspiracy claim. Plaintiff states in his verified complaint that Defendant Wright told him that " '[t]ransportation vans don't have cameras. You're going to learn not to spit ... [at] staff and not threaten us with lawsuits.' " (Dkt. No. 1 ¶ 16.) The next day, Defendant Duprat called Defendant Snyder "to arrange a beating" of Plaintiff. (Dkt. No. 1 ¶ 21.) Defendant Snyder entered the transportation van in which Plaintiff was sitting, said "Wright, my boss, doesn't like [you suing us] and sent this as a reminder," and then punched and slapped Plaintiff until Plaintiff lost consciousness. (Dkt. No. 1 ¶¶ 21–22.) A reasonable jury could, if it found Plaintiff's testimony credible, return a verdict for Plaintiff on his conspiracy claim based on this evidence.

### b. *Intracorporate Conspiracy Doctrine*

Defendants argue that Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine. (Dkt. No. 92–10 at 32.) Under that doctrine, employees of a single corporate entity are legally incapable of conspiring together. *Bond v. Board of Educ. of City of New York,* 97–cv–1337, 1999 U.S. Dist. LEXIS 3164, at *5, 1999 WL 151702, at *2 (W.D.N.Y. Mar.17, 1999). "This doctrine applies to public entities and their employees." *Lee v. City of Syracuse,* 603 F.Supp.2d 417, 442 (N.D.N.Y.2009) (citations omitted). Although the Second Circuit has recognized the doctrine in the context of 42 U.S.C. § 1985, *see Herrmann v. Moore,* 576 F.2d 453, 459 (2d Cir.1978); *Girard v. 94th and Fifth Avenue Corp.,* 530 F.2d 66, 72 (2d Cir.1976), it has not extended its application of the doctrine to conspiracy claims under § 1983. Several district courts in the Second Circuit have, however, applied the doctrine to § 1983 cases. [48] The district court cases cited in the footnote applied the intracorporate conspiracy doctrine to § 1983 without discussing whether it was appropriate to do so. In *Anemone v. Metropolitan Transportation Authority,* 419 F.Supp.2d 602, 604 (S.D.N.Y.2006), the Southern District

squarely held that the intracorporate conspiracy doctrine should be applied to § 1983 cases because "the doctrine's logic is sound" and not "a single case within the Second Circuit [has] held the doctrine inapplicable to Section 1983 claims." I will assume that the doctrine applies in § 1983 cases.

**\*19** Even where the intracorporate conspiracy doctrine applies, there is an exception to the doctrine where "individuals pursue personal interests wholly separate and apart from the entity." *Orafan v. Goord,* 411 F.Supp.2d 153, 165 (N.D.N.Y.2006) (citation and quotation marks omitted), *vacated and remanded on other grounds, Orafan v. Rashid,* No. 06–2951, 249 Fed. Appx. 217 (2d Cir. Sept.28, 2007). I have previously found that a triable issue of fact exists regarding whether officers acted pursuant to their personal interests where a prisoner alleges that officers assaulted him in retaliation for participating in a federal lawsuit. *Medina v. Hunt,* No. 9:05–CV–1460, 2008 U.S. Dist. LEXIS 74205, 2008 WL 4426748 (N.D.N.Y. Sept.25, 2008). Other courts have found that the personal interest exception applies, and thus allowed conspiracy claims to proceed, where it was alleged that officers conspired to cover up their use of excessive force. *Hill v. City of New York,* No.03 CV 1283, 2005 U.S. Dist. LEXIS 38926, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005). I find that the exception applies here because, as in *Medina,* Defendants allegedly conspired to retaliate against Plaintiff for his exercise of his right to access the courts. Therefore, I recommend that the Court deny Defendants' motion for summary judgment of the conspiracy claim against Defendants Wright, Snyder, and Duprat.

### 3. *Excessive Force*

Defendants move for summary judgment of Plaintiff's excessive force claims. They argue that there is no "objective evidence" that any excessive force was used. (Dkt. No. 92–10 at 33–35.) Specifically, Defendants argue that:

> [P]laintiff alleges that ... [D]efendants Snyder, Bogett, and Duprat punched him, slapped him, knocked him unconscious, and caused his ear to bleed. There is no objective evidence to support this conclusory allegation. An unusual incident report was generated because of [P]laintiff's behavior on January 3, 2003, but the report specifically states that no force was used on [P]laintiff. To the extent [P]laintiff is claiming the alleged force

was used in the van, after the incidents described in the unusual incident report, there is no objective evidence to support this conclusion either. Plaintiff's medical records for January 3, 2003, upon arrival at Five Points C.F. indicate "arrived via van with cuffs & chains and spit net-complains of pain and itching," that [P]laintiff was escorted to 12 building, and that [P]laintiff was given Naprosyn and Benadryl. There is no indication of bleeding, or that [P]laintiff reported being assaulted in the January 3, 2003 entry, or the entries for January 4, 5, and 6, 2003. Plaintiff does report being "knocked-out and beaten everywhere" on January 7, 2003, while still at Five Points C.F., but without any record of reporting this type of conduct for the four (4) days prior to January 7, 2003, it is not credible that the incident to which [P]laintiff is referring occurred on January 3, 2003. Moreover, the January 7, 2003, entry does not indicate whether [P]laintiff was claiming to have been "knocked out and beaten everywhere" by staff or other inmates. Plaintiff has no objective evidence to support his claim of excessive force.

   **\*20**   (*Id.* at 34–35, citations omitted.)

Defendants refer to Plaintiff's allegations as "conclusory." "Conclusory" means to "express[ ] a factual inference without stating the underlying facts on which the inference is based." *Black's Law Dictionary* 284 (7th ed.1999). Plaintiff's allegations are not conclusory. Rather, Plaintiff describes the incident in detail. The ultimate determination of whether or not Defendants used excessive force, then, will rest largely on the finder of fact's judgment regarding Plaintiff's credibility.

Defendants, naturally, do not find Plaintiff credible. In general, of course, "[c]redibility determinations ... are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir.1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."). Although Defendants do not explicitly say so, their argument that "Plaintiff has no *objective* evidence" is apparently an attempt to invoke a "narrow exception" to the general rule that credibility determinations are not to be made on summary judgment. *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005); *Blake v. Race,* 487 F.Supp.2d 187, 202 (E.D.N.Y.2007). In *Jeffreys,* the Second Circuit held that in the "rare circumstance where

the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete," the court may appropriately conclude at the summary judgment stage that no reasonable jury would credit the plaintiff's testimony. *Jeffreys,* 426 F.3d at 554.

The narrow holding of *Jeffreys* is not applicable here for three reasons. First, in order for the *Jeffreys* exception to apply, the plaintiff must rely "almost exclusively on his own testimony." *Jeffreys,* 426 F.3d at 554. Here, Plaintiff is not relying "almost exclusively on his own testimony." Rather, because of Defendants' conduct during discovery, Plaintiff is relying on his own testimony plus adverse inferences drawn in his favor. As a consequence of Defendants' conduct during discovery, I ordered that Plaintiff could "ask the Court to draw factual inferences favorable to him based upon the missing photographs of January 3 and 10, 2003." (Dkt. No. 107 at 2.) Plaintiff requests that the Court draw the following inference in his favor: "That were the Defendants to provide the Court with the missing photographs taken of [Plaintiff] at Five Points C.F. on January 3, 2003, such photographs would reveal that [Plaintiff] had bruises and lacerations on his face, right ear, and chest." (Dkt. No. 109 at 46–47 n. 15.) The Court grants Plaintiff's request and draws the inference in his favor.

Second, in order for the *Jeffreys* exception to apply, Plaintiff's testimony must be "contradictory or incomplete." *Jeffreys,* 426 F.3d at 554. Here, Plaintiff's testimony is neither contradictory nor incomplete. In *Jeffreys,* the plaintiff, who alleged that police officers had beaten and defenestrated him, confessed on at least three occasions that he had jumped out of a third-story window rather than having been thrown. *Id.* at 552. The plaintiff did not publicly state that he had been thrown out of a window by police officers until *nine months* after the incident. *Id.* The plaintiff could not identify any of the individuals whom he alleged participated in the attack or describe their ethnicities, physical features, facial hair, weight, or clothing on the night in question. *Id.* Here, in contrast, Plaintiff has never given a contradictory account of the events in the transportation van on January 3, 2003. Although Defendants stress that Plaintiff's medical records do not show that Plaintiff reported the incident upon arrival at Five Points, Plaintiff states in his verified complaint that he informed Defendant Hensel on the day of the incident that he had been beaten by Upstate guards. He further alleges that Defendant Hensel made

no record of his complaint. (Dkt. No. 1 ¶ 23.) Plaintiff's claim regarding Nurse Hensel is corroborated by the log book entry that shows that he was taken to see Nurse Hensel on January 3, 2003, and the fact that Defendants did not provide the Court with a medical record of that visit with Plaintiff's other Five Points Medical Records. (Defs.' Resp. to P's 1st Req. for Produc. of Docs., Ex. E at 11; Bannister Aff.) As Defendants admit, Plaintiff's medical records show that within four days of the incident he reported that he had been "knocked-out and beaten everywhere." (Bannister Aff. ¶ 10.) In addition, unlike in *Jeffreys,* Plaintiff has specifically identified the officers whom he alleges beat him.

**\*21** Third, the *Jeffreys* exception is most applicable where the plaintiff's version of events is contradicted by defense testimony. In *Jeffreys,* for instance, one of the arresting officers declared that, contrary to the plaintiff's version of events, he was the only officer who entered the room where the plaintiff was allegedly beaten and that he saw the plaintiff jump out the open window. *Jeffreys,* 426 F.3d at 551–52. Here, Plaintiff's version of events has not been contradicted by an affidavit from any of the officers whom he alleges used excessive force because Defendants' motion for summary judgment is not supported by any affidavit from Defendants Snyder, Duprat, or Bogett. The only proof offered by Defendants that they did *not* use excessive force is a notation on a January 3, 2003, unusual incident report stating "Use of Force: No." (Dkt. No. 92–5, Ex. 16.)

Accordingly, I find that Plaintiff has presented sufficient "objective evidence" to raise a triable issue of fact that Defendants Snyder, Duprat, and Bogett subjected him to excessive force. [49] I therefore recommend that the Court deny Defendants' motion for summary judgment of this claim.

### 4. *False Misbehavior Reports*

Plaintiff alleges that Defendants Nephew, Desotelle, Snyder, and Wright filed false misbehavior reports against him "in retaliation for his having threatened to sue them." (Dkt. No. 1 ¶¶ 17–18.) Defendants argue that (a) Plaintiff forfeited his claim by refusing to attend the disciplinary hearing on the charges; and (b) they would have issued the misbehavior reports regardless of any alleged retaliatory motive. (Dkt. No. 92–10 at 25–29.)

### a. *Forfeiture*

Defendants argue that Plaintiff "cannot establish a prima facie case of retaliation, because although he claims the misbehavior report[s were] 'falsified,' he has forfeited his opportunity to present any evidence calling into question the truth of the misbehavior report[s] by refusing to attend the disciplinary hearing." (Dkt. No. 92–10 at 26.) Defendants cite *Brewer v. Kamas,* 533 F.Supp.2d 318 (W.D.N.Y.2008). In order to analyze *Brewer,* a review of Second Circuit precedent governing prisoners' allegations regarding false misbehavior reports is required.

A prisoner's claim that a correctional officer filed a false misbehavior report may implicate two separate constitutional provisions: (a) the Fourteenth Amendment right to procedural due process; or (b) the right not to be retaliated against for exercising First Amendment rights such as the right of access to the courts or the right to petition the government for redress of grievances.

In the procedural due process context, the Second Circuit has held that while a prisoner "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," he *does* have "the right not to be deprived of a protected liberty interest without due process of law." *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). Where a prisoner is falsely accused of violating disciplinary rules, and a hearing is held on the allegedly false charges that comports with the procedural due process standards set forth by the Supreme Court in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and any resulting guilty finding is based on "some evidence," the correctional officer's filing of unfounded charges does not give rise to procedural due process liability. *Freeman,* 808 F.2d at 953–54.

**\*22** Two years after its *Freeman* opinion, the Second Circuit addressed the second variety of false misbehavior claim—a claim that an officer filed a false misbehavior report in retaliation for the exercise of constitutionally protected rights—in *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988). In *Franco,* a prisoner alleged that correction officers filed a false misbehavior report against him in retaliation for his cooperation with an investigation by the state Inspector General into incidents of inmate abuse at Attica Correctional Facility. *Franco,* 854 F.2d at 586. The defendants moved for summary judgment, arguing that Plaintiff could not state a claim because he had

2009 WL 3486379

received a disciplinary hearing that complied with *Wolff v. McDonnell* and resulted in a guilty finding based on "some evidence." *Id.* The trial court granted the defendants' motion, relying on *Freeman. Id.* The trial court noted, however, "that under [t]his reading of *Freeman,* the mere provision of procedural due process could eliminate all liability in any case in which prison officials had intentionally filed false and unfounded charges." *Id.* The Second Circuit settled "the substantial and troublesome questions raised in th[e] case" by holding that "[a]lthough our decision in *Freeman* accords prison officials wide latitude in disciplining inmates as long as minimum constitutional procedures are employed, that latitude does not encompass conduct that infringes on an inmate's substantive constitutional rights" such as the prisoner's First Amendment rights of access to the courts and to petition for redress of grievances. *Id.* at 590 (citations omitted). Accordingly, the Second Circuit reversed the trial court's judgment and remanded the matter for further proceedings. *Id.* at 590–91.

In *Jones v. Coughlin,* 45 F.3d 677 (2d Cir.1995), the Second Circuit again clarified that the holding in *Freeman* is doctrinally different and distinct from the type of retaliation claim discussed in *Franco.* In *Jones,* a prisoner alleged that correction officers filed a false misbehavior report against him in retaliation for filing an administrative complaint against one of their colleagues. *Jones,* 45 F.3d at 678. At his disciplinary hearing, the prisoner was denied the opportunity to call witnesses. *Id.* He was found guilty and sentenced to serve 120 days in the SHU. *Id.* After he had served his SHU sentence, DOCS official Donald Selsky reversed the decision and expunged it from the prisoner's record. *Id.* at 679. The prisoner filed suit. *Id.* The trial court granted the prison officials' motion for summary judgment, finding that the prisoner's allegations against the corrections officers failed to state a claim under *Freeman* and that the prisoner's allegations against the hearing officer failed because any procedural due process defects in the hearing had been cured by Selsky's reversal of the decision. *Id.*

**\*23** On appeal, the Second Circuit stated that *Freeman* did not provide the "proper framework" for a decision in the case for both "factual and doctrinal reasons." *Jones,* 45 F.3d at 679. Factually, the case was distinguishable "if, as alleged, Jones was unfairly denied the right to call key witnesses in defense of the charges against him." *Id.* Doctrinally, the Second Circuit stated that "we have held

that a prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right such as petitioning the government for redress of his grievances, and that this right is distinct from the procedural due process claim at issue in *Freeman.*" *Id.* at 679–80. The Second Circuit vacated the trial court's judgment and remanded for further proceedings. *Id.* at 680.

This brings us to *Brewer.* In *Brewer,* a prisoner alleged that correction officers filed false misbehavior reports against him in retaliation for filing grievances. *Brewer,* 533 F.Supp.2d at 323. The prisoner refused to attend his disciplinary hearing and was found guilty. *Id.* He sued the officers in federal court. *Id.* at 324. The officers moved for summary judgment. *Id.* The court granted the motion, finding that the prisoner could not establish that the disciplinary charges were false because (1) he refused to attend his disciplinary hearing; (2) he offered no "explanation as to why he chose not to attend the hearing so as to rebut the charges, or why it was otherwise constitutionally deficient"; and (3) he did not "offer ..., in opposition to [d]efendants' motion, any evidence calling into question the truth of the ... charges." *Id.* at 330. (citation omitted). Based on these three factors, the court stated that the plaintiff "was provided with the requisite opportunity to rebut the alleged false disciplinary charges, as required by due process, and Plaintiff, by failing to do so, has waived his right to further challenge the validity" of the misbehavior report. *Id.* (citation omitted).

*Brewer* is not applicable here for three reasons. First, the case is factually distinguishable. In *Brewer,* the prisoner did not offer any explanation for his refusal to attend the hearing, did not explain why the hearing was constitutionally deficient, and did not offer any evidence calling into question the truth of the charges. *Brewer,* 533 F.Supp.2d at 330. Here, Plaintiff has explained that he did not attend the hearing because Defendant LaClair refused to assist him prepare a defense, has argued that the hearing was constitutionally deficient because Defendant Bullis did not call Defendant LaClair and an inmate as witnesses, and has offered his own testimony under penalty of perjury to rebut Defendants' version of the events leading to the misbehavior reports.

Second, Defendants overstate the holding of *Brewer.* The court did not hold that the prisoner had forfeited his opportunity to present evidence calling into question the

truth of the misbehavior report simply by refusing to attend the disciplinary hearing. Rather, the court held that the prisoner had waived his right for three reasons, with the refusal to attend being only one of them. *Brewer,* 533 F.Supp.2d at 330.

**\*24** Third, because the prisoner in *Brewer* asserted a retaliation claim rather than a procedural due process claim, the precedent relied upon by the *Brewer* court is puzzling. The portion of the decision cited at length by Defendants relies on (1) *Freeman,* which is a procedural due process case; (2) language from *Jones* that discusses the ways in which *Jones* was *factually* distinguishable from *Freeman,* rather than the language in *Jones* clarifying that a retaliation claim is *doctrinally* different from the type of procedural due process claim at issue in *Freeman;* and (3) quotes from *Franco* that summarize the procedural due process holding in *Freeman,* rather than quotes from *Franco* discussing the proper analysis of a retaliation claim. Thus, although the prisoner in *Brewer* raised a retaliation claim, the court analyzed it as a procedural due process claim.

Because I find that *Brewer* is factually distinguishable from Plaintiff's case, that the holding in *Brewer* is not as broad as Defendants suggest, and that *Brewer's* legal analysis rests on a line of cases to which the Second Circuit has referred as the improper framework for analyzing a retaliation claim, I recommend that the Court reject Defendants' argument that Plaintiff waived his claim regarding the allegedly false and retaliatory misbehavior reports by failing to appear at his disciplinary hearing. [50]

### b. *Regardless of retaliatory motive*

Defendants argue that there is "ample evidence" that Defendants "would have issued the misbehavior report[s] regardless of whether [P]laintiff threatened to sue them." (Dkt. No. 92–10 at 28, 30.)

"An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right ... states a claim under § 1983. A plaintiff alleging retaliatory punishment bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff. The burden then shifts to the defendant to show that the plaintiff would have

received the same punishment even absent the retaliatory motivation. The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report." *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002) (citations and quotation marks omitted).

Here, the misbehavior reports by Defendants Nephew, Desotelle, and Snyder charged Plaintiff with creating a disturbance, committing an unhygenic act, refusing a direct order, and making threats. (Dkt. No. 92–5, Ex. 11.) As the Second Circuit explained in *Hynes v. Squillace,* 143 F.3d 653 (2d Cir.1998), the "most serious charge" in a misbehavior report that includes charges of creating a disturbance, making threats, and refusing a direct order is the direct order charge. *Hynes,* 143 F.3d at 655, 657. Here, Plaintiff admits that he did not put on his coat when Defendant Nephew ordered him to do so. (Dkt. No. 1 ¶ 15.) Thus, Defendants have met their burden of showing that Plaintiff would have received the same punishment even absent the allegedly retaliatory motive by demonstrating that there is no dispute that Plaintiff committed the most serious of the prohibited conduct charged in the misbehavior report. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the retaliation claims against Defendants Nephew, Desotelle, and Snyder arising from the January 2, 2003, misbehavior reports.

**\*25** The misbehavior report by Defendant Wright charged Plaintiff with committing an unhygenic act, harassment, and threats. [51] (Dkt. No. 92–5, Ex. 11.) The most serious of these charges was the threat charge.

Plaintiff admits that when Defendant Wright asked him to explain what happened in the frisk room, Plaintiff "responded that Wright would not believe his account of the incident, that Wright had unjustifiably interfered with [his] court trip ... and that [Plaintiff] would sue Wright and Snyder for their unlawful acts and actions." (Dkt. No. 1 ¶ 16.) This is certainly an admission to the harassment charge. DOCS Rule 107.11 provides as follows: "An inmate shall not harass an employee or any other person verbally or in writing. Prohibited conduct includes, but is not limited to, using insolent, abusive, or obscene language or gestures." N.Y. Comp.Codes R. & Regs., tit. 7, § 270.1(B)(8)(ii). However, it is not an admission to the threat charge, which requires that "[i]nmate[s] shall

not ... make any threat, spoken, in writing, or by gesture." N.Y. Comp.Codes R. & Regs., tit. 7, § 270.2(B) (3)(I). Therefore, I recommend that the Court deny Defendants' motion for summary judgment regarding the retaliation claim against Defendant Wright.

### 5. *Failure to Intervene*

Plaintiff alleges that Defendant Bezio violated his constitutional rights by failing to intervene to protect Plaintiff from Defendants Duprat, Bogett, and Snyder. (Dkt. No. 1 ¶¶ 19–20.) Defendants move for summary judgment, arguing that there was no underlying constitutional violation with which to intervene. (Dkt. No. 92–10 at 36–37.)

Law enforcement officials can be held liable under § 1983 for not intervening in a situation where another officer is violating an inmate's constitutional rights. *Jean–Laurent v. Wilkinson*, 540 F.Supp.2d 501, 512 (S.D.N.Y.2008) (citation omitted). A state actor may be held liable for failing to prevent another state actor from committing a constitutional violation if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Id.* (citation omitted); *see also Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 129 (2d Cir.1997) ("Failure to intercede to prevent an unlawful arrest can be grounds for § 1983 liability."). Whether an officer can be held liable on a failure to intervene theory is generally a question of fact for the jury to decide. *See Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994) ("Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.").

Here, a jury could determine that Defendant Bezio failed to intervene to protect Plaintiff. Plaintiff's verified complaint states that on the day before the incident he asked Defendant Bezio to protect him while he was being transported to court. (Dkt. No. 1 ¶ 19.) Plaintiff alleges that Defendant Duprat made a threatening comment as he escorted Plaintiff to the transportation van and that Plaintiff informed Defendant Bezio of the threat before they reached the van. (Dkt. No. 1 ¶ 20.) Defendant Bezio merely shrugged his shoulders. *Id.* None of the

defendants has filed an affidavit contradicting Plaintiff's version of events. As discussed above, there is a triable issue of fact that a constitutional violation occurred with which Defendant Bezio could have intervened. Therefore, I recommend that the Court deny Defendants' motion for summary judgment regarding the failure to intervene claim against Defendant Bezio. [52]

### 6. *Grievances*

**\*26** Plaintiff alleges that Defendants Brousseau, Donelli, Girdich, and Eagen violated his constitutional rights by refusing to allow him to file a grievance regarding the events of January 2 and 3, 2003. (Dkt. No. 1 ¶¶ 30–34.) Defendants move for summary judgment, arguing that Plaintiff has not stated a constitutional claim. (Dkt. No. 92–10 at 38.) As discussed above in Section III(B) (3), Defendants are correct. Therefore, I recommend that the Court grant Defendants' motion and dismiss the claims against Defendants Brousseau, Donelli, Girdich, and Eagen regarding the handling of Plaintiff's grievances.

### D. Disciplinary Hearing/Sentence

Plaintiff raises several claims regarding the conduct of his disciplinary hearing, his disciplinary sentence, and his appeal of the sentence. Specifically, he claims that (1) Defendant LaClair violated his right to due process by falsifying a misbehavior report against Plaintiff to avoid serving as Plaintiff's pre-hearing assistant (Dkt. No. 1 ¶ 35); (2) Defendant Bullis violated his due process rights by failing to call an inmate and Defendant LaClair as witnesses (Dkt. No. 1 ¶¶ 36–37); (3) Defendant Bullis violated his Eighth Amendment rights by sentencing him to a 21–day loaf diet (Dkt. No. 1 ¶ 36–37) and Defendants Weissman and Girdich violated his Eighth Amendment rights by approving the loaf diet (Dkt. No. 1 ¶ 38); and (4) Defendant Selsky violated Plaintiff's right to due process by affirming Defendant Bullis' disposition (Dkt. No. 1 ¶ 40).

### 1. *LaClair*

Plaintiff alleges that Defendant LaClair falsified a misbehavior report against him in order to avoid serving as Plaintiff's pre-hearing assistant "and for the purpose of depriving Benitez of due process." [53] (Dkt. No. 1 ¶ 35.)

In order to state a claim for violation of his procedural due process rights, a plaintiff must allege facts plausibly

Benitez v. Ham, Not Reported in F.Supp.2d (2009)
Case 9:15-cv-01485-MAD-DEP   Document 99   Filed 02/16/18   Page 45 of 109
2009 WL 3486379

suggesting that he was deprived of a liberty interest without due process of law. *Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000).

Punishment implicates a protected liberty interest where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular punishment; and (2) the punishment imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Tellier,* 280 F.3d at 80; *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

Here, no liberty interest is implicated. As a result of being found guilty of the disciplinary charges, Plaintiff was sentenced to a loaf diet. The Second Circuit has held that the imposition of a loaf diet does not impose an atypical and significant hardship on inmates, even where the inmate alleges that the diet caused severe stomach pain and weight loss. *McEachin v. McGuinnis,* 357 F.3d 197 (2d Cir.2004). Therefore, I recommend that the Court dismiss Plaintiff's due process claim against Defendant LaClair. [54]

### 2. *Failure to Call Witnesses*

**\*27** Plaintiff alleges that Defendant Bullis violated his right to due process by failing to call the witnesses that Plaintiff requested. (Dkt. No. 1 ¶ 37.) Defendants move for summary judgment, arguing that Plaintiff cannot state a due process claim because he was not deprived of a liberty interest. (Dkt. No. 92–10 at 39–40.) As discussed above, Defendants are correct. *McEachin,* 357 F.2d at 200. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss this claim.

### 3. *Imposition of Loaf Diet*

Plaintiff alleges that Defendant Bullis violated his Eighth Amendment rights by imposing the loaf diet on him and that Defendants Weissman and Girdich violated his Eighth Amendment rights by approving the punishment. (Dkt. No. 1 ¶¶ 37–38.) Defendants move for summary judgment of the claim, arguing that (a) Plaintiff failed to exhaust his administrative remedies; and (b) Defendants were not deliberately indifferent. (Dkt. No. 92–10 at 14–20.)

#### a. *Exhaustion of Administrative Remedies*

Defendants argue that Plaintiff did not exhaust his administrative remedies regarding his Eighth Amendment claims against Defendant Bullis because he did not appeal the grievance he filed regarding Defendant Bullis' imposition of the loaf diet to the CORC. (Dkt. No. 92–10 at 14.) Defendants argue that Plaintiff failed to exhaust his administrative remedies regarding his Eighth Amendment claim against Defendants Weissman and Girdich because he did not file a grievance at all. (*Id.* at 15.)

DOCS has a separate and distinct administrative process for inmates to appeal the result of disciplinary hearings, which is not referred to as a "grievance" process. N.Y. Comp.Codes R. & Regs. tit.7, § 701.3(e)(1)-(2). For Tier III superintendent hearings, such as Plaintiff's, the inmate must file an appeal with Donald Selsky, DOCS Director of Special Housing/Inmate Disciplinary Program, pursuant to New York Compilation of Codes, Rules and Regulations, title 7, section 254.8. The appeal must be filed within 30 days of the inmate's receipt of the hearing officer's written disposition. N.Y. Comp.Codes R. & Regs. tit.7, § 254.8. Plaintiff raised the issue of the loaf diet in his appeal of the disciplinary sentence. (P.'s Decl. in Opp'n to Aff. of Karen Bellamy, Ex. D.) Defendant Selsky denied the appeal. *Id.* at Ex. E. Therefore, Plaintiff exhausted his administrative remedies as to his claim against Defendant Bullis.

Plaintiff declares that on January 18, 2003, he submitted a grievance to Defendant Brousseau complaining about Defendant Bullis' imposition of, and Defendants Weissman and Girdich's approval of, the loaf diet. (P.'s Decl. in Opp'n to Aff. of Karen Bellamy, ¶ 26.) He declares that Defendant Brousseau "deliberately refused to file and process the grievance ... in order to prevent me from suing the officials named in the grievance." *Id.* ¶ 27. Therefore, as discussed above, there is a question of fact that Defendants are estopped from asserting the exhaustion defense.

#### b. *Deliberate Indifference*

**\*28** Defendants argue that Plaintiff has not raised a triable issue of fact that Defendants Bullis, Weissman, and Girdich acted with deliberate indifference when they ordered and approved that the loaf diet be imposed on Plaintiff. (Dkt. No. 92–10 at 15–20.) Defendants are correct.

Where a prisoner claims that punishment imposed following a disciplinary hearing violates his Eighth Amendment rights, the proper analysis of the subjective prong of the claim requires the court to "consider whether the [o]rder was reasonably calculated to restore prison discipline and security and, in that ... context, whether the officials were deliberately indifferent to [the prisoner's] health and safety." *Trammell v. Keane,* 338 F.3d 155, 163 (2d Cir.2003).

Here, the order imposing the loaf diet on Plaintiff was reasonably calculated to restore prison discipline and security. DOCS regulation allow the imposition of the loaf diet as punishment where, *inter alia,* the inmate is found guilty of committing unhygienic acts in the SHU or the inmate is a long-term SHU inmate who is disruptive and who has lost all other available privileges. (Dkt. No. 92–8, Bezio Aff., ¶ 5.) Here, Plaintiff was found guilty of committing unhygienic acts in the SHU. Moreover, Plaintiff is a long-term SHU inmate (he will remain in the SHU until June 3, 2021, and in keeplock until July 1, 2025) who has lost package, commissary, and phone privileges and has lost 11 years worth of good time credits. (Bezio Aff., ¶ 6.) Therefore, the imposition of the loaf diet was reasonably calculated to restore prison discipline.

There is no evidence that Defendants Bullis, Weissman, and Girdich acted with deliberate indifference when they imposed and approved of the loaf diet. To establish deliberate indifference, an inmate must prove that (1) the defendant was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the defendant actually drew that inference. *Farmer,* 511 U.S. at 837; *Chance,* 143 F.3d at 702–703. Here, although Plaintiff told Defendant Bullis that the loaf diet would cause him severe abdominal pains and constipation due to his hepatitis (Dkt. No. 1 ¶ 36), his medical record did not support his assertion. Dr. Weissman declares that "there is nothing in his medical record that indicates that [Plaintiff] is medically unable to receive the restricted diet penalty ... [T]he fact that [P]laintiff is Hepatitis C positive does not mean he cannot receive the restricted diet because Hepatitis C is not a contraindication for the restricted diet." (Weissman Aff. ¶¶ 14–15.) Thus, there is no evidence in the record indicating that Defendants Bullis, Weissman, and Girdich were aware of facts from which the inference could be drawn that the loaf diet would harm Plaintiff or that they

drew that inference. Moreover, Plaintiff admits that he refused to eat the loaf diet. (Dkt. No. 1 ¶ 39.) Accordingly, any weight loss and pain that he experienced could not have resulted from the loaf diet itself. Accordingly, I recommend that the Court grant Defendants' motion and dismiss Plaintiff's Eighth Amendment claims against Defendants Bullis, Weissman, and Girdich.

### 4. *Selsky*

**\*29** Plaintiff alleges that Defendant Selsky affirmed Defendant Bullis' "disciplinary determination, even though he knew or should have known that Bullis violated [Plaintiff]'s clearly established due process rights." (Dkt. No. 1 ¶ 40.) Defendants' motion for summary judgment does not directly address this claim. However, I find that it is subject to *sua sponte* dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) because, as discussed above, Defendant Bullis did not violate Plaintiff's due process rights. Therefore, I recommend that the Court dismiss the claim against Defendant Selsky.

### E. Five Points Health Care

Plaintiff alleges that Defendants Hensel, Goodwin, Kuhlman, and Costello violated his Eighth Amendment rights by failing to provide adequate medical care at Five Points Correctional Facility following the alleged beating by Defendants Snyder, Duprat, and Bogett. (Dkt. No. 1 ¶¶ 23–26.) Defendants move for summary judgment, arguing that (1) Plaintiff failed to serve Defendant Kuhlman; and (2) Plaintiff cannot raise a triable issue of fact that these Defendants violated his Eighth Amendment rights because Plaintiff did not suffer from a serious medical need and Defendants were not deliberately indifferent. (Dkt. No. 92–10 at 6, 20.)

### 1. *Failure to Serve Defendant Kuhlman*

Defendants argue that the claim against Defendant Kuhlman must be dismissed because she was not served within 120 days of the filing of the amended complaint on October 6, 2004. (Dkt. No. 92–10 at 6.) Under the Federal Rules of Civil Procedure, a defendant must be served with the summons and complaint within 120 days [55] after the filing of the complaint. Fed.R.Civ.P. 4(m). The court "must" extend the time for service for an appropriate period if the plaintiff shows good cause for the failure to serve. *Id.*

Here, on June 24, 2005, the summons was returned unexecuted as to Defendant "Coleman." (Dkt. No. 21.) On May 22, 2007, the Clerk's office sent Plaintiff a letter informing him that the Marshals Service had not been able to serve the defendant because there was no one by that name at Five Points Correctional Facility. The Clerk's office provided Plaintiff with another USM–285 form and asked for more information about the defendant. (Dkt. No. 54.) Plaintiff states that he was not able to ascertain Defendant Kuhlman's correct identity until after I issued orders on May 2, 2007, and October 3, 2007, compelling defendants to respond to discovery. (Dkt. No. 109 at 7–8.) The docket shows that on January 31, 2008, Plaintiff attempted to file an amended complaint "correctly identif[ying] defendant Kulhman by substituting the name 'Coleman' ... for 'Kulhman.' " (Dkt. No. 74.) On February 4, 2008, I ordered Plaintiff's motion stricken from the record because the deadline for filing motions to amend had expired on January 30, 2006. (Dkt. No. 75.) I find, therefore, that Plaintiff has demonstrated good cause for his failure to serve Nurse Kuhlman.

2. *Merits*

**\*30** Plaintiff claims that Defendants Hensel, Goodwin, Kuhlman, and Costello violated his Eighth Amendment rights by refusing to treat him for head pain, pain in his liver, pain in his left wrist, and severe body itch. Plaintiff also alleges that he informed Defendant Hensel that "he had ... lost blood from within his right ear." (Dkt. No. 1 ¶¶ 23–26.) Defendants argue that Plaintiff has not raised a triable issue of fact as to either the objective or subjective prong of his Eighth Amendment medical care claim. (Dkt. No. 92–10 at 20.)

As discussed above, the objective prong of an Eighth Amendment medical claim requires the court to determine whether the prisoner was deprived of adequate medical care and, if so, whether the inadequacy was sufficiently serious. *Salahuddin,* 467 F.3d at 279–80. Where the prisoner alleges that he was completely deprived of treatment, the court must examine whether the inmate's medical condition is sufficiently serious. *Id.* at 280. Here, because Plaintiff alleges that he was totally deprived of medical care, I must consider whether the bleeding in his inner right ear, head pain, pain in his liver, pain in his left wrist, and severe body itch are "serious medical conditions," in other words, whether they are conditions "of urgency that may produce death, degeneration, or

extreme pain." *Id.; Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting).

Defendants argue, without analysis, that none of Plaintiff's "conditions constitute a condition of urgency, one that may produce death, degeneration, or extreme pain." (Dkt. No. 92–10 at 20.) As discussed above in regard to Plaintiff's claims against Defendant Weissman and Richardson, I agree that Plaintiff's severe body itch is not a serious medical condition. However, Plaintiff's bleeding inner ear, head pain, and liver pain, as alleged, appear urgent and capable of producing extreme pain. *See Bjorkstrand v. DuBose,* No. CIV. S–08–1531, 2008 WL 5386631, at * 3 (E.D.Cal. Dec.24, 2008) (finding that dried blood in ear was not a serious medical condition because "there was no emergency problem with the left ear, such as active bleeding."). I therefore find that Defendants have not met their burden of showing that they are entitled to judgment as a matter of law on the issue of whether Plaintiff suffered from a serious medical condition.

Defendants argue that Plaintiff cannot raise a triable issue of material fact as to deliberate indifference because the issue of "[w]hether or not [P]laintiff needed treatment or to be seen by a physician amounts to nothing more than a disagreement with the course of treatment—not deliberate indifference." (Dkt. No. 92–10 at 20.) As Plaintiff notes (Dkt. No. 109 at 37), none of the named Five Points Defendants has filed an affidavit supporting Defendants' motion for summary judgment. They have therefore not established that their treatment of Plaintiff was based on their medical judgment. The evidence, when viewed in the light most favorable to Plaintiff, indicates that he arrived at Five Points on January 3 complaining of severe pain inflicted through excessive force and that he received absolutely no treatment for his injuries until Nurse Gardner examined him on January 7. Therefore, I find that Plaintiff has raised a triable issue of fact that Defendants Hensel, Goodwin, Kuhlman, and Costello violated his Eighth Amendment right to adequate medical treatment.

**\*31 ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 92) be ***GRANTED IN PART AND DENIED IN PART;*** and it is further

Benitez v. Ham, Not Reported in F.Supp.2d (2009)

2009 WL 3486379

**RECOMMENDED** that the following claims be dismissed pursuant to Defendants' motion for summary judgment: (1) the Eighth Amendment claims against Defendants Weissman and Richards arising from their treatment of Plaintiff's severe body itch, left wrist, and right ankle; (2) the claims against Defendant Ham; (3) the claims against Defendants Brousseau and Donelli for their handling of Plaintiff's grievance regarding Defendant Ham; (4) the retaliation claim against Defendants Nephew, Desotelle, and Snyder based on their filing of misbehavior reports against Plaintiff; (5) the claims against Defendants Brousseau, Donelli, Girdich, and Eagen regarding their handling of Plaintiff's grievances regarding the events of January 2 and 3, 2003; (6) the claim against Defendant LaClair; (7) the claims against Defendant Bullis; and (8) the Eighth Amendment claim against Defendants Weissman and Girdich for approving the imposition of the loaf diet; and it is further

**RECOMMENDED** that the following claims be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B): (1) Plaintiff's retaliation claim against Defendants Weissman and Richards; and (2) the claim against Defendant Selsky; and it is further

**RECOMMENDED** that the following claims survive summary judgment and *sua sponte* review and proceed to trial: (1) the conspiracy claim against Defendants Wright, Snyder, and Duprat; (2) the excessive force claim against Defendants Snyder, Duprat, Bogett, and Wright; (3) the retaliation claim against Defendants Snyder, Duprat, Bogett, and Wright arising from the use of excessive force; (4) the retaliation claim against Wright arising from his filing of a misbehavior report against Plaintiff; (5) the failure to intervene claims against Defendants Bezio and Duprat; (6) the retaliation claim against Defendant Bezio; and (7) the Eighth Amendment claims against

Defendants Hensel, Goodwin, Kuhlman, and Costello; and it is further

**ORDERED** that the Clerk provide Plaintiff with Form USM 285 for service on Defendant Kuhlman; and it is further

**ORDERED** that the Clerk serve copies of *Miller v. Bailey,* No. 05–CV–5493, 2008 U.S. Dist. LEXIS 31863, 2008 WL 1787692 (E.D.N.Y. Apr. 17, 2008); *Odom v. Poirier,* No. 99 Civ. 4933, 2004 U.S. Dist. LEXIS 25059, 2004 WL 2884409 (S.D.N.Y. Dec.10, 2004); *Warren v. Purcell,* No. 03 Civ. 8736, 2004 U.S. Dist. LEXIS 17792, 2004 WL 1970642 (S.D.N.Y. Sept.3, 2004); *Bond v. Board of Educ. of City of New York,* 97–cv–1337, 1999 U.S. Dist. LEXIS 3164, 1999 WL 151702 (W.D.N.Y. Mar.17, 1999); *Medina v. Hunt,* No. 9:05–CV–1460, 2008 U.S. Dist. LEXIS 74205, 2008 WL 4426748 (N.D.N.Y. Sept.25, 2008); *Hill v. City of New York,* No.03 CV 1283, 2005 U.S. Dist. LEXIS 38926, 2005 WL 3591719 (E.D.N.Y. Dec. 30, 2005); and *Mendez v. Artuz,* No. 01 CIV. 4157, 2002 U.S. Dist. LEXIS 3263, 2002 WL 313796 (S.D.N.Y. Feb.27, 2002) on Plaintiff in accordance with the Second Circuit's decision in *LeBron v. Sanders,* 557 F.3d 76 (2d Cir.2009).

**\*32** Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e)).

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 3486379

---

Footnotes

1    Only two of the named Defendants filed affidavits supporting Defendants' motion for summary judgment. Only one of those affidavits-the affidavit of Defendant Dr. Evelyn Weissman—contradicts Plaintiff's version of events.

2    Plaintiff does not allege that the strip-frisk violated his constitutional rights. Even if he did, I would find that such a claim would not survive *sua sponte* review under 28 U.S.C. § 1915(e)(2)(B). Strip searches conducted in a prison setting are constitutional if they are reasonably related to a legitimate penological goal and are conducted in a reasonable manner. *Frazier v. Ward,* 528 F.Supp. 80, 81 (N.D.N.Y.1981). "However, a strip search is unconstitutional if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish. *See, e.g., Iqbal v. Hasty,* 490 F.3d 143, 172 (2d Cir.2007) (pretrial detainee alleged Fourth Amendment violation where he was subjected to repeated strip and body cavity searches that were not related to legitimate government purposes and designed to punish); *Covino,* 967

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.    23

F.2d at 80 (strip search accompanied by physical and verbal abuse is unconstitutional); *Hodges v. Stanley,* 712 F.2d 34, 35–36 (2d Cir.1983) (second strip search performed soon after a first strip search served no legitimate interest when prisoner was under continuous escort); *Jean–Laurent v. Wilkerson,* 438 F.Supp.2d 318, 323 (S.D.N.Y.2006)." *Miller v. Bailey,* No. 05–CV–5493, 2008 U.S. Dist. LEXIS 31863, at *1, 2008 WL 1787692, at *9 (E.D.N.Y. Apr. 17, 2008). Plaintiff does not allege, and the evidence does not show, that Defendants conducted the strip-frisk with an intent to intimidate, harass, or punish Plaintiff.

3    In their motion for summary judgment, Defendants argue that Plaintiff cannot maintain a claim against Defendant Bezio for these statements because (1) Plaintiff did not exhaust his administrative remedies regarding the statements; and (2) threats are not actionable constitutional violations. (Dkt. No. 92–10 at 35–36.) In his opposition to the motion, Plaintiff states that he did not intend to maintain a separate claim against Defendant Bezio based on the statements. Rather, he included this allegation in his complaint to provide relevant information for his failure to intervene claim. (Dkt. No. 109 at 48.) Therefore, I will not address Defendants' arguments regarding these statements.

4    In their motion for summary judgment, Defendants argue that Plaintiff cannot maintain a claim against Defendant Duprat for this statement because (1) Plaintiff did not exhaust his administrative remedies regarding the statement; and (2) threats are not actionable constitutional violations. (Dkt. No. 92–10 at 35–36.) In his opposition to the motion, Plaintiff states that he did not intend to maintain a separate claim against Defendant Duprat based on the statement. Rather, he included it in his complaint to provide relevant information for his excessive force claim. (Dkt. No. 109 at 48.) Therefore, I will not address Defendants' arguments regarding these statements.

5    The medical records produced by Defendants in support of their motion for summary judgment do not reflect that Plaintiff saw Nurse Hensel on January 3, 2003. However, as the Court has noted previously (Dkt. No. 99 at 3), a SHU log book entry for January 3, 2003, indicates that Plaintiff was "taken to strip frisk room for pictures and to be assessed by R/N Hensel." (Defs.' Resp. to P.'s 1st Req. for Prod. of Docs., Ex. E at 11.) This document corroborates Plaintiff's claim that he saw Defendant Hensel on January 3, 2003. I note, however, that none of the parties included the log book entry in their moving or opposing papers.

6    The complaint refers to this defendant as Nurse "Good." However, Defendants state that her name is actually Goodwin. (Dkt. No. 92–10 at 1 n. 1.) I will refer to her as Nurse Goodwin.

7    The complaint refers to this defendant as Nurse Coleman. As discussed further below, Plaintiff did not serve this defendant. In his opposition to the motion for summary judgment, Plaintiff states that he ultimately learned through discovery that her name is actually Nurse Kuhlman. (Dkt. No. 109 at 6 n. 2.) I will refer to this defendant as Nurse Kuhlman.

8    It is not clear what medications Nurse Kuhlman was distributing, since the Affidavit of Linda Bannister establishes that "nurses cannot give medications until they verify allergies and prescription orders" and that as of January 6, the day after Nurse Kuhlman saw Plaintiff, this verification had not been completed. (Bannister Aff. ¶ 8.)

9    *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is properly made [by a defendant] and supported [as provided in this rule], the [plaintiff] may not rely merely on allegations ... of the [plaintiff's] pleading ....").

10    *Ross v. McGinnis,* No. 00–CV–0275, 2004 U.S. Dist. LEXIS 9367, at * 20–21, 2004 WL 1125177, at *8 (W.D.N.Y. Mar.29, 2004) (internal quotations omitted) (emphasis added).

11    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

12    *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) (citation omitted); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citation omitted).

13    The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ...."

14    *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ( "The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74

(S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

15  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); Wynder v. McMahon, 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); Phelps v. Kapnolas, 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") (citation omitted); Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") (citation omitted); Util. Metal Research & Generac Power Sys., Inc., No. 02–CV–6205, 2004 U.S. Dist. LEXIS 23314, at *4–5, 2004 WL 2613993, at *1–2 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); accord, Straker v. Metro Trans. Auth., 333 F.Supp.2d 91, 101–102 (E.D.N.Y.2004); Tangorre v. Mako's, Inc., No. 01–CV–4430, 2002 U.S. Dist. LEXIS 1658, at *6–7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12(b)(6) motion—one aimed at the sufficiency of the pleadings under Rule 8(a), and the other aimed at the legal sufficiency of the claims).

16  Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) (citation omitted; emphasis added); see also Swierkiewicz, 534 U.S. at 512 (citation omitted); Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (citation omitted).

17  Swierkiewicz, 534 U.S. at 514 (quoting Conley, 355 U.S. at 48); see also Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") (citation omitted); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") (citations omitted).

18  Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), aff'd, 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion); accord, Hudson v. Artuz, 95–CV–4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), Flores v. Bessereau, No. 98–CV–0293, 1998 U.S. Dist. LEXIS 8750, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. See, e.g., Photopaint Technol., LLC v. Smartlens Corp., 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of Gronager v. Gilmore Sec. & Co., 104 F.3d 355 (2d Cir.1996)).

19  Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) (citation omitted); Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.1994).

20  Hernandez, 18 F.3d at 136 (citation omitted); Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir.2003) (citations omitted); Vital v. Interfaith Med. Ctr., 168 F.3d 615, 619 (2d Cir.1999) (citation omitted).

21  "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." Gadson v. Goord, No. 96–CV–7544, U.S. Dist. LEXIS 18131 1997 WL 714878, at * 1, n. 2, 1997 (S.D.N.Y. Nov.17, 1997) (citing, inter alia, Gil v. Mooney, 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " Donhauser v. Goord, 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), vacated in part on other grounds, 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. See Washington v. James, 782 F.2d 1134, 1138–39 (2d Cir.1986) (considering subsequent affidavit as amending pro se complaint, on motion to dismiss) (citations omitted).

Benitez v. Ham, Not Reported in F.Supp.2d (2009)
Case 9:15-cv-01485-MAD-DEP    Document 99    Filed 02/16/18    Page 51 of 109
2009 WL 3486379

22    *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

23    *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

24    *Yang v. New York City Trans. Auth.,* No. 01–CV–3933, 2002 U.S. Dist. LEXIS 20223, 2002 WL 31399119, at *2 (E.D.N.Y. Oct.24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

25    *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted); *see, e.g., See Rhodes v. Hoy,* No. 05–CV–0836, 2007 U.S. Dist. LEXIS 48370, 2007 WL 1343649, at *3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report–Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint-the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process-was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell,* No. 07–CV–0166, 2008 U.S. Dist. LEXIS 62919, 2008 WL 3582743, at *2 (D.Vt. Aug. 13, 2008) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint-lack of subject-matter jurisdiction and lack of standing-were substantive and not formal in nature, rendering repleading futile) (citations omitted); *Hylton v. All Island Cab Co.,* No. 05–CV–2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint-which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence-were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba,* No. 00–CV–1309, 2001 U.S. Dist. LEXIS 737, 2001 WL 58834, at *11 (D.Conn. Jan.23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint-the fact that the defendants were protected from liability by Eleventh Amendment immunity-was substantive and not formal in nature, rendering repleading futile).

26    *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06–1590, 2008 U.S.App. LEXIS 17113, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") (citation omitted).

27    *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) (unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit); *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

28    *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") (citation omitted); *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") (citation omitted); *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

29    *Stinson v. Sheriff's Dep't of Sullivan County.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980).

30    Defendants argue that Plaintiff's severe body itch was not a serious medical need because it was not a "condition of urgency, one that may produce death, degeneration, or extreme pain". (Dkt. No. 92–10 at 13.) Plaintiff argues that severe body itch was a symptom of his Hepatitis C, which is a serious medical need. (Dkt. No. 109 at 28–30.)

31    Dr. Richards did not file an affidavit supporting Defendants' motion for summary judgment.

32    *See Sulton v. Wright,* 265 F.Supp.2d 292 (S.D.N.Y.2003) (holding that a prisoner stated an Eighth Amendment claim against a doctor and physician's assistant who pursued less vigorous treatment than they had originally recommended when their request for approval of knee surgery was denied).

33    Plaintiff's complaint also asserts a retaliation claim against Defendants Weissman and Richards on these facts. (Dkt. No. 1 ¶ 12.) Defendants have not addressed this claim. I find that it is subject to *sua sponte* dismissal pursuant to 28 U.S.C. § 1915(e) (2)(B) because the evidence does not establish that Defendants took adverse action. While the denial of medical care may establish adverse action, *see e.g. Odom v. Poirier,* No. 99 Civ. 4933, 2004 WL 2884409, at * 4 (S.D.N.Y. Dec.10, 2004), I have found that Defendants Weissman and Richards did not deny Plaintiff medical care. Therefore, I recommend that the Court dismiss this claim.

34    42 U.S.C. § 1997e.

35    *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

36    7 N.Y.C.R.R. § 701.7.

37    7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7; *see also White v. The State of New York,* No. 00–CV–3434, 2002 WL 31235713, at *2 (S.D.N.Y. Oct.3, 2002).

38    7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York,* 198 F.Supp.2d 546, 549 (S.D.N.Y.2002), *vacated and remanded on other grounds,* 380 F.3d 680 (2d Cir.2004); *see, e.g., Croswell v. McCoy,* 01–CV–0547, 2003 U.S. Dist. LEXIS 3442, at *12, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him."); *Nimmons v. Silver,* 03–CV–0671, Report–Recommendation, at 15–16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.).

39    The inmate grievance procedures in place at the time of the incident required inmates to file grievances within 14, rather than 21, days.

40    *See Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004). The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford. Chavis v. Goord,* No. 07–4787–pr, 2009 U.S.App. LEXIS 13681, 2009 WL 1803454, at *1 (2d Cir. June 25, 2009).

41    *Hemphill,* 380 F.3d at 686 (citation omitted).

42    *Id.* (citations omitted).

43    *Id.* (citations and internal quotations omitted).

44    Defendants served this unpublished case on Plaintiff with their moving papers as required by Local Rule 7.1(a)(1). (Dkt. No. 92–11.)

45    The complaint contains some language that could, very liberally construed, assert a claim against these Defendants for denial of Plaintiff's right of access to the courts on the theory that, at the time of these events, Plaintiff was being transported for a court appearance. Defendants addressed this possible claim in their motion for summary judgment. (Dkt. No. 92–10 at 40–42.) In his opposition to the motion, Plaintiff states that he did not intend to assert a claim for denial of access to the courts. (Dkt. No. 109 at 55.) I have therefore not addressed Defendants' arguments.

46    Defendants characterize Defendants Wright and Snyder as the only defendants to the conspiracy claim. Read broadly, the complaint also alleges that Defendant Duprat conspired with Defendants Wright and Snyder by calling Snyder "to arrange a beating" of Plaintiff. (Dkt. No. 1 ¶ 21.) I will include Defendant Duprat in my analysis of Plaintiff's conspiracy claim.

47    Defendants also argue that to the extent Plaintiff's conspiracy claim is brought under 42 U.S.C. § 1985, he has not shown that Defendants were motivated by any class-based animus. (Dkt. No. 92–10 at 31–32.) In his opposition to Defendants' motion, Plaintiff states that he did not intend to raise a claim under 42 U.S.C. § 1985. (Dkt. No. 109 at 44 n. 15.) Therefore, I have not addressed Defendants' argument regarding class-based animus.

48    *See Green v. Greene,* No. 9:07–CV–0351 (GTS/DEP), 2009 U.S. Dist. LEXIS 68186, 2009 WL 2424353 (N.D.N.Y. Aug.5, 2009); *Sebast v. Mahan,* No. 09–cv–98 (GLS/RFT), 2009 U.S. Dist. LEXIS 64712, 2009 WL 2256949, at *3 (N.D.N.Y. July 28, 2009); *Lee v. City of Syracuse,* 603 F.Supp.2d 417 (N.D.N.Y.2009); *Lukowski v. County of Seneca,* No. 08–CV6098, 2009 U.S. Dist. LEXIS 14282, 2009 WL 467075 (W.D.N.Y. Feb.24, 2009); *Perrin v. Canandaigua City School Dist.,* No. 08–CV–61536, 2008 U.S. Dist. LEXIS 95280, 2008 WL 5054241 (W.D.N.Y. Nov.21, 2008); *Rodriguez v. City of New York,* —— F.Supp.2d ——, No. 05–CV–5117, 2008 U.S. Dist. LEXIS 9966, 2008 WL 420015 (E.D.N.Y. Feb.11,

2008); *Crews v. County of Nassau,* No. 06–CV–2610, 2009 U.S. Dist. LEXIS 38354, 2007 WL 4591325 (E.D.N.Y. Dec. 27, 2007); *Little v. City of New York,* 487 F.Supp.2d 426 (S.D.N.Y.2007); *Clark v. City of Oswego,* No. 5:03–CV–202 (NAM/DEP), 2006 U.S. Dist. LEXIS 95769, 2007 WL 925724 (N.D.N.Y. March 26, 2007); *Malone v. City of New York,* No. CV–05–2882, 2006 U.S. Dist. LEXIS 61866, 2006 WL 2524197 (E.D.N.Y. Aug. 30, 2006); *Caidor v. M & T Bank,* No. 5:05–CV–297 (FJS/GJD), 2006 U.S. Dist. LEXIS 22980, 2006 WL 839547 (N.D.N.Y. Mar.27, 2006).

**49** Read broadly, the complaint also asserts an excessive force claim against Wright and retaliation claims against Defendants Snyder, Duprat, Bogett, and Wright. Defendants have not addressed these potential claims. I find that the claims are sufficient to withstand *sua sponte* review under 28 U.S.C. § 1915(e)(2)(B).

**50** I note that *Howard v. Wilkerson,* 768 F.Supp. 1002 (S.D.N.Y.1991) holds that "[a]n inmate's refusal to attend a disciplinary hearing waives his *due process objections* ... only when it occurs through no fault of prison officials." *Howard,* 768 F.Supp. at 1006 (citation and quotation marks omitted) (emphasis added). *Howard* is cited in *Nance v. Villafranca,* No. 91–CV–717, 1994 U.S. Dist. LEXIS 11114 (N.D.N.Y. June 20, 1994), which Defendants cite for a different proposition. (Dkt. No. 92–10 at 39.)

**51** Although Defendants assert that Wright charged Plaintiff with disobeying a direct order, the evidence before the court does not support that assertion. (Dkt. No. 92–5, Exs.11–12.)

**52** Read broadly, the complaint asserts a retaliation claim against Defendant Bezio based on these same events and a failure to intervene claim against Defendant Duprat because he was present when Defendant Snyder initially beat Plaintiff. (Dkt. No. 1 ¶ 21.) Defendants have not moved for summary judgment of these claims. I find that these claims are sufficient to withstand *sua sponte* review under 28 U.S.C. § 1915(e)(2)(B).

**53** The only version of the events between Defendant LaClair and Plaintiff in evidence before the Court is Defendant LaClair's misbehavior report. According to that report, when Defendant LaClair went to Plaintiff's cell to assist him, Plaintiff "stated ... that [LaClair] was to get [him] what he wanted." Defendant LaClair "informed him that what he needed had to be pertained (sic) to the misbehavior report. [Plaintiff] then stated "Get what I want or I'll fuck you up." Defendant LaClair "informed him then the interview was over and left the area." (Dkt. No. 92–5, Ex. 15 at 2–3.) Although Plaintiff states in his verified complaint that Defendant LaClair "intentionally and maliciously falsified" the report, he does not offer any other version of what happened. (Dkt. No. 1 ¶ 35.) He alleges that he asked Defendant Bullis to "interview inmate Rolan and LaClair regarding the acts and actions of LaClair that caused him not to provide Benitez pre-hearing assistance," but he does not provide any information about what those interviews might have revealed. (Dkt. No. 1 ¶ 36.) Due to Defendants' failure to provide Plaintiff with pages of the SHU log book for January 14, 2003, Plaintiff asks the Court to draw an adverse inference that "were Defendants to provide the Court with the missing pages of the ... log book ... such pages would not support any of the allegations of misconduct set out in the misbehavior report that LaClair filed against Benitez on that date." (Dkt. No. 109 at 41 n. 14.) Plaintiff does not explain, however, why such an inference is logical.

**54** Although Defendants argue, in regard to Plaintiff's other claims regarding his disciplinary hearing, that due process was not required because no liberty interest was implicated by the imposition of the loaf diet, they did not assert that argument regarding the claim against LaClair. Rather, Defendants argue that Plaintiff waived Defendant LaClair's assistance by threatening him. (Dkt. No. 92–10 at 38–39.) Due process requires that prison officials provide pre-hearing assistance to a prisoner facing disciplinary charges who is confined to the SHU. *Eng v. Coughlin,* 858 F.2d 889 (2d Cir.1988). "An assistant's role is to act as merely a surrogate for the inmate, not a legal advisor or advocate. [A]n assistant's role is to perform tasks like interviewing witnesses that the inmate would perform himself if her were in the general population." *Jackson v. Johnson,* 30 F.Supp.2d 613, 619 (S.D.N.Y.1998) (citations and punctuation omitted). The assistance "must be provided in good faith and in the best interests of the inmate." *Ayers v. Ryan,* 152 F.3d 77, 81 (2d Cir.1998) (citation omitted). An "assigned assistant who does nothing to assist a ... prisoner ... has failed to accord the prisoner his limited constitutional due process right of assistance." *Eng,* 858 F.2d at 898. Defendants cite several cases holding that an inmate may waive his right to assistance by remaining silent when assistance is offered or by refusing to sign a form requesting assistance. (Dkt. No. 92–10 at 39, citing *inter alia, Jackson,* 30 F.Supp.2d at 619.) However, Defendants have not cited any cases holding that an inmate waives his right to assistance by threatening his assistant. In light of my finding that Plaintiff was not deprived of a liberty interest, it is not necessary to reach this issue.

**55** This 120–day service period is shortened, or "expedited," by the Court's Local Rules of Practice (and the Court's General Order 25), which provide that all defendants must be served with the summons and complaint within sixty (60) days of the filing of the complaint. N.D.N.Y. L.R. 4.1(b) (emphasis added).

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 5464776
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Bartram Yihni DABNEY, Plaintiff,
v.
J. PEGANO, Mess Hall Worker, Great Meadow
C.F.; Livermore, Sergeant, Great Meadow C.F.; W.
Drum, Corr. Officer, Great Meadow C.F.; S. Hamel,
Corr. Officer, Great Meadow C.F.; and R. Lamb,
Corr. Officer, Great Meadow C.F., Defendants.

No. 9:10−CV−1109 (GTS/TWD).
|
Sept. 30, 2013.

**Attorneys and Law Firms**

Bartram Yihni Dabney, Dannemora, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the
State of New York, Charles J. Quackenbush, Esq.,
Assistant Attorney General, of Counsel, Albany, NY, for
Defendants.

**Opinion**

### DECISION and ORDER

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se*
prisoner civil rights action filed by Bartram Yihni
Dabney ("Plaintiff") against the five above-captioned
New York State correctional employees ("Defendants"),
are (1) Defendants' motion for summary judgment,
(2) United States Magistrate Judge Thérèse Wiley
Dancks' Report–Recommendation recommending that
Defendants' motion be granted, and (3) Plaintiff's
Objection to the Report–Recommendation. (Dkt.Nos.30,
43, 46.) After carefully reviewing the relevant filings in
this action, the Court can find no error in the thorough
Report–Recommendation, clear or otherwise: Magistrate
Judge Dancks employed the proper standards, accurately
recited the facts, and reasonably applied the law to those
facts. As a result, the Court accepts and adopts the
Report–Recommendation for the reasons stated therein.
(Dkt. No. 43.)

The Court would add only two brief points. First, in
his response to Defendants' motion, Plaintiff failed to
deny (with supporting record citations) the properly
supported facts asserted in Paragraphs 3 through 5
of Defendants' Statement of Material Facts (regarding
exhaustion of administrative remedies). (*Compare* Dkt.
No. 30, Attach. 2 *with* Dkt. No. 34.) Defendants' motion
papers provided Plaintiff with detailed and explicit notice
of the consequences of failing to submit a proper response
to Defendants' Statement of Material Facts. (Dkt. No. 30,
at 3.)[1] In addition, before he responded to Defendants'
motion for summary judgment in this action on December
13, 2012, Plaintiff had responded to motions for summary
judgments in seven other prisoner civil rights actions
in federal court.[2] For all of these reasons, the Court
finds that Plaintiff's failure was "willful" for purposes of
Fed.R.Civ.P. 83(a)(2). As a result, Plaintiff has admitted
the facts asserted in those paragraphs, under Local Rule
7.1(a)(3) of the Local Rules of Practice for this Court.

Second, in his Objections, Plaintiff never specifically
challenges Magistrate Judge Dancks' alternative holding
that Plaintiff's retaliation claim against Defendant Pegano
should be dismissed based on *Heck v. Humphrey,* 512 U.S.
477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). (*Compare*
Dkt. No. 43, at 38–39 *with* Dkt. No. 46.) As a result,
that recommendation is subject to only a clear-error
review, which it survives. Fed.R.Civ.P. 72(b), Advisory
Committee Notes: 1983 Addition.[3] **ACCORDINGLY,** it
is

**ORDERED** that Magistrate Judge Dancks' Report–
Recommendation (Dkt. No. 43) is ***ACCEPTED*** and
***ADOPTED*** in its entirety; and it is further

**ORDERED** that Defendants' motion for summary
judgment (Dkt. No. 30) is ***GRANTED*** in its entirety; and
it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is
***DISMISSED.***

### REPORT–RECOMMENDATION and ORDER

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge.

This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Bartram Yihni Dabney, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleges constitutional violations arising from a May 21, 2010, incident at Great Meadow Correctional Facility ("Great Meadow"). Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 30.) For the reasons discussed below, I recommend that Defendants' motion be granted.

## I. FACTUAL AND PROCEDURAL SUMMARY

**\*2** The claims in this action arise from an altercation between Plaintiff and Defendant Correction Officers Hamel, Drum, and Lamb at Great Meadow. The record indicates that on May 21, 2010, as Plaintiff and other members of his housing unit were walking to the facility mess hall for the noon meal, Defendants Hamel, Drum, and Lamb pulled Plaintiff from the line of other inmates for a search. (Dkt. No. 1 at 7; 30–10 at 6.) After separating Plaintiff from the other prisoners, the corrections officers ordered Plaintiff to place his hands on the wall in preparation for a search. (Dkt. No. 1 at 7 .) Plaintiff complied with the order, and with Plaintiff's hands positioned on the wall, Defendant Hamel began a "pat-frisk" search of Plaintiff's clothes and person. (Dkt. No. 1 at 7; 30–10 at 6.)

At this point in the narrative, the parties' accounts diverge, placing the facts that follow in dispute.

### Plaintiff's Allegations

Plaintiff alleges that after removing him from the line of other inmates, Defendants Drum, Hamel, and Lamb took him to a "blind area, away from all eyes" for the search. (Dkt. No. 1 at 7.) Once Plaintiff had his hands positioned on the wall as Defendants had instructed, Plaintiff claims that Defendant Hamel approached him from behind, picked him up, and slammed him to the floor. *Id.* Plaintiff states that he lost consciousness as a result of the impact. *Id.* Plaintiff states that when he regained consciousness sometime later, he was lying on the floor handcuffed,

with the correction officers assaulting him. (Dkt. No. 1 at 7.) As for the specifics of the assault, Plaintiff states that he remembers Defendant Drum kicking him in the face and Defendant Hamel stomping his back. *Id.* He alleges that at one point, he was slammed face-first into the floor and that while Defendants Drum and Hamel restrained him, Defendant Drum whispered "that that [*i.e.,* the assault] was for writing him or them up." (Dkt. No. 1 at 8.) At some point later during the assault, Plaintiff claims that he heard Defendant Sergenant Livermore ask Defendants Drum, Hamel, and Lamb whether Plaintiff was still breathing and when they answered that he was, Sgt. Livermore cautioned "not too hard." *Id.* At another point during the beating, Plaintiff states that he heard Defendant Lamb ask Defendant Livermore whether "this [was] good enough," and that in response, Sgt. Livermore stated, "yeah." *Id.* As for the meaning of this exchange, Plaintiff states that he later learned that Defendants Lamb and Livermore "were referring to the weapon they were going to use to justify this felonious criminal assault." *Id.*

### Defendants' Version

In their motion, Defendants refute Plaintiff's claim that Defendants Drum, Lamb, and Hamel assaulted him. Rather, Defendants contend that Plaintiff was singled out for a search because Defendant Drum noticed bulges in Plaintiff's pockets while Plaintiff was walking with other inmates to the noon meal. (Dkt. No. 30–10 at 6, 9.) Removing him from the line of other inmates, Defendants contend that Defendant Hamel conducted a pat-frisk search of Plaintiff's clothing. *Id.* While frisking Plaintiff's pants, Defendants allege that Defendant Hamel discovered a sharpened piece of metal in Plaintiff's pocket. *Id.* Defendants state that Hamel then called out to the other correction officers for assistance. (Dkt. No. 30–10 at 6, 8, 9.) Before the other correction officers could assist, Defendants claim that Plaintiff came off the wall and struck Hamel in the head with his elbow. (Dkt. No. 30–10 at 6, 9.) To restrain him, Defendants allege that Hamel placed Plaintiff in a body hold and forced him to the floor. *Id.* On the way down to the floor, Defendants claim that Plaintiff hit his head on a wall-mounted fire extinguisher. *Id.* at 6. Once Plaintiff was down, Defendants state that Defendants Drum and Lamb arrived to assist Hamel wrestle Plaintiff to the floor and place him in handcuffs. (Dkt. No. 30–10 at 6, 8, 9.)

Case 9:15-cv-01485-MAD-DEP    Document 99    Filed 02/16/18    Page 56 of 109
**Dabney v. Pegano, Not Reported in F.Supp.2d (2013)**
2013 WL 5464776

*Plaintiff's Medical Exam and Injuries*

**\*3** Immediately following the incident, Defendants Lamb, Hamel, and Drum escorted Plaintiff to the prison medical unit where he was examined by a nurse. (Dkt. No. 1 at 8; 30–10 at 1–4.) An officer with a video camera recorded Plaintiff's escort to the Great Meadow infirmary. (Dkt. No. 33.) Plaintiff claims that he told the nurse that the correction officers had "knocked out half of my tooth" during the assault, but rather than examining him, the nurse left the room. *Id.* While in the medical unit, DOCCS personnel then took a photograph of Plaintiff to document his injuries. (Dkt. No. 30–11 at 1–17.) The photographs show bruising and redness on the right side of his face and a small cut on his nose. *Id.* at 1. Following the medical examination, Plaintiff was escorted to a cell in the Special Housing Unit. (Dkt. No. 1 at 8.)

In the days following the assault, Plaintiff alleges that he experienced pain and swelling in his limbs and muscles, as well as sharp pain in his ribs, and that he was unable to eat as a result. (Dkt. No. 1 at 8.) Plaintiff alleges that he also experienced pain in his head following the assault and observed blood coming out of his ear. *Id.* Plaintiff states that on May 24, 2010, he informed the on-call nurse of his symptoms and the nurse told him that he would be called to see the doctor. *Id.* Plaintiff told the nurse that he was unable to walk due to his injuries and would need a wheelchair to get to the doctor. *Id.* DOCCS denied this request. *Id.*

*Plaintiff's Disciplinary Charges and Tier III Hearing*

As a result of the May 21, 2010, incident, Defendant Hamel issued Plaintiff a misbehavior report charging Plaintiff with assault on staff and a number of other disciplinary violations. (Dkt. No. 31–9 at 11.) A Tier III hearing on the disciplinary charges was scheduled for May 25, 2010. (Dkt. No. 31–10 at 1–3; 30–8 at 2–3.) Defendant James Pegano, the Food Services Administrator at Great Meadow, was the hearing officer assigned to preside over the disciplinary proceedings. (Dkt. No. 31–10 at 1.)

On the morning of the hearing, the correction officer assigned to escort Plaintiff to the hearing went to Plaintiff's cell to retrieve him. (Dkt. No. 1 at 9; 30–8 at 2.) When the officer arrived, however, Plaintiff informed him that he was unable to walk due to his leg injuries and thus could not accompany him to the proceeding. *Id.* Plaintiff told the officer that he required the assistance of a wheelchair, without which he could not attend the hearing. *Id.*

The transcript of the hearing, held May 25, 2010, at 9:51 a.m., indicates that the officer then went to the location of the hearing and informed Defendant Pegano of Plaintiff's claim that he was unable to walk to the proceeding and that he had requested a wheelchair be provided for his transport. (Dkt. No. 30–8 at 2.) While on the record, Pegano called the facility medical unit to ascertain whether Plaintiff had any injury or condition in his medical file that would cause a mobility impairment rendering him unable to walk to the hearing as he had claimed. *Id.* Speaking onto the record via telephone, a nurse identified as "Sarah Nichols, RN," stated that she was unable to find anything in Plaintiff's medical records "regarding any difficulty with leg movement or any permanent leg pain or anything of that nature." *Id.* Based on this information, Defendant Pegano concluded that Plaintiff did not have a medical condition that prevented him from attending the disciplinary hearing without transportation assistance. *Id.*

**\*4** Finding that no justification existed for Plaintiff's absence, Pegano proceeded with the adjudication and entered a plea of not guilty on Plaintiff's behalf. (Dkt. No. 30–8 at 3.) At the conclusion of the evidence, Pegano found Plaintiff guilty on all charges and entered convictions for the following disciplinary violations: violent conduct, assault on staff, weapons possession, refusing a direct order, and refusing a search and frisk. (Dkt. No. 30–8 at 3; 31–10 at 1–3.) As punishment for these violations, Pegano sentenced Plaintiff to twelve months confinement in the Special Housing Unit, loss of package, commissary, and phone privileges, and a loss of twelve months of good time credit. (Dkt. No. 30–8 at 3; 31–10 at 1.) Plaintiff's sentence was affirmed on appeal.

*Procedural History*

Plaintiff commenced the present civil rights action by filing a complaint on September 16, 2010, alleging multiple constitutional violations arising from the May 21, 2010, incident and the resulting disciplinary convictions. (Dkt. No. 1.) On July 20, 2011, following initial review of Plaintiff's complaint, the Court issued a decision and order

dismissing seven of Plaintiff's ten claims. (Dkt. No. 7 at 28.) Subject to consideration in the present case are Plaintiff's three surviving claims: (1) an excessive force claim against Defendants Hamel, Drum, and Lamb; (2) a failure to intervene claim against Defendant Livermore; and (3) a retaliation claim against Defendant Pegano.

Presently before the Court is Defendants' motion for summary judgment. (Dkt. No. 30.) Plaintiff has opposed this motion. (Dkt. No. 34, 35, 38.)

## II. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id.* at 273. The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 & n. 11, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc. .,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material [1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 309 (2d Cir.2008).

### B. Legal Standard Governing Motion to Dismiss for Failure to State a Claim

**\*5** To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal

Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique,* 405 F.2d 270, 273 (2d Cir.1968); *accord, Katz v. Molic,* 128 F.R.D. 35, 37–38 (S.D.N.Y.1989) ("This Court finds that ... a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

## III. ANALYSIS

### A. Failure to Exhaust

Defendants assert that summary judgment should be granted as to all of Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996). Dismissal is appropriate, according to Defendants, because Plaintiff's failure to include his claims in a proper grievance and to pursue that grievance to completion through the established Inmate Grievance Program procedure bars him from pursuing these claims in the present federal action. (Dkt. No. 30–1 at 6.)

**\*6** The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ago, 548 U.S. 81, 84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532 (citation omitted). Concerning the nature of this limitation, the Supreme Court has held that the failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit. Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citations omitted). In the event that such a defendant establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, the inmate's complaint is subject to dismissal. See Pettus v. McCoy, No. 04–CV–0471, 2006 WL 2639369, at \*1, 2006 U.S. Dist. LEXIS 65221, at \*3 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.) [2]; see also Woodford, 548 U.S. at 94–95 (holding that the PLRA requires "proper exhaustion" of available remedies).

The Supreme Court has explained that "[p]roper exhaustion" under the PLRA requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." Woodford, 548 U.S. at 95; see also Macias v. Zenk, 495 F.3d 37, 44 (2d Cir.2007) (citing Woodford, 548 U.S. at 95). Procedural

compliance is mandatory despite the fact that placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense"; an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. Macias, 495 F.3d at 43 (quoting Johnson, 380 F.3d at 697–98).

In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has a well-established three-step grievance program for inmate complaints. N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5 (2013). Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. Id. at § 701.5(a) (2010). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. Id. at 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (Id. at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing. Id. at § 701.5(b)(3).

**\*7** Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. Id. at 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. Id. at § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. Id. at 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. Id. at 701.5(d)(1)(i). CORC is required to render a written decision within thirty calendar days of receipt of the appeal. Id. at 701.5(d)(3)(ii).

Inmates may seek an extension of the time limits for any of the steps in writing at any of the steps, but such a request must be made within forty-five days of the incident being grieved or the decision being appealed. N.Y. Comp.Codes

R. & Regs. tit. 7, § 701.6(g) (2013). Moreover, if an inmate believes that an extension was wrongly denied, he may file a separate grievance protesting the denial. *Id.*

Generally, if a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies and his claims are subject to dismissal. *Woodford,* 548 U.S. at 93. However, a plaintiff's failure to exhaust does not end the inquiry. In *Hemphill v. New York,* 380 F.3d 680 (2d Cir.2004), the Second Circuit articulated a three-part inquiry for courts to apply when a defendant contends that a prisoner has failed to exhaust available administrative remedies. *Id.* at 86.[3] First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available to the plaintiff and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

### 1. *Plaintiff's evidence of exhaustion*

Applying the exhaustion analysis here, I find as an initial matter that Plaintiff failed to exhaust the available administrative remedies as required by the PLRA because he failed to pursue the grievance process to completion for any of his claims in the present action. As proof of Plaintiff's failure to exhaust, Defendants submit the declaration of Jeffrey Hale, the Assistant Director of the Inmate Grievance Program, whose duties include "management of inmate grievance appeal records generated and kept by DOCCS Central Office Review Committee (CORC)." (Dkt. No. 30–3 at 1, ¶ 1.) In his declaration, Hale states that CORC records indicate that as of March 27, 2012, Plaintiff has pursued a total of eighty-three grievance appeals to CORC. *Id.* at ¶ 4. Of

these eighty-three appeals, Hale states that twenty-three originated at the Great Meadow Correctional Facility. *Id.* Concerning CORC's record of appeals relevant to the May 21, 2010, incident subject to the present action, Hale states that Plaintiff filed only one grievance appeal from Great Meadow during 2010 and that said appeal was filed in February 2010 and concerned an unrelated grievance. *Id.* Hale states that Plaintiff never presented an appeal to CORC concerning a 2010 use of force or failure to protect by Great Meadow security staff or an appeal involving 2010 retaliatory actions by Defendant Pagano. *Id.* at 2, ¶ 5–6. As an exhibit to Hale's declaration, Defendants submit a print out of the record of grievance appeals that Plaintiff has submitted to CORC. (Dkt. No. 30–3, 3–7; 30–4, 1–3.) The print out does not include any record of a grievance appeal filed by Plaintiff concerning his claims in the present action. *Id.*

**\*8** As proof that he did in fact properly exhaust his claims in this action, Plaintiff cites the court to two grievances he filed regarding the claims in this action, as well as letters and other informal complaints seeking resolution of these issues. As discussed below, however, Plaintiff's alleged proof of exhaustion established only that he initiated grievances and other administrative complaints about the claims in this action, not that he pursued them to completion as is required by the PLRA to properly exhaust administrative remedies. *Woodford,* 548 U.S. at 93.

As evidence of his attempts to pursue administrative remedies before filing the present civil action, Plaintiff asserts that he did indeed file IGRC grievances concerning his claims on two separate occasions and that under the circumstances these grievances were sufficient to exhaust his available administrative remedies. First, Plaintiff claims that he filed a grievance about the May 21, 2010, incident with the Great Meadow IGRC within twenty-one days after the incident occurred as required by DOCCS IGP. (Dkt. No. 1 at 4.) He contends that his attempt to pursue this "original grievance" was thwarted, however, when Great Meadow administration threw away his grievance to prevent proper filing. *Id.*[4] (Dkt. No. 34 at 4, ¶ 2.) The second grievance referenced by Plaintiff was filed with the Clinton Correctional Facility ("Clinton") IGRC on August 6, 2010, following Plaintiff's transfer from Great Meadow to Clinton. (Dkt. No. 34 at 21–24.) In this second grievance, Plaintiff requested that the Clinton

2013 WL 5464776

IGRC ascertain why the Great Meadow IGRC had failed to issue a decision on Plaintiff's "original" grievance. *Id.*

Turning first to the question of whether Plaintiff's "original grievance" amounted to "proper exhaustion" under the PLRA, Plaintiff argues that the Great Meadow administration's act of sabotage foreclosed him from pursuing further administrative remedies, rendering them unavailable. However, even if the Court were to accept as true Plaintiff's claim that his grievance "was thrown away" by Great Meadow administration in an attempt to thwart him, Great Meadow's culpable conduct does not excuse Plaintiff's failure to appeal this grievance to the next level. To complete the grievance process and satisfy the PLRA's exhaustion requirement, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can—and must—be appealed to the next level, including CORC. 7 N.Y.C.R.R. § 701.6(g) ( "[M]atters not decided within the time limits may be appealed to the next step."); *see also Goodson v. Silver,* No. 9:09–cv–0494, 2012 WL 4449937, at *4, 2012 U.S. Dist. LEXIS 137177, at *36–37 (N.D.N.Y. Sept.25, 2012); *Murray v. Palmer,* No. 03–CV–1010, 2010 WL 1235591, at *2 & n. 4, 2010 U.S. Dist. LEXIS 32014, at *6 (N.D.N.Y. Mar. 31, 2010) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can—and must—be appealed to the next level, including CORC, to complete the grievance process."). Although Plaintiff asserts that he filed a grievance with Great Meadow about the claims set forth in this action, he failed to file an appeal of this grievance with CORC when the IGRC failed to respond. Without filing such an appeal to his original grievance, Plaintiff has not satisfied the exhaustion requirements of the PLRA. *Woodford,* 548 U.S. at 93.

**\*9** Plaintiff is unable to establish exhaustion of remedies by reference to his second grievance for the same reason. As with his "original grievance" about the May 21, 2010, incident, Plaintiff failed to appeal the decision rendered by the Clinton IGRC to the next level in the IGP process. Indeed, the evidence demonstrates that Plaintiff never filed any appeals whatsoever concerning the claims in this action. Because Plaintiff failed to pursue any of his complaints—formal or informal—to completion, I find that Plaintiff failed to "properly exhaust" his claims in this action as required by the PLRA. *Woodford,* 548 U.S. at 93.

### 2. *Application of Hemphill v. New York, 380 F.3d 680 (2d Cir.2004)*

Having found that Plaintiff has not exhausted his administrative remedies, the Court must turn its attention to the three-part exhaustion inquiry articulated by the Second Circuit in *Hemphill* to determine whether dismissal on failure to exhaust grounds is appropriate here. *Hemphill,* 380 F.3d at 686.

#### a. *Availability of Remedies*

Applying the three-step analysis set forth in *Hemphill* to the present case, I first conclude that there was an internal administrative remedy available to Plaintiff. As explained above, New York prison inmates are subject to the inmate grievance procedure established by DOCCS and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* No. 96–cv–5396 (GBD), 2004 WL 324898 at *4, 2004 U.S. Dist. LEXIS 2492, at *17–18 (S.D.N.Y. February 20, 2004) (*citing Mojias v. Johnson,* 351 F.3d 606 (2d Cir.2003) and *Snider v. Melindez,* 199 F.3d 108, 112–13 (2d Cir.1999)). [5] Here, the IGP provided an available administrative remedy to Plaintiff. This remedy remained available to Plaintiff despite the Great Meadow administration's alleged efforts to prevent filing of his initial grievance because, as discussed above, Plaintiff still had the opportunity to file an appeal as necessary to complete the grievance process when the Great Meadow IGRC failed to respond. *See* 7 N.Y .C.R.R. § 701.6(g) (stating that "matters not decided within the time limits may be appealed to the next step.")

#### b. *Estoppel*

After determining the existence of "available remedies," the second step under *Hemphill* is to "inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686. (citations omitted). Here, Plaintiff does not assert that the individual Defendants themselves inhibited through threats or other conduct his ability to exhaust the administrative remedies available through the DOCCS IGP. As such, estoppel is inapplicable in the present case.

**\*10** Although not attributed to any of the individual Defendants, Plaintiff does contend, as discussed *supra,* that Great Meadow administration prevented him from filing his grievance by throwing it away. Great Meadow's actions in this respect cannot be used as a basis for estoppel because, as discussed above, Plaintiff still has the opportunity—and indeed responsibility—to file an appeal when he failed to receive a response to this grievance. As such, Defendants are not estopped from asserting exhaustion as a defense in this case.

### c. *Special Circumstances*

As for the third step of the *Hemphill* analysis, the Second Circuit instructs the court to "consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* Liberally construed, Plaintiff argues in his response to Defendants' summary judgment motion that such "special circumstances" are present in this case and consist of a combination of some or all of the following five circumstances: (1) that he attempted to file a timely grievance about the May 21, 2010, incident through the Great Meadow IGP, but the Great Meadow administration refused to file said grievance; (2) that he initiated an investigation by the DOCCS Inspector General as an alternative means of redress after Great Meadow failed to respond to his initial grievance; (3) that after being transferred to Clinton Correctional Facility on July 1, 2010, he filed a second grievance on August 6, 2010, requesting that the IGRC ascertain why he had not received a response to his initial grievance concerning the May 21, 2010, incident; (4) that he attempted to appeal the IGRC's response to this second grievance; (5) that his exhaustion of all available appeals from Plaintiff's disciplinary conviction should be deemed sufficient exhaustion of remedies for purposes of his section 1983 claims; and (6) that the fact he sent letters directly to DOCCS officials regarding the claims in this action should suffice to exhaust his administrative remedies in this action.

As discussed below, none of these circumstances justify Plaintiff's failure to comply with DOCCS' administrative procedure for the filing of grievances.

### i. *First Circumstance Asserted by Plaintiff*

The first "special circumstance" asserted by Plaintiff as an excuse for failing to exhaust his administrative remedies in this case is his claim that he "tryied [sic] to file a grievance at Great Meadow but it was thrown away." (Dkt. No. 34 at 4, ¶ 2.) Plaintiff's argument on this point is without merit. As discussed above, even if the Court accepts as true Plaintiff's contention that Great Meadow threw away rather than filed his grievance, this alleged action by Great Meadow does not excuse Plaintiff's failure to file an appeal when he realized that Great Meadow failed to respond. At that point, Plaintiff had the opportunity to complete the grievance process as required to exhaust his administrative remedies, but simply failed to do so. *See* 7 N.Y.C.R.R. § 701.6(g) (stating that "matters not decided within the time limits may be appealed to the next step."). Because Plaintiff failed to exhaust the administrative remedy available to him by appealing Great Meadow IGRC's non-response to this initial grievance to CORC, Plaintiff's allegation that Great Meadow threw away his initial grievance is not a "special circumstance" justifying an excuse from the PLRA's exhaustion requirement.

### ii. *Second Circumstance Asserted by Plaintiff*

**\*11** The second "special circumstance" asserted by Plaintiff as grounds excusing him from the exhaustion requirement in this case is the fact that the Inspector General ("IG") conducted an investigation of the excessive force allegations in this case. (Dkt. No. 1 at 6, ¶ 6; 1 at 4, ¶ 4(b)(I); 30–5 at 2, ¶ 7; 31–7 at 1–11; 31–8 at 1–11; 31–9 at 1–11; 31–10 at 1–11.) Plaintiff argues that this investigation was a suitable substitute for pursuing his complaint through the inmate grievance process and should thus be deemed sufficient proof of exhaustion. Plaintiff is incorrect.

In their motion, Defendants confirm that the IG did indeed conduct an investigation into Plaintiff's allegations of excessive force by Defendants Lamb, Drum, and Hamel. (Dkt. No. 30–1 at 7; 31–8 at 1–11; 31–9 at 1–11; 31–10 at 1–11.) According to the IG's confidential report of the investigation, which Defendants filed as part of the summary judgment record, this investigation was initiated by an oral complaint from Plaintiff's fiancé. (Dkt. No. 30–5 at 2, ¶ 7; 31–7 at 1–11; 31–8 at 1–11; 31–9 at 1–11; 31–10 at 1–11.) More specifically, the report states that the investigation was referred by "Anita Gavin-[Plaintiff's] Fiancé." (Dkt. No. 31–7 at 4.) The report also states that the IG received a letter on May 25, 2010, from a fellow inmate of Plaintiff containing the same allegations

as those articulated by Ms. Gavin. *Id.* A copy of this letter is included in the IG's confidential report. (Dkt. No. 31–7 at 7–9.) In it, the author alleges that Plaintiff was the victim of excessive force and failure to provide medical care by Great Meadow staff during and after the May 21, 2010, incident; no reference is made in this letter to retaliation by Defendant Pegano, however. (Dkt. No. 31–7 at 7.)

According to the investigation report submitted by Defendants, the IG concluded based on its investigation that the allegations of excessive force arising from the May 21, 2010, incident were unsubstantiated and, as such, recommended that the case be closed. (Dkt. No. 31–7 at 2.) Nothing on the record suggests that Plaintiff appealed the IG's adverse finding to CORC, nor does Plaintiff himself assert that such an appeal was ever filed. [6]

As Judge Suddaby recently explained in *Goodson v. Silver,* No. 9:09–cv–0494 (GTS/DRH), 2012 WL 4449937, 2012 U.S. Dist. LEXIS 137177 (N.D.N.Y. Sept. 25, 2012), "[d]istrict courts appear to uniformly agree that, without a referral from a superintendent, an IG's investigation of a matter and conclusion that it is unsubstantiated does not satisfy the exhaustion requirement; rather, the inmate must still appeal the IG's conclusion of unsubstantiation to CORC." *Id.* at *9 (citing *Stephenson v. Dunford,* 320 F.Supp.2d 44, 46, 52 (W.D.N.Y.2004) (finding no exhaustion where inmate failed to pursue grievance all the way to CORC following investigation and finding of unsubstantiation by IG), *vacated on other grounds,* 139 F. App'x 311 (2d Cir.2005)); *Johnson v. Fernandez,* No. 09–CV–0626 (FJS/ATB), 2011 WL 7629513, at *5, 2011 U.S. Dist. LEXIS 154404, at *15–16 (N.D.N.Y. Mar.1, 2011) (finding no exhaustion where inmate failed to pursue grievance all the way to CORC following investigation and finding of unsubstantiation by IG), *adopted by* 2012 WL 1033652, 2012 U.S. Dist. LEXIS 41926 (N.D.N.Y. Mar 27, 2012). [7]

**\*12** Applying this rule of law here, the IG investigation asserted by Plaintiff as a "special circumstance" justifying his failure to exhaust administrative remedies fails. As in the cases cited above, the IG's investigation in this case was not initiated by a referral from the superintendent as required to fall within the purview of the inmate grievance process; it was a referral from Plaintiff's fiancé that initiated the investigation. (Dkt. No. 31–7 at 4.) As a result, pursuant to the rule articulated by the Court in

*Goodson,* the IG's investigation into the conduct of the correction officers involved does not excuse Plaintiff from the PLRA's exhaustion of remedies requirement. *Goodson,* 2012 WL 4449937, at *9, 2012 U.S. Dist. LEXIS 137177, at *36–37. To satisfy the exhaustion requirement, Plaintiff was required to appeal the IG's adverse finding, which he failed to do. *Id.* As such, the second circumstance asserted by Plaintiff as grounds for excusing the PLRA's exhaustion requirement fails.

*iii. Third Circumstance Asserted by Plaintiff*

As his next basis for relief from the PLRA's exhaustion requirement, Plaintiff points to the fact that on August 6, 2010, after Great Meadow failed to respond to his grievance concerning the May 21, 2010, incident, he filed a second grievance with the IGRC at Clinton. (Dkt. No. 34 at 4.) Plaintiff had been transferred from Great Meadow to Clinton on July 1, 2010, several weeks after he allegedly filed his initial grievance concerning the May 21, 2010, incident with the Great Meadow IGRC. In this second grievance, dated August 6, 2010, Plaintiff requested that the committee members ascertain why the Great Meadow IGRC had failed to respond to his original grievance. (Dkt. No. 34 at 21–22.)

In response to Plaintiff's August 6, 2010, grievance, the Clinton IGRC issued the following decision in the designated space on the grievance form: "Grievant is advised there is no record of any grievance of this issue at GMCF. Grievant may write to S. Woodward, IGPS, at GMCF for additional information concerning his GMCF grievances." (Dkt. No. 30–1 at 7; Dkt. No. 34 at 22.)

Turning first to Plaintiff's contention that his filing of the August 6, 2010, grievance constitutes a "special circumstance" pursuant to *Hemphill,* neither the law nor the facts support Plaintiff's position in this respect. As discussed above, where, as alleged here, the IGRC fails to respond with a timely determination of an inmate's grievance, that inmate must nonetheless proceed with the grievance process by filing an appeal in the same manner as if IGRC had responded with an adverse determination of his grievance. 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *see also Goodson v. Silver,* No. 9:09–cv–0494 (GTS/DRH), 2012 WL 4449937, at *4, 2012 U .S. Dist. LEXIS 137177, at *12 (N.D.N.Y. Sept. 25, 2012); *Murray v. Palmer,* No. 03–CV–1010 (GTS/GHL), 2010 WL 1235591, at *2 n. 4, 2010 U.S.

Dist. LEXIS 32014, at *6 n. 4 (N.D.N.Y. Mar.31, 2010). Given its clear language, the relevant New York Code, 7 N.Y.C.R.R. § 701.6(g), created an "available remedy" for Plaintiff in this case, which is unequivocal. Once he realized that Great Meadow had failed to decide his grievance within the required time line, his "available remedy" under 7 N.Y.C.R.R. § 701.6(g) was to proceed with the administrative process by "appeal[ing] to the next step." *Id.* Plaintiff elected to not to pursue his available remedy, however, and thus failed to exhaust his administrative remedies as required under the PLRA. Given this factual framework and the remedy available to the Plaintiff had he simply chosen to follow proper procedure, Plaintiff's attempt to characterize his August 6, 2010, grievance as a "special circumstance" under the third prong of the *Hemphill* test is unsupported by the evidence. Plaintiff chose not to complete the grievance process by exercising his right to appeal his claims concerning the May 21, 2010, incident to the next step; the mere fact that he decided nearly two months later to file a grievance complaining about Great Meadow's handling of his initial grievance does not excuse Plaintiff's failure to exhaust his administrative remedies as required by the PLRA. As such, the third special circumstance offered by Plaintiff as justification for his failure to exhaust available administrative remedies fails.

*iv. Fourth Circumstance Asserted by Plaintiff*

**\*13** The fourth "special circumstance" Plaintiff cites as an excuse for failing to exhaust his administrative remedies is an extension of the third circumstance discussed above. Plaintiff asserts that in addition to filing the August 6, 2010, grievance, he also took all the necessary steps to appeal the Clinton IGRC's decision on this second grievance. (Dkt. No. 34 at 4–5.) He argues that even though his attempts to appeal this second grievance were ultimately thwarted, his efforts toward exhaustion of this second claim amount to a "special circumstance" precluding dismissal of his claims for failure to exhaust. *Id.*

Plaintiff's argument in favor of this fourth circumstance as an excuse for his failure to exhaust available administrative remedies fails for a number of reasons. First, his attempted appeal of the August 6, 2010, grievance—the grounds identified by Plaintiff as his fourth "special circumstance"—is dependent upon a finding in his favor on the third circumstance—i.e., that Plaintiff's filing of the August 6, 2010, grievance itself is a "special circumstance" excusing the exhaustion

requirement imposed by the PLRA. This is not the case, however, for the reasons discussed above. Since Plaintiff failed to exercise the administrative remedies made available to him by 7 N.Y.C.R.R. § 701.6(g), he was unable to excuse his inaction by filing a separate grievance approximately two months later. Because the filing of the August 6, 2010, grievance is insufficient to establish a "special circumstance" excusing Plaintiff from the PLRA's exhaustion requirement, the fact that Plaintiff attempted to appeal the decision on this grievance is irrelevant. As with the third circumstance discussed above, Plaintiff's argument in favor of this fourth circumstance as precluding dismissal based on exhaustion thus must fail.

Before exploring alternative bases for evaluating Plaintiff's claim, it is worth noting that the parties offer conflicting versions of facts surrounding Plantiff's alleged attempt to appeal the decision of the Clinton IGRC on Plaintiff's August 6, 2010, grievance. Below the IGRC members' signature line, toward the bottom of the form, there is space provided for Plaintiff to check a box indicating whether or not he agrees with the ICRG's decision and whether he elects to appeal said decision to the superintendent. (Dkt. No. 34 at 22.) The form states that the grievant has seven days from receiving the IGRC's decision to return the signed form to prison administration. *Id.*

Although both parties acknowledge that Plaintiff filed the August 6, 2010, grievance with the Clinton IGRC, the question of whether Plaintiff ever properly elected to appeal Clinton's decision by signing and returning the appropriate portion of the form is the subject of dispute between the parties. Plaintiff claims that after receiving the Clinton IGRC's response, he checked the box on the form indicating that he disagreed with the decision and wished to appeal the IGRC decision to the superintendent and then returned the signed form within seven days as required. (Dkt. No. 38–1 at 10 ¶ 3.) In support of his position, Plaintiff submits a copy of the August 6, 2010, grievance form with Plaintiff's signature and election to appeal visible on the form. (Dkt. No. 34 at 22.) Plaintiff's signature does not appear on a different copy of the form, however, making it appear as if Plaintiff never completed the appellate election portion of the form as he claims. (Dkt. No. 34 at 24.) Defendants argue that this is the authentic version of the form. (Dkt. No. 31 at 7.)

**\*14**  In opposition to the version of facts suggested by Defendants' copy of the form, Plaintiff asserts that said copy is a "false grievance form" sent by Defendants to deceive the Court into believing that Plaintiff "never sign[ed] it for further action." (Dkt. No. 34 at 4.) In addition to the absence of Plaintiff's signature on the copy that Defendants claim is authentic, the other key difference between the forms is in the signatures of the IGRC members. The copy of the grievance form on which Defendants rely contains the signatures of the IGRC members in the designated signature lines and a date stamp indicating that the date returned to the inmate was August 11, 2010. (Dkt. No. 34 at 24.) Neither the IGRC members' signatures nor the date returned to inmate appear on the Plaintiff's version, however, as the spaces for these items are left blank. (Dkt. No. 34 at 22.)

Although the discrepancies highlighted above demonstrate disputed issues of fact regarding Plaintiff's reaction to the August 11, 2010, IGRC decision, this dispute is irrelevant to the Court's evaluation of the Plaintiff's "special circumstance" argument at issue here. Even if the Court accepts Plaintiff's version of the facts in its entirety, Plaintiff does not contend that he followed the grievance process to completion as to this August 6, 2010, grievance by appealing to CORC, a remedy available to him under 7 N.Y.C.R.R. § 701.6(g) when the superintendent failed to issue a timely decision on his first line appeal. Because he failed to exhaust his available administrative remedies even for his second, "substitute" grievance filed after his initial grievance about the May 21, 2010, incident was allegedly thrown away by Great Meadow staff, Plaintiff is unable to establish that his abandoned attempts to pursue this appeal should excuse his failure to exhaust administrative remedies in pursuing the original grievance in this case. Plaintiff's argument that this alleged attempt to appeal the August 11, 2010, decision of the Clinton IGRC constitutes a "special circumstance" justifying his failure to exhaust under *Hemphill* thus fails.

### v. Fifth Circumstance Asserted by Plaintiff
The fifth circumstance cited by Plaintiff as grounds for excusing his failure to exhaust available administrative remedies is the fact that he did appeal the Tier III disciplinary conviction and sentenced imposed by Defendant Pegano to exhaustion. Liberally construed, Plaintiff argues that this appeal of his underlying disciplinary conviction and sentence should be applied to

his claims in the present case and that dismissal of these claims for failure to exhaust under the PLRA is therefore inappropriate. Plaintiff is incorrect.

The Second Circuit has held that, under certain circumstances, an inmate may exhaust his administrative remedies by raising his claim during a related disciplinary proceeding. *Giano v. Goord,* 380 F.3d 670, 678–79 (2d Cir.2004); *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004). Such circumstances exist only where "(1) the inmate reasonably believed that his 'only available remedy' was to raise his claim as part of a tier disciplinary hearing, and (2) the inmate articulated and pursued his claim in the disciplinary proceeding in a manner that afforded prison officials the time and opportunity to thoroughly investigate that claim." *Murray v. Palmer,* No. 03–CV–1010 (GTS/GHL), 2010 WL 1235591, at \*3, 2010 U.S. Dist. LEXIS 32014, at \*14 (N.D.N.Y. Mar.31, 2010).

**\*15**  In *Giano v. Goord,* the Second Circuit excused an inmate's failure to file a grievance regarding his complaint that a correction officer had initiated a retaliatory disciplinary charge against him where the inmate had appealed the disciplinary conviction resulting from the allegedly retaliatory charge and had raised his retaliation complaint as part of the appeal. The basis for the court's decision in *Giano* was its conclusion that the plaintiff had reasonably misinterpreted regulations to mean that his only administrative recourse was to appeal his disciplinary conviction. *Giano,* 380 F.3d at 676, 679 (holding that prisoner's failure to exhaust with respect to the retaliation claim was justified). Because the plaintiff's actions were the result of reasonable confusion about the proper administrative channel through which to pursue his claim, the court found that the plaintiff had demonstrated the presence of special circumstances justifying his failure to comply with the PLRA's exhaustion requirement. *Id.*

Here, unlike in *Giano,* the evidence does not support a finding that Plaintiff reasonably believed his "only available remedy" was to raise his claims as part of a tier disciplinary hearing. To the contrary, Plaintiff in fact claims to have initiated grievances related to his claims in this action on at least two occasions, allegations indicating that he understood that this was the proper administrative process to pursue with respect to these complaints. *Neree v. O'Hara,* No. 9:09–CV–802, 2011 WL 3841551, at \*7, 2011 U.S. Dist. LEXIS 96640, at \*24 (N.D.N.Y. June 20, 2011); *see also Reynoso v. Swezey,*

238 F. App'x. 660, 663 (2d Cir.2007) (holding that where plaintiff filed a grievance with respect to the retaliation claim, but failed to appeal the denial to CORC, his failure to exhaust was not excused in light of evidence of his awareness that the grievance process was the appropriate administrative remedy). Because the record indicates that Plaintiff knew that the inmate grievance process was the proper administrative channel for the claims in this action, the fact that Plaintiff raised these claims in his disciplinary appeal does not excuse his failure to exhaust administrative remedies in the present case. As such, the fifth circumstance asserted by Plaintiff is without merit.

*vi. Sixth Circumstance Asserted by Plaintiff*

As the final "special circumstance" he asserts, Plaintiff cites the court to multiple letters he allegedly has written to various DOCCS officials about the claims in this action. Specifically, Plaintiff states:

> So it was grievance department officials who impede[sic] obstruct the procedure of grievance, so I myself wrote the commission Brian Fischer and Keren Bellamy Director in Albany of the Grievance Department, but those letter [sic] and response[sic] from these officials are in exhibits in *Dabney v. Sawyer,* 11–cv–0273 (LEK/RFT) which in [sic.] Exhibit (A) and (E) if the court wish to verify this they can ask the clerk or judge to check these letter to both was on the felonious assault May 21, 2010.

**\*16** (Dkt. No. 34 at 5, ¶ 4.) Although he refers the Court to exhibits "(A) and (E)" in *Dabney v. Sawyer,* 11–cv–0273, a separate civil action with fifty-eight docket entries, Plaintiff fails to identify the specific docket number or type of filing to which these exhibits are attached.

Local Rule 7.1, which provides the procedure for filing a summary judgment motion in this district, requires that the movant set forth the undisputed facts that, it contends, entitles it to summary judgment in a Statement of Material Facts. *See* N.D.N.Y.L.R. 7.1(a)(3). Once a Rule 7.1(a)(3) Statement of Material Facts is submitted, the non-moving party must file a response to the movant's Statement of Material Facts that "mirror[s] the movant's Statement of

Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs." *Id.* "Each denial shall set forth a specific citation to the record where the factual issue arises." *Id.* Conclusory denials unsupported by specific citations to the record are insufficient. *See N. Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.,* 426 F.3d 640, 648–49 (2d Cir.2005).

Here, as a preliminary matter, I note that Plaintiff's reference to an unidentified exhibit filed in a separate action does not comply with Local Rule 7.1(a)(3)'s requirement that denials be supported by specific citations to the record. Despite his failure to comply with local rules in this respect, however, I have reviewed the docket entries in *Dabney v. Sawyer,* 9:11–cv–0273, and have found two letters that appear to correspond to those referenced by Plaintiff as the above mentioned sixth circumstance excusing his failure to exhaust. The first is a letter from Karen Bellamy to Plaintiff dated December 15, 2010. (*Dabney v. Sawyer,* 9:11–cv–0273, Dkt. No. 52–1 at 39.) In this letter, Ms. Bellamy acknowledges receipt of correspondence from Plaintiff dated November 19, 2010, and advises Plaintiff that "[c]ontact with the facility administration reveals that CL–60134–10 was heard by the IGRC on August 11, 2010 and you did not appeal." *Id.* The letter instructs Plaintiff to direct future inquiries to the IGP supervisor. *Id.*

The second letter is from Deputy Commissioner Lucien Leclaire and appears to be a response to a letter from Plaintiff to Commissioner Fischer. (*Dabney v. Sawyer,* 9:11–cv–0273, Dkt. No. 52–1 at 2.) In the letter, dated December 27, 2010, Leclaire states that the Commissioner asked him to respond to Plaintiff's letter regarding "medical care, alleged assault and misconduct by staff at the Clinton and Great Meadow Correctional Facilities." *Id.* Concerning the allegations of assault and misconduct, Leclaire summarizes the information on the record about the May 21, 2010, incident and the disciplinary findings against Plaintiff resulting from the May 25, 2010, hearing. *Id.* The letter then reiterates that "[u]pon review of the information presented in this investigation, the superintendent found no evidence to substantiate your allegations." *Id.* Finally, the letter instructs Plaintiff to direct future inquiries to facility officials. *Id.* [8]

**\*17** Under the Supreme Court's holding in *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006),

proper exhaustion requires that a plaintiff procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Id.* at 95; *see also Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (citing *Woodford* ). In *Woodford,* the Supreme Court explained that the PLRA requires "proper exhaustion," which " 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).' " *Woodford,* 548 U.S. at 90 (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir.2002)). Because it is "proper exhaustion" that is required by the PLRA, an inmate's attempt to exhaust by simply writing a letter directly to prison administration generally will not suffice to exhaust administrative remedies under the PLRA. *See Hooks v. Howard,* No. 907–CV–0724 (TJM/RFT), 2010 WL 1235236, at *3, 2010 U.S. Dist. LEXIS 30589, at *6–7 (N.D.N.Y. Mar.30, 2010); *Grey v. Sparhawk,* No. 99–CV–9871 HB, 2000 WL 815916, at *2, 2000 U.S. Dist. LEXIS 8656, at *5 (S.D.N.Y. June 23, 2000) (holding that a complaint filed directly with the IG did not excuse plaintiff from "adhering to the available administrative procedures").[9] In writing letters directly to prison administrators Bellamy and Fischer, Plaintiff elected to disregard the procedure established by the IGP and required by the PLRA to establish "proper exhaustion." *Woodford,* 548 U.S. at 90. As such, the fact that Plaintiff wrote these letters should not be deemed a "special circumstance" excusing his failure to properly exhaust administrative remedies in this case. *Id.* To hold that inmates like Plaintiff may circumvent the exhaustion requirement simply by including his complaints in a letter to prison administration would be to frustrate the purpose of the exhaustion rule. *Id.* As such, the sixth basis asserted by Plaintiff as grounds for excusing his non-exhaustion fails.

### 2. *Failure to Exhaust: Conclusion*

As set forth above, Plaintiff failed to exhaust his available administrative remedies before commencing the present suit. The evidence indicates that administrative remedies were available to him at the time his claims arose, but that he chose not to pursue said remedies. *Hemphill,* 380 F.3d at 686. Despite Plaintiff's assertions to the contrary, there is no evidence on the record to plausibly suggest that Defendants should be estopped from asserting exhaustion as an affirmative defense or that any "special circumstances" exist in this case justifying his failure to exhaust. I therefore recommend that the Court

grant Defendants' motion for summary judgment based on Plaintiff's failure to exhaust available administrative remedies.

### B. *Heck v. Humphrey*

In the event that the Court disagrees with my recommendation that summary judgment be granted on exhaustion grounds, and to ensure complete analysis of the issues, I turn next to Defendants' contention that the "favorable termination rule" bars Plaintiff's claims in the present case. (Dkt. No. 30–1 at 9–11.) As an alternative basis for summary judgment, Defendants argue that the favorable termination rule articulated in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and its progeny mandates dismissal based on the prior adjudication of Plaintiff's disciplinary violations in this case. (Dkt. No. 30–1 at 9–11.) Defendants assert that Plaintiff is prohibited from litigating his claims in this action under the favorable termination rule because an outcome in Plaintiff's favor on these claims would necessarily imply the invalidity of his Tier III disciplinary conviction and sentence. (Dkt. No. 30–1 at 10.)

**\*18** In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court held that "in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87.

In *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Supreme Court extended *Heck's* favorable termination rule to disciplinary adjudications, holding that a prisoner's claim for damages was not cognizable under § 1983 where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his [disciplinary] conviction." *Id.* at 643. If a plaintiff whose success would necessarily invalidate said confinement or its duration does not satisfy *Heck's* favorable termination rule, he must seek relief through the federal habeas corpus statute rather than through § 1983. *Peralta v. Vasquez,* 467 F.3d 98, 104 (2d Cir.2006).[10]

2013 WL 5464776

1. *Excessive force claim against Defendants Lamb, Drum, and Hamel*

In support of summary judgment on Plaintiff's excessive force claim, Defendants argue that success on this claim "unquestionably would imply the invalidity of his conviction. Plaintiff's claim of excessive force therefore is not cognizable." (Dkt. No. 25–1 at 6.) As such, Defendants argue that the favorable termination rule applies and that, as a result, Plaintiff's retaliation claim is barred.

To prevail on a claim of excessive force against prison officials under the Eighth Amendment, the lynchpin inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm ." *Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). "In determining whether the use of force was wanton and unnecessary," the court should evaluate "the need for application of force, relationship between that need and the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7 (citation and quotation marks omitted).

Regarding the application of *Heck* to excessive force claims, the Second Circuit has explained that the favorable termination rule does not apply to claims where the alleged "use of excessive force lacks the requisite relationship to the conviction." *Jackson v. Suffolk Cnty. Homicide Bureau,* 135 F.3d 254, 257 (2d Cir.1998). For this "requisite relationship" to exist and the favorable termination rule to apply, the particulars of the excessive force claim must be such that the plaintiff's success on said claim *necessarily* implies the invalidity of a prior disciplinary adjudication. *Id.* (emphasis added). If, on the other hand, the plaintiff's success on the excessive force claim in question *would not necessarily* invalidate a prior disciplinary conviction, the favorable termination rule does not apply and the claim is not barred. *Id.* (emphasis added).

**\*19** Given the nature of his disciplinary convictions and the allegations underlying his excessive force claim, Plaintiff's Tier III adjudication does not bar his excessive force claims in this case. As the basis for Plaintiff's disciplinary convictions, Defendant Pegano found, based on the evidence presented at the Tier III hearing, that Plaintiff was guilty of the following disciplinary

violations arising from the May 21, 2010, incident: assault, weapons possession, refusing a direct order, and refusing a search and frisk. (Dkt. No. 30–8 at 3.) None of these convictions preclude a finding that the corrections officers also used excessive force against Plaintiff during this incident. *See Griffin v. Crippen,* 193 F.3d 89, 91–92 (2d Cir.1999) (appellant's guilty plea on assault charges against corrections officers did not bar Eighth Amendment excessive force claim); *Jeanty v. Cnty. of Orange,* 379 F.Supp.2d 533, 543–44 (S.D.N.Y.2005) (denying summary judgment to defendant police officers where plaintiff pleaded guilty to assaulting police officer, but "a jury could reasonably conclude that ... after [plaintiff] had been subdued, he was subjected to excessive force by the individual defendants"). Because it is possible for a fact finder to accept the validity of Plaintiff's disciplinary convictions and still conclude that Defendants Drum, Hamel, and Lamb used excessive force, Plaintiff's excessive force claim does not "necessarily imply the invalidity of his conviction[s]." *Edwards,* 520 U.S. at 642. As such, the favorable termination rule is inapplicable to Plaintiff's excessive force claim.

In support of their position that the favorable termination rule does apply to the excessive force claims in this case, Defendants cite *Douglas v. Smith,* No. 05–CV–1000 (GTS/DRH), 2009 WL 789450, 2009 U.S. Dist. LEXIS 130720 (N.D.N.Y. Jan.26, 2009). In *Douglas,* the plaintiff, an inmate in the custody of DOCCS, faced criminal charges for assault in the second degree based on allegations that he had assaulted a correction officer while being escorted to his cell. 2009 WL 789450, at \* 1. As a result of this incident, Douglas pleaded guilty to the lesser charge of attempted assault in the second degree and admitted as part of his plea that he intended "to cause physical injury [to the corrections officer] in order to prevent him from performing a lawful duty." *Id.* at \* 2. (internal citations omitted). Following his conviction, Douglas filed a § 1983 action alleging that the correction officer had used excessive force during the altercation that was the basis of his criminal conviction. *Id.* at \* 1. Ruling on the Defendants' motion for summary judgment, the Court in *Douglas* found that if the version of facts in Douglas' complaint were accepted, the correction officers would not have been performing a lawful duty during the time in question. *Id.* at \* 2. Because the correction officer's performance of a lawful duty was conclusively established by Douglas' criminal conviction, success on his excessive force claim would necessarily invalidate Douglas' prior

conviction. *Id.* The court thus held that the *Heck/Edward*s favorable termination rule precluded Douglas' excessive force claims and granted Defendants' motion for summary judgment on this ground. *Id.* at * 2–3.

 **\*20** The facts of the present case make *Douglas* inapplicable here. In *Douglas,* the court found the favorable termination rule applicable due to the specific nature of the plaintiff's underlying conviction in that case. There, the plaintiff was convicted of assault in the second degree, a criminal offense that required him to admit, as part of his guilty plea, that he intended "to cause physical injury [to the corrections officer] in order to prevent him from performing a lawful duty." *Id.* at * 2. As discussed above, a favorable outcome on the plaintiff's excessive force claim would require the plaintiff to prove that the corrections officer's use of force had been "wanton and unnecessary," a finding which would necessarily have invalidated Douglas' prior conviction. *Id.* Here, unlike in *Douglas,* Plaintiff's disciplinary convictions in this case conclusively established only the wrongfulness of Plaintiff's actions; they do not include a finding one way or the other concerning the lawfulness of the corrections officers' actions. As such, a finding that the corrections officers had used excessive force would not affect the validity of Plaintiff's disciplinary convictions. The favorable termination rule is thus inapplicable to Plaintiff's excessive force claim, making summary judgment on this ground inappropriate.

### 2. *Failure to intervene claim against Defendant Livermore*

Defendants also argue in their motion for summary judgment that Plaintiff's failure to intervene claim against Defendant Livermore is precluded by Plaintiff's disciplinary convictions under the favorable termination rule and should be dismissed. (Dkt. No. 30–1 at 3, n. 1.) To prevail on a failure to intervene claim, "the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene." *Henry v. Dinelle,* No. 10–CV–0456 (GTS/DEP), 2011 WL 5975027, at \*4, 2011 U.S. Dist. LEXIS 136583, at \*13 (N.D.N.Y. Nov.29, 2011) (citing *Jean–Laurent v. Wilkinson,* 540 F.Supp.2d 501, 512 (S.D.N.Y.2008)); *see also Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994) ("It is widely recognized that all

law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.").

Here, Plaintiff's prior disciplinary convictions do not preclude his failure to intervene claim in the present action. As with his excessive force claims, the fact that he has been found guilty of these disciplinary violations does not prevent Plaintiff from proving that Defendant Livermore is also liable for failing to intervene to protect Plaintiff from Defendants Drum, Lamb, and Hamel. Because a favorable determination on his failure to intervene claim against Defendant Livermore would not necessarily imply the invalidity of his prior disciplinary convictions, the favorable termination rule does not apply to this claim.

### 3. *Retaliation claim against Defendant Pegano*
 **\*21** Finally, Defendants argue that summary judgment is appropriate on Plaintiff's retaliation claim against Defendant Pegano based on the favorable termination rule. (Dkt. No. 30–1 at 15.)

As the basis for his retaliation claim, Plaintiff alleges that Pegano denied him the assistance necessary to attend his Tier III disciplinary hearing in retaliation for naming him as a defendant in *Dabney v. Lapolt,* No. 10–CV–0519, a civil rights action filed by Plaintiff in 2010. (Dkt. No. 1 at 9.) To prevail on a First Amendment retaliation claim, a plaintiff must establish first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials. *See Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002) (alleging false disciplinary report); *Hendricks v. Coughlin,* 114 F.3d 390 (2d Cir.1997) (alleging retaliatory transfers).

Applying the elements above to the factual allegations here, success on Plaintiff's retaliation claim requires him to prove that Pegano's failure to provide him with assistance prior to and during the disciplinary hearing amounted to a deprivation of due process and that Plaintiff's then-pending civil rights suit was a substantial or motivating factor for Pegano's actions. *Id.* Because such a finding would directly undermine Plaintiff's disciplinary convictions, I conclude that success on Plaintiff's retaliation claim would necessarily imply the invalidity of his prior disciplinary convictions by calling

into question the fairness of the earlier proceeding and the motivation of the fact finder. *Edwards,* 520 U.S. at 642; *see also Duamutef v. Morris,* 956 F.Supp. 1112, 1116 (S.D.N.Y.1997) (dismissing plaintiff's First Amendment retaliation claim where such claim, if established, would imply the invalidity of his conviction); *Sheldon v. Hundley,* 83 F.3d 231, 233 (8th Cir.1996) (dismissing First Amendment free speech claim where success on the claim would "necessarily imply the invalidity of a disciplinary result lengthening the plaintiff's prison sentence"). Based on the foregoing, Plaintiff's retaliation claim is precluded under the favorable termination rule.

4. *Application of Heck v. Humphrey: Conclusion*
Because success on Plaintiff's retaliation claim would necessarily imply the invalidity of his prior disciplinary convictions, *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), precludes plaintiff's retaliation claim against Defendant Pegano in this action. I therefore recommend that defendant's motion for summary judgment as to Plaintiff's retaliation claim against Defendant Pegano be granted on this basis. Because the favorable termination rule does not apply to Plaintiff's excessive force and failure to intervene claims, I recommend that Defendants' motion for summer judgment based on *Heck v. Humphrey* be denied as to these claims. However, as discussed above, summary judgment in Defendants' favor is appropriate as to Plaintiff's excessive force and failure to intervene claims based on Plaintiff's failure to exhaust his administrative remedies.

**\*22 ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 30) be ***GRANTED;*** and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of the following unreported cases: *Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, 2006 U.S. Dist. LEXIS 65221; *Goodson v. Silver,* No. 9:09–cv–0494, 2012 WL 4449937, 2012 U.S. Dist. LEXIS 137177 (N.D.N.Y.

Sept.25, 2012); *Mingues v. Nelson,* No. 96–cv–5396, 2004 WL 324898, 2004 U.S. Dist. LEXIS 2492 (S.D.N.Y. February 20, 2004); *Murray v. Palmer,* No. 03–CV–1010, 2010 WL 1235591, 2010 U.S. Dist. LEXIS 32014 (N.D.N.Y. Mar. 31, 2010); *Johnson v. Fernandez,* No. 09–CV–0626, 2011 WL 7629513, 2011 U.S. Dist. LEXIS 154404 (N.D.N.Y. Mar. 1, 2011); *Jacoby v. Phelix,* No. 07–CV–0872, 2010 WL 1839299, 2010 U.S. Dist. LEXIS 44222 (N.D.N.Y. March 31, 2010); *McNair v. Jones,* No. 01–CV–3253, 2002 WL 31082948, 2002 U.S. Dist. LEXIS 17409 (S.D.N.Y. Sept. 18, 2002); *Grey v. Sparhawk,* No. 99–CV–9871, 2000 WL 815916, 2000 U.S. Dist. LEXIS 8656 (S.D.N.Y. June 23, 2000); *Tapp v. Kitchen,* No. 02–CV–6658, 2004 WL 2403827, 2004 U.S. Dist. LEXIS 29972 (W.D.N.Y. Oct.26, 2004); *Velez v. Kulhmann,* No. 02–CV–6062, 2003 WL 22004899, 2003 U.S. Dist. LEXIS 14684 (S.D.N.Y. Aug.22, 2003); *Neree v. O'Hara,* No. 9:09–CV–802, 2011 WL 3841551, 2011 U.S. Dist. LEXIS 96640 (N.D.N.Y. June 20, 2011); *Reynoso v. Swezey,* 238 F. App'x. 660, 663 (2d Cir.2007); *Hooks v. Howard,* No. 907–CV–0724, 2010 WL 1235236, 2010 U.S. Dist. LEXIS 30589 (N.D.N.Y. Mar.30, 2010); *Douglas v. Smith,* No. 05–CV–1000, 2009 WL 789450, 2009 U.S. Dist. LEXIS 130720 (N.D.N.Y. Jan. 26, 2009); *Henry v. Dinelle,* No. 10–CV–0456, 2011 WL 5975027, 2011 U.S. Dist. LEXIS 136583(N.D.N.Y. Nov. 29, 2011); *Andrews v. Cruz,* No. 04–CV–566, 2010 WL 1141182, 2010 U.S. Dist. LEXIS 28124 (S.D.N.Y. Mar. 24, 2010).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a).

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 5464776

Footnotes

1   The Court notes that the notice provided in this case was more detailed and explicit than the notice provided in the case of *Jamison v. Metz,* No. 11–4242, 2013 WL 4838829 (2d Cir. Sept.12, 2013). *See Jamison v. Metz,* 09–CV–0620, Notification of Consequences of Failing to Respond to Summary Judgment Motion (N.D.N.Y. filed June 9, 2010).

**2**    *See Dabney v. Stormer,* 10–CV–0519, Plf.'s Response to Defs.' Motion for Summary Judgment (N.D.N.Y. filed Nov. 19, 2012); *Dabney v. Goord,* 04–CR–0988, Plf.'s Response to Defs.' Motion for Summary Judgment (S.D.N.Y. filed Jan. 8, 2007); *Dabney v. Goord,* 04–CV–0944, Plf.'s Response to Defs.' Motion for Summary Judgment (N.D.N.Y. filed Dec. 22, 2006); *Dabney v. Eagen,* 03–CV–0184, Plf.'s Response to Defs.' Motion for Summary Judgment (N .D.N.Y. filed Aug. 17, 2005); *Dabney v. McGinnis,* 97–CV–0489, Plf .'s Response to Defs.' Motion for Summary Judgment (S.D.N.Y. filed Sept. 3, 2004); *Dabney v. McGinnis,* 01–CV–0065, Plf.'s Response to Defs.' Motion for Summary Judgment (S.D.N.Y. filed May 21, 2003); *Dabney v. Ricks,* 94–CV–1058, Plf.'s Response to Defs.' Motion for Summary Judgment (N.D.N.Y. filed Feb. 2, 2000).

**3**    When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

**1**    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson,* 477 U.S. at 248.

**2**    The Court will provide Plaintiff with a copy of all unpublished decisions cited in this Report–Recommendation and Order in accordance with the Second Circuit's decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

**3**    The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368. *Amador v. Andrews,* 655 F.3d 89, 102 (2d Cir.2011).

**4**    In his complaint, sworn under penalty of perjury, Plaintiff states that he filed a grievance concerning the May 21, 2010, incident with the Inmate Grievance Program, but that the final result of this grievance was "covert action to cover up the illegal action." (Dkt. No. 1 at 4.) In his response to Defendants' summary judgment motion, Plaintiff elaborates, explaining that he "tryied [sic] to file a grievance at Great Meadow but it was thrown away." (Dkt. No. 34 at 4, ¶ 2.)

**5**    The Court will provide Plaintiff with a copy of these unpublished decisions in accordance with the Second Circuit's decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

**6**    IGRC records submitted by Defendants indicate that as of March 27, 2012, Plaintiff has pursued a total of 83 grievance appeals to CORC. (Dkt. No. 30–3 at 1, ¶ 1.) Of these 83 appeals, Hale states that 23 originated at the Great Meadow Correctional Facility. *Id.* at 4. There is no indication in the record maintained by CORC that Plaintiff ever filed an appeal from the IG's investigation findings concerning Plaintiff's claims in the present suit. (Dkt. No. 30–3, 3–7; 30–4, 1–3.)

**7**    *See also Jacoby v. Phelix,* No. 07–CV–0872 (DNH/ATB), 2010 WL 1839299, at *8–9 & n. 15, 2010 U.S. Dist. LEXIS 44222, at *10–11 & n. 15 (N.D.N.Y. March 31, 2010) (finding no exhaustion where inmate failed to pursue grievance all the way to CORC following investigation and finding of unsubstantiation by IG), adopted by 2010 WL 1839264, 2010 U.S. Dist. LEXIS 44201 (N.D.N.Y. May 06, 2010); *Thomas v. Cassleberry,* 315 F.Supp.2d 301, 303–04 (W.D.N.Y.2004) (finding no exhaustion where inmate failed to pursue grievance all the way to CORC following "investig[ation] by [the] Inspector Gen[eral]"); *McNair v. Jones,* No. 01–CV–3253 (RCC) (GWG), 2002 WL 31082948 at *4, 2002 U.S. Dist. LEXIS 17409, at *22–23 (S.D.N.Y. Sept. 18, 2002) (finding no exhaustion where inmate failed to pursue grievance all the way to CORC following investigation and finding of unsubstantiation by IG); *Houze v. Segarra,* 217 F.Supp.2d 394, 395–96 (S.D.N.Y.2002) (finding no exhaustion where inmate failed to pursue grievance all the way to CORC following IG's investigation and finding that there was "no merit to [the inmate's] allegations"); *Grey v. Sparhawk,* No. 99–CV–9871 HB, 2000 WL 815916, at *2, 2000 U.S. Dist. LEXIS 8656, at *5 (S.D.N.Y. June 23, 2000) (rejecting inmate's argument that "the Inspector General's investigation, if any, into the matter exhausts the administrative procedures"); *cf. Tapp v. Kitchen,* No. 02–CV–6658 CJS, 2004 WL 2403827, at *8, 2004 U.S. Dist. LEXIS 29972, at *25–26 (W.D.N.Y. Oct.26, 2004) ("Plaintiff's argument in this regard is further undercut by the fact that he never followed up on his complaint to the Inspector General after he failed to receive any kind of a decision."); *Velez v. Kulhmann,* No. 02–CV–6062 AKH, 2003 WL 22004899, at *3, 2003 U.S. Dist. LEXIS 14684, at *10–11 (S.D.N.Y. Aug.22, 2003) (finding no exhaustion where inmate failed to pursue grievance all the way to CORC following his complaint to an IG investigator).

**8**    Although the letters from both Bellamy and Leclaire state that they are written in response to letters from Plaintiff, these letters are incorporated by reference only and do not appear to have been filed as part of Plaintiff's exhibits in *Dabney v. Sawyer,* 9:11–cv–0273.

**9**    Although an inmate's unsuccessful attempt to resolve a complaint by writing a letter to prison administration will not suffice to exhaust an inmate's administrative remedies, note that "a grievance through informal channels will satisfy the exhaustion requirement *if the prisoner thereby obtained a favorable resolution of his grievance." Thomas v. Cassleberry,* 315 F.Supp.2d 301, 304 (W.D.N.Y.2004) (citations omitted) (emphasis added). The exhaustion requirement is satisfied in such a case because the inmate would not have had any reason to appeal a favorable resolution and thus would

**Dabney v. Pegano, Not Reported in F.Supp.2d (2013)**

2013 WL 5464776

be relieved of the duty to complete the grievance process. *Andrews v. Cruz,* No. 04–CV–566 (PAC)(RLE), 2010 WL 1141182, at *6, 2010 U.S. Dist. LEXIS 28124, at *16 (S.D.N.Y. Mar. 24, 2010) (citations omitted).

**10**    In *Peralta,* the Second Circuit found "that the purpose of the Heck favorable termination requirement is to prevent prisoners from using § 1983 to vitiate collaterally a judicial or administrative decision that affected the overall length of their confinement, and that punishments related to their term of imprisonment, or the procedures that led to them (if the procedural defect at issue was critical to the imposition of the punishment), must be attacked through a habeas petition." *Id.,* 467 F.3d at 104.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:15-cv-01485-MAD-DEP    Document 99    Filed 02/16/18    Page 72 of 109
Douglas v. Smith, Not Reported in F.Supp.2d (2009)
2009 WL 789450

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by Dabney v. Pegano, N.D.N.Y., September 30, 2013

2009 WL 789450
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Ellis DOUGLAS, Plaintiff,
v.
Joseph T. SMITH, Superintendent, Shawangunk
Correctional Facility; J. Rae, Sergeant;
M. Ketzer, Corr. Officer; R. Cross, Corr.
Officer; G. Karasmanos, Corr. Officer;
M. Sutton, Corr. Officer; McGuire, Corr.
Officer; and R.N. Skies, Nurse, Defendants.

No. 05–CV–1000 (GTS/DRH).
|
Jan. 26, 2009.

**Attorneys and Law Firms**

Ellis Douglas, Pine City, NY, pro se.

Law Offices Of Gregory J. Teresi, Gregory J. Teresi, Esq., of Counsel, Albany, NY, for Plaintiff.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Michael G. McCartin, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

**Opinion**

### REPORT–RECOMMENDATION AND ORDER [1]

DAVID R. HOMER, United States Magistrate Judge.

 *1 Plaintiff Ellis Douglas ("Douglas"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, eight DOCS employees, [2] violated his constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments. Compl. (Docket No. 1). In an order signed February 14, 2008, defendants' motion for summary judgement was granted with respect to all claims except Douglas' Eighth Amendment excessive force claim against

the eight remaining defendants. Docket No. 54. Presently pending is defendants' motion for summary judgment as to one defendant, J. Rae, pursuant to Fed.R.Civ.P. 56. Docket No. 68. Douglas has not opposed the motion. For the following reasons, it is recommended that defendants' motion be granted.

### I. Background

#### A. Failure to Respond

Douglas did not oppose defendants' motion. [3] Under the rules of this district, "[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N.D.N.Y.L.R. 7.1(A)(3) (emphasis omitted). Because Douglas has not responded to raise any question of material fact, the facts as set forth in defendants' Statement of Material Facts are accepted as true. See Docket No. 68–9) [hereinafter "Defs. Statement"]; see also Adirondack Cycle & Marine, Inc. v. American Honda Motor Co., No. 00–CV–1619, 2002 WL 449757, at *1 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.) (citing Lopez v. Reynolds, 998 F.Supp. 252, 256 (W.D.N.Y.1997)).

#### B. Statement of Facts

The facts and procedural history of this case are set forth in the Report–Recommendation and Order filed January 22, 2008, familiarity with which is assumed. See Docket No. 53.

As relevant here, Douglas has asserted two excessive force claims. Defendant Rae was allegedly involved only in one of those claims. Defs. Statement ¶¶ 1–3. On June 30, 2004, on the way back to his cell, Douglas and defendants Rae, Ketzer, and Cross became involved in an altercation. Id. ¶ 3; Compl. ¶¶ 14, 17–18. Douglas claims that Rae "punched [him] in the face [and] as [he] turned to protect himself from the assault, Sgt. Rae threw a barrage of punches striking Douglas in the face area." Compl. ¶ 17.

As a result of the June 30 altercation, Douglas was charged criminally with assaulting a corrections officer, "pleaded guilty to the reduced charge of attempted assault ..., and was sentenced as a second felony offender in accordance

with the plea agreement to a prison term of 2 to 4 years, to be served consecutively to a sentence he was then serving." *People v. Douglas,* 831 N.Y.S.2d 585, 586 (3d Dep't 2007); *see also* Docket No. 68–4, 5, 6. Douglas attempted to appeal the guilty plea, but the appeal was ultimately denied because the court "[found] that [Douglas] entered a knowing, voluntary and intelligent plea of guilty ... [and] his allocution sufficiently establish[ed] the essential elements of the crime." *Id.* at 586–87. This action followed.

## II. Discussion

**\*2** The remaining causes of action in Douglas' complaint allege two instances of excessive force in violation of the Eighth Amendment. Defendants move for summary judgment as to Rae contending that (1) Douglas' claim is barred by *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994); (2) Douglas' claim is barred by collateral estoppel; and (3) Douglas' excessive force claim is meritless.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.* 22 F.3d

1219, 1223–24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

## B. Favorable Termination Rule

The favorable termination rule of *Heck* provides that if a determination favorable to the plaintiff in a § 1983 action "would necessarily imply the invalidity of his conviction or sentence," a plaintiff must prove that the conviction or sentence has been reversed on direct appeal or declared invalid in order to recover damages under § 1983. *Edwards. v. Balisok,* 520 U.S. 641 (1997). While the application of the favorable termination rule has been precluded in claims where the alleged "use of excessive force lacks the requisite relationship to the conviction," this case is patently different. *Jackson v. Suffolk County Homicide Bureau,* 135 F.3d 254, 257 (2d Cir.1998).

In this case, Douglas was convicted of attempted assault in the second degree, admitting that he intended to prevent Rae from performing his lawful duty by attempting to cause Rae physical injury. *See Douglas,* 831 N.Y.S.2d at 586–87; Docket No. 68–6 at 10. Douglas' contentions here that Rae initiated the assault and that Douglas was merely attempting to protect himself directly contradict his conviction based on his allocution and plea and mandates the implication of the invalidity of that conviction and appeal. *See Dye v. Virts,* No. 03–CV–6273, 2004 WL 2202638, at \*4 (W.D.N.Y. Sept. 28, 2004) (barring a prisoner's federal claims regarding a correction officer's alleged assault pursuant to *Heck* because (1) the plaintiff had previously "ple[d] guilty to assault in the second degree ... for causing physical injury to [the corrections officer] in order to prevent him from performing a lawful duty," (2) the conviction had been affirmed on appeal, and (3) if the prisoner was merely defending himself, the corrections officer would not have been performing a lawful duty.). As in *Dye,* if Douglas' current version of the relevant facts were accepted, Rae would not have been performing a lawful duty and Douglas' plea would become invalid. Additionally, there is no evidence that Douglas' criminal conviction was ever otherwise vacated. Therefore, because his recovery of damages for excessive force would necessarily imply the invalidity of his criminal conviction, his claim here cannot stand.

**\*3** Accordingly, defendants' motion as to Douglas' claim against Rae should be granted.

### C. Collateral Estoppel

Under the Full Faith and Credit Clause of the Constitution, federal courts must grant state court judgments the same preclusive effects as those given to other courts located within the state. *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (citing *Migra v. Warren City Sch. Dist.,* 465 U.S. 75, 81 (1984)). "[I]n New York, a guilty plea precludes relitigation in a subsequent civil action of all issues necessarily determined by the conviction [and t]hus, for collateral estoppel purposes, a guilty plea is equivalent to a conviction after trial." *Marinaccio v. Boardman,* No. 02–CV–831 (NPM), 2005 WL 928631, at *11 (N.D.N.Y. Apr. 19, 2005) (internal quotations and citations omitted). Collateral estoppel is applicable:

> [I]f (1) there has been a final determination on the merits of the issue sought to be precluded; (2) the party against whom ... preclusion is sought has a full and fair opportunity to contest the decision ...; and (3) the issue sought to be precluded by the earlier suit is the same issue involved in the later action.

*Davis v. Halpern,* 813 F.2d 37, 39 (2d Cir.1987) (citation omitted). The requirement of a full and fair opportunity to contest requires that the plaintiff "was fully able to raise the same factual or legal issues" in the prior litigation as asserted in the present case. *LaFleur v. Whitman,* 300 F.3d 256, 274 (2d Cir.2002).

In this case, the state court has established that Douglas voluntarily and intelligently pled guilty to the charge of attempted assault in the second degree stemming from the same events which gave rise to this action. *See Douglas,* 831 N.Y.S.2d at 586–87; Docket No. 68–6 at 10. Specifically, Douglas pled guilty to intentionally interfering with Rae's ability to perform his lawful duties and attempting to assault him, as opposed to Douglas' current contentions that Douglas did not instigate the altercation and was only acting in self-defense. Thus, the guilty plea constituted a final determination on the merits of the case.

> This leaves the question of whether a defendant who pleads guilty to a crime, in lieu of trial, has had a full and fair opportunity to litigate ... [to which n]umerous courts have answered in the affirmative, holding that a defendant is not denied the chance to contest issues in a criminal proceeding merely because he pleds guilty, so long as the plea was voluntary and intelligent.

*Downing v. King,* No. 06–CV–363 (GLS/RFT), 2007 WL 4191765, at *2 (N.D.N.Y. Nov. 26, 2007) (internal citations and quotations omitted). Therefore, Douglas has also had a full and fair opportunity to contest the decision, despite the lack of a trial in light of his voluntary and intelligent guilty plea.

Accordingly, in the alternative defendants' motion for summary judgment should be granted on this ground.

### III. Conclusion

**\*4** For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment as to defendant Rae (Docket No. 68) be **GRANTED** in all respects and that judgment be entered in favor of Rae on all remaining claims against him.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

### *MEMORANDUM–DECISION and ORDER*

HON. GLENN T. SUDDABY, District Judge.

On August 8, 2005, Ellis Douglas ("Plaintiff") filed this *pro se* prisoner civil rights action pursuant to 42 U.S.C. § 1983, against nine employees of the New York State Department of Correctional Services ("Defendants"),

alleging that they violated his constitutional rights under the First, Fourth, Eighth and Fourteenth Amendments. (Dkt. No. 1.) On February 14, 2008, Senior U.S. District Judge Lawrence E. Kahn granted in part, and denied in part, Defendants' first motion for summary judgment. In so doing, he dismissed certain of Plaintiff's claims, including all claims against three of the nine Defendants—namely, Correctional Officer R. Davies, Superintendent Joseph T. Smith and Nurse Skies. (Dkt. No. 54, at 2, adopting Dkt. No. 53, at 21–23, 29–31.) [1] Remaining in the action after Judge Kahn's Decision and Order were only Plaintiff's Eighth Amendment excessive force claim against six Defendants, including J. Rae.

Currently before the Court are (1) Defendant Rae's second motion for summary judgment (Dkt No. 68), and (2) United States Magistrate Judge David R. Homer's Report–Recommendation that Defendant Rae's motion be granted (Dkt. No. 81). Plaintiff has filed, through counsel, timely Objections to the Report–Recommendation. (Dkt.Nos.82–85.) For the reasons set forth below, the Report–Recommendation is adopted and accepted in its entirety, Defendant Rae's second motion for summary judgment is granted, and Plaintiff's claims against Defendant Rae are dismissed.

## I. STANDARD OF REVIEW

When specific objections are made to a magistrate judge's report-recommendation, the Court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C). [2] When only general objections are made a magistrate judge's report-recommendation, the Court reviews the report-recommendation for clear error or manifest injustice. *See Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept. 22, 1997)* (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999). [3] Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995)* (Sotomayor, J.); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Edition. After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## II. LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

**\*5** Under Fed.R.Civ.P. 56, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323–24 (1986). This burden has appropriately been characterized as "modest." [4] When the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial." Fed.R.Civ.P. 56(e)(2).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998) [citation omitted]; *see also* Fed.R.Civ.P. 56(e)(2). As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts" [citations omitted]. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* [citation omitted].

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute-even if that

nonmoving party is proceeding *pro se.* [5] (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.) [6] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules. [7] For this reason, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to have been admitted where the nonmoving party has failed to properly respond to that statement [8] — even where the nonmoving party was proceeding *pro se* in a civil rights case. [9]

## III. RELEVANT BACKGROUND

**\*6** On July 3, 2008, Defendant Rae filed his second motion for summary judgment. (Dkt. No. 68.) In his motion papers, Defendant Rae gave Plaintiff sufficient notice of the consequences of failing to properly oppose his motion. (Dkt. No. 68, Part 1.) Moreover, in Defendant Rae's *first* motion for summary judgment, he gave Plaintiff a similar notice, and attached the Northern District's form "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion." (Dkt. No. 41, Part 1.) Plaintiff's response to Defendant Rae's second motion for summary judgment was due on July 29, 2008. (*See* Docket Entry for 7/3/08.)

On July 10, 2008, Attorney Gregory J. Teresi (who had been appointed Plaintiff's trial counsel on March 12, 2008), sent Plaintiff a letter, advising him that he was Plaintiff's counsel only for purposes of trial. (Dkt. No. 69; *see also* Dkt. No. 56, at 1 & n. 1.) In the letter, Attorney Teresi specifically advised Plaintiff, "[I]t is still your responsibility to respond to [Defendant Rae's second motion for summary judgment] if you so choose unless Judge Kahn issues an Order ... [expanding the scope of] my assistance [to you]." (Dkt. No. 69.) Later that month, on July 28, 2008, Attorney Teresi sent Judge Kahn a letter regarding a pre-trial motion, at the end of which he requested, on Plaintiff's behalf, an extension of the deadline by which Plaintiff had to respond to Defendant Rae's second motion for summary judgment. (Dkt. No. 72.)

It does not appear that the request for an extension was ever decided. (*See generally* Docket Sheet.) Rather,

it appears from the Court's internal notes that, on September 15, 2008, Attorney Teresi was contacted by Magistrate Judge Homer's Chambers regarding the possibility of his filing a response, on behalf of Plaintiff, to Defendant Rae's second motion for partial summary judgment. During that conversation, it appears that Attorney Teresi advised Judge Homer's Chambers of the following: (1) a telephone conference between Attorney Teresi and Plaintiff was scheduled for September 29, 2008, during which Plaintiff was expected to confirm his intent to withdraw the claim against Defendant Rae, which was at issue in Defendant Rae's second motion for summary judgment; and (2) after that telephone conference on September 29, 2008, Attorney Teresi would contact Judge Homer's Chambers to advise Judge Homer whether Plaintiff has confirmed his intent to withdraw the claim (in which case Defendant Rae's motion would be moot), or whether the claim would go forward (in which case, Attorney Teresi would file a response to the motion). The Court's notes also reflect that, in the event the claim would go forward, a response date would be set by the Court.

The docket sheet reflects no further communication from either Plaintiff or Attorney Teresi for the next three months (except a change-of-address notice filed by Plaintiff). (*See* Docket Sheet .) As a result, on January 26, 2009, Magistrate Judge Homer issued his Report–Recommendation on Defendant Rae's second motion for summary judgment. (Dkt. No. 81.) [10] In that Report–Recommendation, Judge Homer expressly and repeatedly found that Plaintiff had not opposed the motion. (*Id.* at 2 & n. 3.)

**\*7** On February 2, 2009, Attorney Teresi filed, on Plaintiff's behalf, Objections to the Report–Recommendation. (Dkt. No. 82.) Generally, in his Objections, Plaintiff argues that Defendant Rae's motion should be denied for three alternative reasons: (1) Defendant Rae's faulty Rule 7.1 Statement precludes him from meeting his threshold burden in support of that motion; (2) neither the "favorable termination" rule nor the doctrine of collateral estoppel preclude Plaintiff's claim against Defendant Rae; and (3) Plaintiff has adduced admissible record evidence that his Eighth Amendment excessive force claim against Defendant Rae arises from Defendant Rae's use of force after Plaintiff was placed in handcuffs, and Defendant has not adduced any admissible record evidence controverting that fact.

**Douglas v. Smith, Not Reported in F.Supp.2d (2009)**

2009 WL 789450

(*Id; see also* Dkt. Nos. 83–85 .) In addition, Plaintiff argues that, under the circumstances, the Court should consider Attorney Teresi's Rule 7.1 Response, Opposition Memorandum of Law, and Attorney Declaration and Exhibits. (*Id.*)

## IV. ANALYSIS

When Magistrate Judge Homer prepared his Report–Recommendation on Defendant Rae's second motion for summary judgment, he was considering an unopposed motion. As a result, assuming that Plaintiff had received adequate notice of the consequences of failing to properly oppose Defendant Rae's second motion for summary judgment, [11] all that Defendant Rae needed to do to succeed on his motion was "demonstrate entitlement" to the relief requested. [12] An inquiry into whether a movant has met its "burden to demonstrate entitlement" to the relief requested under Local Rule 7.1(b)(3) is a more limited endeavor than a review of a contested motion. [13] This is because, as a practical matter, the burden requires only that the movant present an argument that is "facially meritorious." [14] After conducting a *de novo* review of Magistrate Judge Homer's Report–Recommendation, the Court concludes that Judge Homer correctly found that Defendant Rae had met his lightened burden on his unopposed motion.

The Court rejects Plaintiff's argument that (purported) defects in Defendant Rae's Rule 7.1 Statement preclude him from meeting his threshold burden in support of his motion. As required by Local Rule 7.1(a)(3), Defendant Rae's Rule 7.1 Statement set forth, in eight (8) numbered paragraphs, each material fact about which Defendant Rae contended there exists no genuine issue, and supported each factual assertion with a specific citation to the record where the fact was established. (Dkt. No. 68, Part 9.) In his Objections, Plaintiff does not contest these facts. (Dkt. No. 83, ¶ 1 [Plf.'s Proposed Rule 7.1 Response, admitting the facts in question].) Rather, he contends that the facts were not "complete," as required by Local Rule 7.1(a)(3). (Dkt. No. 82, at 1; Dkt. No. 84, at 2–3.) Specifically, he argues that Defendant Rae "blatant[ly]" and "plainly ignored" the fact that the "barrage of kicks" that Defendant Rae allegedly inflicted on Plaintiff were inflicted—not *before* Plaintiff was handcuffed (as is assumed in Defendant Rae's Rule 7.1 Statement), but *after* Plaintiff was handcuffed. (Dkt. No. 83, ¶ 2; Dkt. No. 84, at 5.)

**\*8** The Court finds that Defendant Rae's Rule 7.1 Statement was sufficiently "complete" in order for him to meet his modest threshold burden under Local Rule 7.1(a)(3). Defendant Rae addressed what he asserts to be Plaintiff's version of the incident, in Paragraph 3 of his Rule 7.1 Statement. Plaintiff may disagree with whether that account is accurate. However, that disagreement does not render the Rule 7.1 Statement "incomplete" for purposes of Local Rule 7.1(a)(3).

Furthermore, it should be emphasized that, when Defendant Rae implied in Paragraph 3 of his Rule 7.1 Statement that the "barrage of kicks" were inflicted before Plaintiff was handcuffed, Defendant Rae was merely quoting from Paragraph 17 of Plaintiff's own Complaint. (Dkt. No. 68, Part 9, ¶ 3.) Paragraph 17 of Plaintiff's Complaint, which is verified, contains Plaintiff's sworn assertions regarding when the "barrage of kicks" were inflicted. (Dkt. No. 1, ¶ 17.) Moreover, Paragraph 18 of Plaintiff's Complaint starts with the words, "Officer Cross then jumped on Douglas['] back as Ketzer tightly cuffed Douglas['] wrist." (*Id.* at ¶ 18.) As a result, Plaintiff's own Complaint swears that the "barrage of kicks" were inflicted *before* the handcuffing of Plaintiff. This sworn assertion is implicitly echoed in Paragraph 28 of Plaintiff's Complaint, which refers to the handcuffing after referring to the kicking. (*Id.* at ¶ 28.) Simply stated, under the circumstances, Defendant Rae did not have a duty to cite Plaintiff's deposition transcript in order to render his Rule 7.1 Statement "complete" for purposes of Local Rule 7.1(a)(3). [15]

Turning to Plaintiff's arguments regarding the "favorable termination" rule and the doctrine of collateral estoppel, the success of both of these arguments depends on the Court's willingness to (1) accept as timely Plaintiff's Rule 7.1 Response, and (2) permit the expansion of the record before the Court to include Plaintiff's deposition transcript. (Dkt. No. 84, at 3–5.) Plainly stated, those two things are the vehicles by which Plaintiff attempts to bring before the Court evidence that Plaintiff continued to be kicked by Defendant Rae *after* he was handcuffed. (*Id.*)

As an initial matter, the Court declines—at this late stage of its decision of Defendant Rae's motion—to accept as timely Plaintiff's Rule 7.1 Response, and permit the expansion of the record before the Court to include Plaintiff's deposition transcript . [16] Plaintiff should have

2009 WL 789450

presented these materials to Magistrate Judge Homer for his review and consideration. Plaintiff does not argue that his deposition transcript was not previously available to him during the time period in which he had to respond to Defendant Rae's motion, nor does he proffer any justification (reasonable or otherwise) for his failure to present it (along with his Rule 7.1 Response) to Judge Homer. (Dkt. Nos.82–85.) [17] To permit Plaintiff to introduce these materials now, without sufficient justification, would undermine the purpose (and work) of magistrate judges, encourage neglectful behavior by non-movants, and deprive Defendant Rae of an opportunity to reply to the evidence. [18]

**\*9** In any event, even assuming that the Court were to be inclined to consider Plaintiff's deposition testimony at this late stage of deciding Defendant Rae's motion (which, again, it is not inclined to do), the Court would find that deposition testimony insufficient to create a genuine issue of material fact. In his motion papers, Defendant Rae met his modest threshold burden of showing that Plaintiff's conviction precludes his excessive force claim against Defendant Rae (because of the "favorable termination" rule and/or the doctrine of collateral estoppel). As a result, the burden shifted to Plaintiff to adduce admissible record evidence from which a rational fact-finder could conclude that his criminal conviction for attempted assault in the second degree on June 30, 2004, did *not* preclude his excessive force claim (because that conviction did *not* resolve, to his detriment, his claim that Defendant Rae kicked him after he was handcuffed). Even with the benefit of his deposition transcript, Plaintiff would fail to meet this burden. (*See generally* Dkt. Nos. 82–85.)

The plea allocution between the Court and Plaintiff states that, "by pleading guilty to the reduced charge of attempted assault in the second degree, you are admitting that ... on or about the 30th day of June, 2004, with intent to prevent a [peace] officer from performing a lawful duty, you attempted to cause physical injury to that peace officer, that being Sergeant John Rae of the Shawangunk Correctional Facility." (Dkt. No. 68, Part 6, at 5–7 [attaching pages "4" to "6" of Plaintiff's plea allocution].) In the portion of the deposition transcript adduced by Plaintiff during his Objection, there is no testimony that Plaintiff's conviction did not partially arise out of, or resolve the lawfulness of, Defendant Rae's alleged kicking Plaintiff after he was handcuffed, and while he was on the ground continuing to resist arrest. [19]

For all of these reasons, the Court rejects Plaintiff's arguments.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Homer's Report–Recommendation (Dkt. No. 81) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that Defendant Rae's second motion for summary judgment (Dkt. No. 68) is ***GRANTED,*** and that judgment be entered in favor of Defendant Rae as to all claims against him; and it is further

**ORDERED** that the Clerk of the Court shall amend the docket sheet to indicate that Plaintiff's claims against Superintendent Smith and Nurse Skies were terminated on February 14, 2008.

### All Citations

Not Reported in F.Supp.2d, 2009 WL 789450

Footnotes

1   This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2   A ninth defendant, R. Davies, was previously dismissed from the action. Docket Nos. 53, 54.

3   Defendants' motion was filed on July 3, 2008. Docket No. 68. Within defendants' motion, notification was provided to Douglas that if he failed to respond, pursuant to Fed.R.Civ.P. 56(e), the Court may accept defendants' assertions as true unless contrary evidence was submitted. Docket No. 68–1 at 1–3. Douglas has filed no response.

1   As of the date of this Decision and Order, the docket sheet still indicates that Superintendent Smith and Nurse Skies are parties to this action. As a result, the Clerk of the Court is directed to amend the docket sheet to indicate that Plaintiff's claims against Superintendent Smith and Nurse Skies were terminated on February 14, 2008.

2   On *de novo* review, "[t]he judge may ... receive further evidence ...." 28 U.S.C. § 636(b)(1)(C). However, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not,

2009 WL 789450

presented to the Magistrate Judge in the first instance. *See, e.g ., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate").

3      *See also Vargas v. Keane,* 93–CV–7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec. 12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895 (1996).

4      *See, e.g., Ciaprazi v. Goord,* 02–CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citation omitted]; *accord, Saunders v. Ricks,* 03–CV–0598, 2006 WL 3051792, at *9 & n. 60 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report–Recommendation of Lowe, M.J.), *Smith v. Woods,* 03–CV–0480, 2006 WL 1133247, at *17 & n. 109 (N.D .N.Y. Apr. 24, 2006) (Hurd, J., adopting Report–Recommendation of Lowe, M.J.).

5      *Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir.2002) [citations omitted]; *accord, Lee v. Alfonso,* No. 04–1921, 2004 U.S.App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g,* 97–CV–1741, 2004 U.S. Dist. LEXIS 20746, at *12–13 (N.D.N .Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak,* 04–CV–1144, 2006 U.S. Dist. LEXIS 9147, at *1–4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan,* 253 F.Supp.2d 369, 371–372 (N.D.N.Y.2003) (Hurd, J.).

6      *Krug v. County of Rennselaer,* 04–CV–0640, 2006 WL 2669122, at *3 (N.D.N.Y. Sept. 18, 2006); *see also Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) ("This Court has also held that summary judgment should not be entered by default against a *pro se* plaintiff who has not been given any notice that failure to respond will be deemed a default.") [citations omitted].

7      *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *McKaskle v. Wiggins,* 465 U.S. 168, 184 (1984) ("Nor does the Constitution require judges to take over chores for a *pro se* [litigant] that would normally be attended to by trained counsel as a matter of course."); *Mohasco Corp. v. Silver,* 447 U.S. 807, 826 (1980) ("[I]in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law [even when that strict adherence inures to the detriment of a *pro se* litigant]."); *Faretta v. California,* 422 U.S. 806, 834, n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *LoSacco v. City of Middletown,* 71 F.3d 88, 92 (2d Cir.1995) ("Although *pro se* litigants should be afforded latitude, ... they generally are required to inform themselves regarding procedural rules and to comply with them .... This is especially true in civil litigation.") [internal quotation marks and citations omitted]; *Edwards v. I.N.S.,* 69 F.3d 5, 8 (2d Cir.1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally, ... *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them .") [citations omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[T]he right [to benefit from reasonable allowances as a *pro se* litigant] does not exempt [the *pro se* ] party from compliance with relevant rules of procedural and substantive law.") [internal quotation marks and citations omitted].

8      Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L.R. 7.1(a)(3).

9      *See, e.g., Hassig v. N.Y.S. Dep't of Environmental Conservation,* 01–CV–0284, Decision and Order, at 7 (N.D.N.Y. filed March 4, 2004) (McAvoy, J.), *af'd,* No. 04–1773, 2005 WL 290210 (2d Cir. Feb. 2, 2005); *Lee,* 2004 U.S. Dist. LEXIS 20746, at *12–13, 15, *aff'd,* No. 04–1921, 2004 U.S.App. LEXIS 21432; *Harvey v. Morabito,* 99–CV–1913, 2003 WL 21402561, at *1, 3–4 (N.D.N.Y. June 17, 2003) (Sharpe, M.J.), *adopted by* 99–CV–1913, Order, at 2–3 (N.D.N.Y. filed Jan. 15, 2004) (Munson, J.), *aff'd, No. 04–1008, 115 F. App'x 521 (2d Cir. Dec. 23, 2004)*; *Krug,* 2006 WL 2669122, at *2–3; *Fox,* 2006 U.S. Dist. LEXIS 9147, at *2–3; *Singleton v. Caron,* 03–CV–0455, 2005 WL 2179402, at *3–4 (N.D.N.Y. Sept. 5, 2005) (Peebles, M.J.), *adopted by* 03–CV–0455, 2006 WL 2023000, at *3 (N.D.N.Y. July 18, 2006) (Sharpe, J.);

**Douglas v. Smith, Not Reported in F.Supp.2d (2009)**
Case 9:15-cv-01485-MAD-DEP    Document 99    Filed 02/16/18    Page 80 of 109

2009 WL 789450

*Govan,* 289 F.Supp.2d at 295; *Butler v. Weissman,* 00–CV–1240, 2002 WL 31309347, at *3 (N.D.N.Y. June 20, 2002) (Sharpe, M. J.), *adopted by* 00–CV–1240, Decision and Order, at 1–2 (N.D.N.Y. filed July 22, 2002) (Kahn, J.); *DeMar v. Car–Freshner Corp.,* 49 F.Supp.2d 84, 86 & n. 1 (N.D.N.Y.1999) (McAvoy, C.J.); *Costello v. Norton,* 96–CV–1634, 1998 WL 743710, at * 1, n. 2 (N.D.N.Y. Oct. 21, 1998) (McAvoy, C.J.); *Squair v. O'Brien & Gere Eng'rs, Inc.,* 96–CV–1812, 1998 WL 566773, at *1, n. 2 (N.D.N.Y. Aug. 21, 1998) (Scullin, J.); *see also Monahan v. N.Y. City Dep't of Corr.,* 214 F.3d 275, 292 (2d Cir.2000) (discussing, in *pro se* civil rights case, district courts' discretion to adopt local rules like 7.1[a][3] "to carry out the conduct of its business").

10  Familiarity with the findings and recommendations of Magistrate Judge David R. Homer's Report–Recommendation is assumed, and thus shall not be repeated in this Decision and Order. Only those facts necessary to the discussion shall be set forth herein.

11  The Court finds that such notice was provided, for the reasons stated above in Part III of this Decision and Order. The Court would add only two points. First, before the filing of Defendant Rae's second motion, Plaintiff had acquired at least some experience responding to a motion for summary judgment, namely, through his response to Defendants' first motion for summary judgment. (Dkt. No. 49.) Second, to assist *pro se* litigants, the Clerk of the Court for the Northern District of New York has provided to all correctional facilities in New York State, including Plaintiff's correctional facility at the time in question, copies of the Northern District's Local Rules of Practice and the Northern District's *Pro Se* Handbook. These things also gave Plaintiff notice of the consequences of failing to respond to Defendant Rae's motion. *See also* N.D.N.Y. L.R. 7.1(a)(3). U.S. District Court for the Northern District of New York, *Pro Se* Handbook, at 16, 41, http://www.nynd.uscourts.gov/documents/ProSeHandbook2008.pdf.

12  "Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown." N.D.N.Y. L.R. 7.1(b)(3).

13  *See, supra,* note 4 of this Decision and Order [citing cases]; *see also Race Safe Sys. v. Indy Racing League,* 251 F.Supp.2d 1106, 1109–1110 (N.D.N.Y.2003) (Munson, J.) (reviewing merely whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3] ); *Wilmer v. Torian,* 96–CV–1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b] [3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95–CV–989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F.Supp. 595 (N.D.N.Y.1996) (Pooler, J.).

14  *See, e.g., Hernandez v. Nash,* 00–CV–1564, 2003 U.S. Dist. LEXIS 16258, at *7–8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under Local Rule 7.1[b] [3], "the court must review the motion to determine whether it is *facially meritorious*" ) [emphasis added; citations omitted]; *accord, Topliff v. Wal–Mart Stores East LP,* 04–CV–0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n. 43 (N.D.N.Y. March 22, 2007) (Lowe, M .J.); *Hynes v. Kirkpatrick,* 05–CV–0380, 2007 U.S. Dist. LEXIS 24356, at *5–6 & n. 2 (N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi,* 04–CV–1311, 2007 U.S. Dist. LEXIS 26583, at *28–29 & n. 40 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey,* 03–CV–0170, 2006 U.S. Dist. LEXIS 95065, at *5 & n. 2 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 4336 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

15  While this fact is by no means dispositive, it bears noting that a cursory review of Plaintiff's deposition transcript reveals that it contains conflicting testimony as to when Plaintiff experienced the "barrage of kicks" from Defendant Rae (i.e., before, during, and/or after handcuffing), and it indicates that Plaintiff continued to resist even after being handcuffed. (*See generally* Dkt. No. 85, Part 2.)

16  Because the Court declines to consider Plaintiff's deposition testimony, the Court need not, and does not, reach the issue of whether the deposition testimony in question is so unsubstantiated by the other record evidence, and so replete with inconsistencies and improbabilities, that it may be deemed incredible, under *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005).

17  The closest Plaintiff comes to arguing that good cause exists to permit the introduction of Plaintiff's Rule 7.1 Response and deposition transcript during his Objection is when he argues that he has provided that Rule 7.1 Response and deposition now. (Dkt. No. 82, at 1.) Of course, the mere fact that a Rule 7.1 Response and deposition transcript are offered during an objection to a report-recommendation does not constitute any sort of justification for not offering those things before the issuance of the report-recommendation.

2009 WL 789450

**18**   *See, supra,* note 2 of this Decision and Order [citing cases]; *see also Greenhow v. Sec 'y of Health & Human Servs.,* 863 F.2d 633, 638–39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v.. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection[ ].") [citations omitted]; *Patterson–Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990–91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted]; *Alexander v. Evans,* 88–CV–5309, 1993 WL 427409, at *18, n. 8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted].

**19**   It should be noted that, in his deposition, Plaintiff testified that he continued to resist even as, and after, he was being handcuffed (and as he was allegedly being kicked by Defendant Rae); in short, Plaintiff was handcuffed but not subdued. (Dkt. No. 85, Part 2, at 6, 13, 17, 22, 23, 24 [attaching pages "45," "52," "53," "62," "63" and "64" of Plaintiff's deposition transcript, stating, "Yeah, I struggled to get out [of Officer Ketzer's bear hug] .... I[ ] [was on my stomach] trying to get up [when Officer Ketzer was on top of me on the floor] .... I[ ][was] resisting while [Officer Ketzer was trying to put the cuffs on and] Sergeant Rae [was] kicking me in my face .... I'm on the floor trying to get up with Ketzer on my back and Sergeant Rae kicking me in my face .... Now that they got the cuffs on me, I'm still on the floor. They [are] holding me down, but he's still kicking me .... [Officer] Cross is on my lower legs, holding my legs. That way I can't get up."].)

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by Shapard v. Attea, W.D.N.Y., November 19, 2009

2004 WL 2202638
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Matthew R. DYE, Plaintiff,
v.
Chief Deputy Barry VIRTS, et al., Defendants.

No. 03–CV–6273L.
|
Sept. 28, 2004.

**Attorneys and Law Firms**

Matthew R. Dye, Comstock, NY, pro se.

**Opinion**

*DECISION AND ORDER*

### INTRODUCTION

LARIMER, J.

*1 Plaintiff, an inmate in the custody of the New York State Department of Corrections, commenced this 42 U.S.C. § 1983 action *pro se* against the Wayne County Jail and several of its corrections officers, supervisors, and civilian employees. Plaintiff alleges that defendants violated his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments during his pretrial detention. Plaintiff claims that he was assaulted, abused, and subjected to intolerable conditions of confinement.

Currently pending before the Court is defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt.# 9). For the reasons set forth below, defendants' motion is granted.

### FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed. In April 2002, plaintiff was arrested on charges of rape, sexual abuse, and assault. While he was being booked and processed at the State Police station, plaintiff escaped custody, was recaptured, and was charged with escape. From April 2002 until September 30, 2002, plaintiff (who was unable to post bail) was detained at the Wayne County Jail ("the Jail") awaiting disposition of the charges.

On June 16, 2002, plaintiff reported that he had smashed his fist into a wall at the Jail and suffered self-inflicted injuries. He was transported to the Newark–Wayne Hospital and treated for his injuries. In the early morning hours of June 17, 2002, while being escorted back to the Jail from the hospital, plaintiff attacked and injured Officer Kozlowski during an unsuccessful attempt to escape custody again. Plaintiff disputes this fact, and claims that Kozlowski assaulted him when he complained about being placed in restraints. Plaintiff was later charged with the crimes of assaulting a corrections officer and attempted escape.

Plaintiff was returned to the Jail in the earlier morning hours of June 17. At that time, Sgt. Fosdick, the highest ranking officer on duty, made a determination that plaintiff presented a danger to himself or others, and placed plaintiff on administrative segregation under "constant watch" (meaning that an officer sat outside his cell without interruption) until such time as he could be examined by medical personnel and until Sgt. Fosdick's commanding officers, Chief Virts and Lt. Carr, arrived at the Jail to assess the situation.

Plaintiff was dressed in a behavior modification suit or safety smock, which is routinely used to clothe inmates who may be suicidal or violent. Plaintiff was also placed in a restraint chair with padded leather straps used to constrain inmates and prevent them from harming themselves or others. Plaintiff's upper and lower body were strapped to the chair and he was handcuffed by the wrists. Plaintiff was housed under these conditions for approximately nine hours, from 1:25 a.m. to 10:15 a.m.

Defendants Chief Virts and Lt. Carr thereafter decided to place plaintiff on administrative segregation in the medical wing of the facility, pending the results of a disciplinary hearing, because they believed that he was capable of harming himself or others and that he was an escape risk. They made this decision based on the fact that during a previous 1999 incarceration at the Jail, plaintiff had

Dye v. Virts, Not Reported in F.Supp.2d (2004)
Case 9:15-cv-01485-MAD-DEP    Document 99    Filed 02/16/18    Page 83 of 109
2004 WL 2202638

attempted suicide. Also, he had escaped police custody at the time of his initial arrest on the pending charges and had recently attacked and injured Officer Kozlowski during another attempted escape. (Virts Aff., ¶ 6).

**\*2** In administrative segregation, plaintiff was housed alone in a cell. His meals were brought to him. He was not permitted to have an exercise period, could not receive commissary privileges, could not make personal phone calls, could not attend any programs, and was permitted only non-contact visits and legal phone calls. He ate his meals in his cell and could shower only when other inmates were already in lockdown in their cells. Any time he left his cell, he was placed in handcuffs and shackled and escorted by two officers. (Dkt.# 9, Exs.S, W).

Plaintiff also remained on "constant watch" from June 17 through June 26 because of his alleged suicidal tendencies, violent behavior, and attempts to escape. During this period, plaintiff was not permitted to have a writing instrument for fear that it could be used to harm himself or others. From June 26 through June 28, plaintiff was checked by an officer every five minutes, and from June 28 onward, he was placed on normal watch, but continued in administrative segregation.

On July 3, 2002, an internal disciplinary hearing was held on the charges that plaintiff assaulted Officer Kozlowski and attempted to escape. He was found guilty and sentenced to 360 days administrative segregation, with credit for 17 days for time served. No administrative appeal was filed from that determination. (Dkt.# 9, Ex. T).

At all relevant times, plaintiff was represented by Wayne County Assistant Public Defender, Andrew D. Correia, in connection with the criminal charges against him. Correia visited plaintiff several times at the Jail during his detention. On September 6, 2002, after several court appearances plaintiff entered a plea of guilty to several of the charges, including rape, escape, and the assault of defendant Kozlowski. During his plea allocution, plaintiff stated that his guilty pleas were voluntary, that he had fully discussed his decision to plead guilty with Correia, and that he was pleading guilty free from any coercion or threats. (Dkt.# 9, Ex. F). He was sentenced to a term of twelve years and was transferred from the Jail to state prison on September 30, 2002.

Plaintiff, represented by new counsel, filed an appeal with the New York State Appellate Division in 2003. The only ground for appeal was that his sentence was harsh and excessive. In August 2003, before the Appellate Division issued its decision on the appeal, plaintiff filed a motion in county court to vacate the judgment of conviction upon his guilty plea pursuant to N.Y. C.P.L. § 440.10. (Dkt.# 9, Ex. M). Attached to his motion is the same "Statement of Facts Procedural History" portion of his federal court complaint (filed in this action just two months earlier), except that the legal caption and certain headings are crossed out. In it, plaintiff alleges that he was under duress at the time of his plea, that he received ineffective assistance of counsel, and that he pleaded guilty only to escape abuse and intolerable conditions of confinement at the Jail (including beatings and abuse), which he details in fifteen causes of action against various defendants. The county court denied the motion on September 4, 2003 pursuant to N.Y. C.P.L. § 440.10(3)(a). (Dkt.# 9, Ex. P).

**\*3** On December 31, 2003, the Appellate Division denied plaintiff's appeal and affirmed his conviction and sentence. *People v. Dye,* 2 A.D.3d 1490 (4th Dept.2003) (Table). The New York State Court of Appeals denied plaintiff's subsequent application for leave to appeal on March 3, 2004. *People v. Dye,* 2 N.Y.3d 739 (2004).

## PLAINTIFF'S CLAIMS

Plaintiff's complaint asserts fifteen constitutional claims, brought pursuant to 42 U.S.C. § 1983, against various defendants which stem from plaintiff's encounter with defendant Kozlowski on June 17, 2002 and plaintiff's continued detention at the Jail until his September 30, 2002 transfer to state prison. Plaintiff alleges that defendant Kozlowski assaulted him on June 17, 2002 in the parking lot of the Newark hospital. He also alleges that, upon his return to Jail, Officer Rease escorted him out of the police car by his hair, stripped him, threatened him with a gun, and placed him in a restraint chair with excessively tight metal shackles, causing him physical injury, including a dislocated thumb. Later that night, plaintiff claims that defendants Rease, Fosdick, and Donahue returned to his cell and, while he was restrained, threw a towel over his head and beat him to unconsciousness. Plaintiff asserts that other employees of the Jail witnessed the beating, but failed to intervene or to report it, and then exhibited deliberate indifference to

Dye v. Virts, Not Reported in F.Supp.2d (2004)

2004 WL 2202638

his serious medical needs by failing to get him medical treatment.

Plaintiff also asserts that during his detention, Officer Napp verbally and physically abused plaintiff by threatening him, spitting in his food tray, withholding his food tray altogether, and throwing a table at him. Plaintiff claims that he was not allowed to write or receive any mail during the last sixty days he was detained and that his attorney was compelled to hand deliver any and all legal mail to him. He also claims that the last ten days he was detained at the Jail, he was strip searched three times a day. Lastly, plaintiff alleges claims for supervisory liability against Chief Deputy Virts, Lt. Carr, Sgt. Horton, and the Jail itself for allowing these practices to go unremedied. For all his claims, plaintiff asserts that defendants violated his Fourteenth Amendment rights, [1] and he seeks monetary damages and declaratory relief.

## DISCUSSION

Defendants advance several grounds in support of their motion for summary judgment. They contend that plaintiff's action is barred in its entirety by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) because a successful § 1983 claim would imply the invalidity of plaintiff's assault conviction. Furthermore, defendants contend that the Court's jurisdiction is lacking under the so-called *Rooker–Feldman* doctrine, [2] that his claims are barred by res judicata and/or collateral and judicial estoppel, and that plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

1. *Heck,* Estoppel, and the *Rooker–Feldman* Doctrine

**\*4** I agree with defendants that some of plaintiff's claims are barred by *Heck.* For his first and second claims, plaintiff alleges that defendant Kozlowski assaulted him in the parking lot of the Newark hospital on June 17, 2002. In *Heck,* the Supreme Court held that in order for plaintiff to state a claim for monetary damages pursuant to § 1983 based on factual allegations which would, if proven, render plaintiff's previous criminal conviction or resulting sentence invalid, he must demonstrate that the previous conviction or sentence was reversed or invalidated by a state or federal court, or expunged by executive branch action. *Heck,* 512 U.S. at 486–87.

Here, plaintiff pleaded guilty to assault in the second degree pursuant to N.Y. Penal Law § 120.05(3) for causing physical injury to defendant Kozlowski in order to prevent him from performing a lawful duty on June 17, 2002. (Dkt.# 9, Ex. F, p. 6). That conviction has been affirmed, and his 440.10 motion was denied.

Should plaintiff prevail here on his claims against Kozlowski, it would necessarily negate elements of the offense for which he was convicted. If, as plaintiff claims, Kozlowski assaulted him and plaintiff merely defended himself, Kozlowski would not have been performing a *lawful* duty. *See Heck,* 512 U.S. at 486 n. 6 ("In order to prevail in this § 1983 action, [the plaintiff] would have to negate an element of the offense of which he has been convicted. Regardless of the state law of res judicata, the § 1983 action will not lie."); *Nuno v. County of San Bernardino,* 58 F.Supp.2d 1127, 1133 (C.D.Cal.1999) (plaintiff's § 1983 action based on alleged excessive force barred by *Heck* because, if proven, would necessarily imply that plaintiff's conviction for obstructing a peace officer, which was based on a nolo contendere plea, was invalid and that defendant had not been engaged in the performance of a lawful duty).

Therefore, if plaintiff were to prevail in this action on his first or second claims, that outcome would imply that his criminal conviction based upon his guilty plea for assaulting defendant Kozlowski was invalid. As such, plaintiff must prove that his previous conviction or sentence was reversed or invalidated before he can bring a claim § 1983 for damages. Here, he cannot make that showing. In fact, his convictions have been affirmed throughout the appellate process. Therefore, defendant Kozlowski is entitled to summary judgment. [3]

As for the remainder of his complaint, I do not believe that *Heck* prevents plaintiff from pursuing those claims. Nor do I find that estoppel or the *Rooker–Feldman* doctrine applies here. I am unpersuaded that a finding in plaintiff's favor on any one or all of his claims alleging that he was assaulted at the Jail or that the conditions of his confinement were inhumane would necessarily imply that his guilty plea was involuntary and that his conviction, therefore, was invalid. Moreover, such claims are not so "inextricably intertwined" with the state court decision denying his 440.10 motion, nor were the factual issues presented by these claims decided against plaintiff by the

Dye v. Virts, Not Reported in F.Supp.2d (2004)
Case 9:15-cv-01485-MAD-DEP    Document 99    Filed 02/16/18    Page 85 of 109
2004 WL 2202638

county court. Wayne County Court Judge Stephen R. Sirkin denied plaintiff's motion pursuant to N.Y. C.P.L. § 440.10(3)(a) for failing to raise the issues related to his treatment at the Jail at the time of his plea, so that the allegations could have been address by the county court at that time, or on appeal. (Dkt.# 9, Ex. P). The court, however, did not find that plaintiff was not assaulted or that plaintiff did not suffer unconstitutional conditions of confinement. Thus, those issues were not decided by the court against plaintiff on the merits. Clearly, plaintiff is precluded from contesting that he assaulted Officer Kozlowski. In addition, to the extent that this lawsuit challenges the voluntary nature of his plea, it fails to state a claim under § 1983. [4] *See Jenkins v. Haubert,* 179 F.3d 19, 22–23 (2d Cir.1999) (discussing differences of 42 U.S.C. § 1983 and 28 U.S.C. § 2254). [5] However, plaintiff is not barred by *Heck, Rooker–Feldman,* or estoppel from seeking monetary damages as compensation for allegedly being assaulted by Jail staff or for being confined in unconstitutional conditions at the Jail.

2. Exhaustion of Available Administrative Remedies

**\*5** Defendants next argue that summary judgment is warranted because plaintiff failed to exhaust administrative remedies pursuant to the PLRA. I agree.

Initially, I note that the PLRA's exhaustion requirement applies equally to actions brought by pretrial detainees. *See Baez v. Parks,* No. 02 Civ. 5821, 2004 WL 1052779 (S.D.N.Y. May 11, 2004) (holding that PLRA's exhaustion requirement applied to pretrial detainee's § 1983 claims); *U.S. v. Al–Marri,* 239 F.Supp.2d 366, 367–68 (S.D.N.Y.2002) (same). In addition, in accordance with the provisions of the New York State Commission of Correction's Grievance Program, set forth in 9 N.Y.C.R.R. § 7032.1 *et seq.,* the Jail has established an inmate grievance program. (Dkt.# 17, Ex. DD).

Detainees exhaust their administrative remedies by completing a three-step review process. The first step requires inmates to file a written grievance on an Inmate Common Form within five days of the date of the act about which the inmate complains. He must then complete a two-step appeal process. Grievances must be filed regarding "written or unwritten facility policies, procedures, rules, practices, programs or the action or inaction of any person within the facility." Therefore,

administrative remedies related to claims of improper conduct by Jail officials must be exhausted.

Of the remaining thirteen causes of action, all allege improper conduct by Jail officials, or their failure to intervene to stop the conduct, and are therefore grievable offenses. Therefore, plaintiff must establish that he exhausted all available administrative remedies prior to commencing this action in federal court. *See* 42 U.S.C. § 1997e(a).

Plaintiff was familiar with the grievance process at the Jail. In fact, plaintiff filed grievances during his detainment regarding relatively minor incidents, including one claiming that he should be allowed to post more than three pictures in his cell and another requesting that he be allowed to send funds to his grandmother. In addition, just one day before he was transferred out of the Jail, he filed a grievance objecting upon procedural grounds to a disciplinary write-up that was pending. (Dkt.# 9, Ex. K). Nevertheless, defendants have no record that plaintiff or his attorney, Correia, filed any written grievances about the incidents described in the complaint.

Plaintiff advances several different excuses for his failure to grieve the incidents alleged in the complaint. None provide sufficient excuse for plaintiff's failure to comply with the requirements of the Jail's grievance program so as to defeat summary judgment.

In his complaint and opposition to summary judgment, plaintiff claims that he grieved these incidents by complaining to his attorney and family members that he was being beaten and abused. He claims that they in turn complained to the Jail about his mistreatment. (Dkt. # 15, p. 2 at ¶ 1). However, complaining to family members and friends is not a proper way to exhaust administrative remedies pursuant to the Jail's grievance policy. (Dkt.# 17, Ex. DD).

**\*6** First of all, there is no procedure in the grievance process for an inmate to make an "informal" complaint to Jail officials through third parties. In any event, neither plaintiff's friends nor family members state that they lodged a formal complaint to a Jail official that plaintiff had been beaten, or was the victim of the other conduct described in his complaint. [6]

In addition, plaintiff claims that Attorney Correia observed him with cuts and bruises. Plaintiff claims that Correia thought that the abuse was bad enough to ask Chief Virts to move plaintiff to another jail. (Dkt.# 21, ¶ 5). Defendants admit that, sometime in late July or early August 2002, Correia asked Chief Virts whether plaintiff could be transferred from the Jail because plaintiff did not like being housed in segregation in the medical wing. However, Chief Virts states clearly that Correia did not complain that plaintiff was being abused, beaten or otherwise treated unlawfully or unfairly at the Jail. [7] (Dkt. # 9, Virts Aff., ¶ 13).

Whether Correia failed to pursue written grievances on plaintiff's behalf at the Jail, however, is not the issue. As the Second Circuit recently made clear, the PLRA's administrative exhaustion requirement is "mandatory" and subject to only limited exceptions, none of which apply here. *See Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004). Plaintiff does not assert, and the record does not otherwise indicate, that plaintiff lacked "available" administrative remedies, that prison officials somehow inhibited his ability to utilize the grievance procedures, or that Jail officials failed to timely advance his grievances. *See id.; see also Hemphill v. New York,* 380 F.3d 680 (2d Cir.2004). There is no indication that defendants engaged in conduct that should estop them from raising the defense at this time. *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004). Moreover, there are no "special circumstances" presented in this case to justify plaintiff's failure to exhaust his administrative remedies. Nothing in the case law suggests that the exhaustion requirement should be excused because of the failure of a court-appointed criminal attorney to pursue administrative remedies on plaintiff's behalf.

Finally, in his most recent court filing, plaintiff claims for the first time that he "did file grievances of abuse," but he "suspect[s] (sic) it was trashed in attempts to silence" him. (Dkt.# 22, ¶ 8). Plaintiff makes this claim in conclusory fashion. He does not state when, where, or with whom he allegedly filed these grievances. This one-sentence assertion, raised for the first time in his fourth court filing addressing these issues, cannot defeat summary judgment.

Therefore, the remainder of plaintiff's claims (the third through the fifteenth causes of action alleged in the complaint) are dismissed because plaintiff failed to exhaust his administrative remedies. *See Bryant v. Hernandez,* No. 00 Civ. 3728, 2004 WL 1933571 (S.D.N.Y. Aug.30, 2004) (plaintiff's complaint dismissed for failing to exhaust administrative remedies where plaintiff failed to produce sufficient evidence that remedies were not available to him or that defendants impeded his ability to file a grievance).

CONCLUSION

**\*7** Defendants' motion for summary judgment (Dkt.# 9) is granted.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 2202638

Footnotes

1    Plaintiff's complaint also cited the Fifth and Eighth Amendments as sources of the constitutional right at issue. However, his claims are properly analyzed under the Due Process Clause of the Fourteenth Amendment. The Fifth Amendment is inapplicable because it applies only to violations of due process committed by *federal* officials and defendants here are all county employees. *See Birdsall v. City of Hartford,* 249 F.Supp.2d 163, 170 (D.Conn.2003) (citing *Public Utilities Comm'n v. Pollak,* 343 U.S. 451, 46 (1952)). Moreover, the Eighth Amendment's prohibition on cruel and unusual punishment applies only to convicted prisoners who are being punished through imprisonment. At all relevant times, plaintiff was a *pretrial detainee,* not a prisoner, and as such, the Eighth Amendment does not apply. Instead, the Fourteenth Amendment protects pretrial detainees from conditions of detention that constitute punishment, *Bell v. Wolfish,* 441 U.S. 520, 536, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and other government conduct during detention that shocks the conscience. *County of Sacramento v. Lewis,* 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). *See also Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ( "The rights of one who has not been convicted are protected by the Due Process Clause.");

**Dye v. Virts, Not Reported in F.Supp.2d (2004)**
Case 9:15-cv-01485-MAD-DEP   Document 99   Filed 02/16/18   Page 87 of 109
2004 WL 2202638

2   *Bryant v. Maffucci,* 923 F.2d 979 (2d Cir.1991) (plaintiff's claims properly analyzed under the Fourteenth, not the Eighth, Amendment because she was a pretrial detainee at the time of the acts alleged, not a convicted prisoner).

2   The essence of the *Rooker–Feldman* doctrine (derived from *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)) is that "lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir.1998). In this regard, where a claim is so "inextricably intertwined" with a state court judgment that "federal relief can only be predicated upon a conviction that the state court was wrong" the *Rooker–Feldman* doctrine will defeat the court's jurisdiction over the claim. *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

3   Additionally, I find that plaintiff is estopped from claiming that he was assaulted by defendant Kozlowski when he previously took a different position in open court by admitting to assaulting Kozlowski and causing him physical injuries with the intent to prevent him from performing his duties as a corrections officer. *See Green v. Montgomery,* 43 F.Supp.2d 239, 242 (E.D.N.Y.1999) (arrestee's previous state court juvenile delinquency adjudication on charge of reckless endangerment of a police officer precluded § 1983 claim for excessive force); *Mitchell v. Keane,* 974 F.Supp. 332, 340 (S.D.N.Y.1997) (plaintiff collaterally estopped from bringing § 1983 claim against officer for filing false disciplinary charges of assault against plaintiff when a previous state criminal proceeding convicted plaintiff of the assault in question). Having held that *Heck* and the doctrine of estoppel bars plaintiff's first and second claims against defendant Kozlowski, I need not address defendants' contention that the *Rooker–Feldman* doctrine bars these claims.

4   A prisoner's sole federal court remedy to challenge his state court conviction and to seek release from state prison is through the habeas corpus statute, 28 U.S.C. § 2254. I make no finding as to whether that remedy is available to this particular plaintiff, however.

5   For instance, plaintiff claims in his motion opposition that he "only took a plea bargain in order to get out of WCJ" because his "lawyer did not and would not get [him] moved away from this ecesive (sic) abuse and beatings." (Dkt.# 16, ¶ 16). He also claims that he is an "innocent man in prison" and that he intends to "prov[e] this abuse *did* happen and that I did not rape my son's mother." (Dkt.# 15). Nevertheless, despite the fact that plaintiff states that his "main concern" in this lawsuit is "to prove [his] innocence," he also states that he is suing because he was "beaten, abused, starved, treated worse than a[n] animal with rabbies (sic), spit on, [and] scared for a long period of time." (May 4, 2004 letter to Court).

6   For instance, plaintiff filed the affidavits of his grandmother and a friend, Cathy Switzer, who saw plaintiff during visits and reported that his appearance was unkempt, his hair was dirty, and that he was unshowered. His grandmother says she saw bruises on his ankles and wrists, and Switzer reports that plaintiff told her he had bruises, though she does not say she saw them herself. (Dkt. # 16, Exs. B and C). Switzer states that she "gathered that he was being harassed in many ways," and that she spoke with plaintiff's lawyer about it. She states that he said he would "look into" whether any of his basic rights were being denied. Eventually, Switzer says, plaintiff's appearance improved. (Dkt.# 16, Ex. B).

Plaintiff also filed the declarations of Daniella Tome and Heather Delamarter that state that they observed him at the Jail with numerous bruises, welts, and old and new abrasions around his wrists and ankles. Plaintiff was unshowered and appeared to be very dirty. Plaintiff also told them that the officers that restrained him were very violent and abusive to him and that one officer beat him while in restraints when transferring him to the hospital. Tome and Delamarter then questioned someone at the Jail that they referred to as a "jail clerk" or "receptionist" about why plaintiff was not receiving his mail, and she explained that he was "in solitary" and was "being punished." (Dkt.# 16, Exs.D, E).

7   In response to this inquiry, Chief Virts explained to Correia that plaintiff was a suicide risk, was viewed as dangerous and prone to escape, and that segregation on the medical wing allowed him to be carefully observed and to be kept away from Officer Kozlowski and his wife, Mrs. Kozlowski, both of whom worked at the Jail. Both were deliberately not assigned to duty on the medical wing. In addition, Chief Virts explained that, although several Jail officials wanted to see plaintiff transferred, it would be bad policy to transfer an inmate for assaulting an officer because any inmate in the future who wanted a transfer would simply need to assault an officer in order to be moved. (Dkt. # 9, Virts Aff., ¶ 13).

---

**End of Document**                                          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

1999 WL 983886
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Anthony ESTES, Plaintiff,
v.
NYC Police John DOE, NYC Police Edson Garcia,
Stephen Malito, & Kenneth Deane, Defendants.

No. 97 Civ. 8133(BSJ).
|
Oct. 29, 1999.

**Opinion**

*Memorandum and Order*

JONES, J.

**\*1** Plaintiff *pro se* brings this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, alleging violations of his constitutional rights. Before this Court are the motions of defendants for summary judgment pursuant to Federal Rule of Civil Procedure 56(b). Because the moving defendants are entitled to judgment as a matter of law, their motions for summary judgment are granted.

BACKGROUND

On April 15, 1997, a police officer stopped plaintiff Anthony Estes ("Estes") for not wearing a seatbelt while operating a motor vehicle. The officer John Doe ("Doe") asked Estes for identification. Estes could not produce a valid driver's license, and the police officer commenced a motor vehicle check. The officer found marijuana in the vehicle and discovered that Estes's license was suspended due to his failure to pay outstanding traffic fines. Estes was then arrested for aggravated unlicensed operation of a motor vehicle in the third degree, unlawful possession of marijuana, and driving without a seatbelt. Plaintiff then alleges that while he was detained, defendant Edson Garcia ("Garcia") "harassed and taunted" him.

At the time of the arraignment, defendant Kenneth Deane ("Deane"), a licensed attorney who works for the Queens Law Associates, was appointed to represent Estes.[1] After the initial arraignment, the marijuana possession charge

was dismissed, and plaintiff was offered a plea bargain in which he would plead guilty to a violation of Vehicle and Traffic Law Section 509.1 and pay a $50.00 fine. Estes, however, refused to plead guilty. Deane subsequently filed a motion to dismiss or, in the alternative, for a probable cause hearing. The motion was granted to the extent of ordering a hearing. A hearing was held on September 15, 1997, and the judicial hearing officer found probable cause for the stop and subsequent arrest. A Decision and Order was issued on October 2, 1997 adopting the findings of fact and conclusions of law of the judicial hearing officer.

On November 3, 1997, plaintiff *pro se* commenced the instant action. Plaintiff alleges that after the defendant police officers pulled him over for a traffic infraction, he was illegally searched, arrested, and kidnapped without an arrest warrant. Plaintiff further alleges that Queens County Assistant District Attorney Stephen Malito, Deane, and Judge Douglas Wong ("Judge Wong") failed to adhere to legal procedures, and conspired to deprive him of his constitutional rights.[2] Plaintiff sought an injunction staying his criminal case, a declaratory judgment that his constitutional rights were violated, and $10,000,000 in punitive and compensatory damages. After commencement of this action, defendant Deane was relieved as counsel for Estes. In June 1998, while represented by other counsel, Estes pled guilty to a misdemeanor—aggravated unlicensed operation of a motor vehicle in the third degree—pursuant to New York's Vehicle and Traffic Law Section 511.9, and paid a $250.00 fine.

**\*2** Since the date of his guilty plea, Estes has made no attempt to litigate this action. The Court scheduled a pre-trial conference at the request of defendant Deane on September 18, 1998. Despite the fact that plaintiff was notified of the conference by Certified Mail, Return Receipt Requested, Estes did not attend the conference. The Court then set a schedule for the filing of defendants' summary judgment motions. The plaintiff was ordered to file his response by November 18, 1998. Plaintiff never responded. On February 2, 1999, the Court warned plaintiff that he "must file an opposition to defendants' motion by March 4, 1999, or to show good cause why he needs more time. Failure of plaintiff *pro se* to follow such directions will result in the defendants' motion being decided unopposed." Estes failed to respond. On September 27, 1999, in light of the principles expressed in *Champion v. Artuz,* 76 F.3d 483 (2d Cir.1996) (per curiam),

and *Vital v. Interfaith Medical Center,* 168 F.3d 615, 620–21 (2d Cir.1999), the Court again notified plaintiff that the defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiff was warned that "[i]f you do not respond to the motion for summary judgment by October 8, 1999, with affidavits or documentary evidence contradicting the facts asserted by the defendants, the Court may accept defendants' factual assertions as true. Judgment may then be entered in defendants' favor without a trial." Estes again failed to respond. Accordingly, the Court decides defendants' motions unopposed.

DISCUSSION

I. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden to show the absence of a genuine issue of material fact. Once the moving party has met this burden, the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The non-moving party does not meet this burden when some "metaphysical doubt as to the material facts" exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *see also Hogan v. 50 Sutton Place South Owners, Inc.,* 919 F. Supp 738, 742 (S.D.N.Y.1996) ("Speculative and conclusory allegations are insufficient to meet this burden." (quoting *Allen v. Coughlin,* 64 F.3d 77, 80 (2d Cir.1995))). Additionally, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Liberty Lobby,* 477 U.S. at 248; *see also Zucker v. Katz,* 836 F.Supp. 137, 143–44 (S.D.N.Y.1993).

**\*3** As Estes is proceeding *pro se,* his submissions will be read liberally and "interpret[ed] ... to raise the strongest arguments that they suggest." *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)).

II. PLAINTIFF'S CLAIMS

A. SECTION 1983 CLAIMS AGAINST DEFENDANTS GARCIA, DOE, AND MALITO

Plaintiff alleges that defendants Garcia, Doe, and Malito violated 42 U.S.C. § 1983 when the defendants unlawfully arrested [3] and maliciously prosecuted [4] him. A plaintiff in a Section 1983 action must allege that: (1) the conduct complained of deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) the conduct complained of was committed by a person acting under color of law. *See Gomez v. Toledo,* 446 U.S. 635, 640 (1980). Further, to recover damages for any allegedly unconstitutional conviction, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994).

A claim for damages relating to a conviction that has not been so invalidated is not cognizable under Section 1983. *See id.; Warner v. Orange County Dept. of Probation,* 115 F.3d 1068, 1074 n. 5 (2d Cir.1996) (stating that the *Heck* "rule applies most clearly where the defendant has been convicted of a crime, but contends in his § 1983 action that he was prosecuted for an unconstitutional reason."); *Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991) (holding that to prove a Section 1983 claim of malicious prosecution, plaintiff must show that officers commenced criminal proceeding against him, that proceeding terminated in his favor, that there was no probable cause for criminal proceeding, and that it was instituted with malice). Accordingly, unless plaintiff demonstrates that his plea has already been invalidated, his § 1983 claim must be dismissed if it necessarily implies the invalidity of such conviction. *See Jackson v. Suffolk County Homicide Bureau,* 135 F.3d 254, 256 (2d Cir.1998) (" 'A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.' ") (quoting *Heck,* 512 U.S. at 487).

Here, Estes pled guilty to a crime—aggravated unlicensed operation of a motor vehicle in the third degree. [5]

Plaintiff's plea has not been invalidated, and as a result, his § 1983 action must be dismissed because his claim necessarily implies the invalidity of his conviction. *See Tavarez v. Reno,* 54 F.3d 109, 110 (2d Cir.1995) (dismissing false arrest, false imprisonment, and malicious prosecution claims because plaintiff "has not demonstrated that his conviction has been invalidated in any manner"); *Channer v. Mitchell,* 43 F.3d 786, 787 (2d Cir.1994) (affirming the dismissal of claims that defendant police officers committed perjury and coerced witnesses to wrongfully identify plaintiff because he "offered no proof that his conviction had been independently invalidated"). Accordingly, plaintiff's § 1983 claims against defendants Garcia, Doe, and Malito for unlawful arrest and malicious prosecution are dismissed. [6]

## B. SECTION 1985 CLAIMS AGAINST DEFENDANTS GARCIA, DOE, MALITO, AND DEANE

**\*4** Estes brings claims pursuant to § 1985. A plaintiff alleging a conspiracy under § 1985 must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the claimed conspiracy. *See Thomas v. Roach,* 165 F.3d 137, 147 (2d Cir.1999). Here, Estes simply makes conclusory statements that the defendants conspired and violated Section 1985 with Judge Wong to deprive him of his constitutional rights. Estes has not alleged with any particularity the overt acts engaged in by the city defendants. Estes's vague assertions, therefore, do not establish the existence of an agreement among the defendants to deprive him of his constitutional rights. Accordingly, the Court grants defendants' motions for summary judgment as to plaintiff's Section 1985 claims. *See Thomas,* 165 F.3d at 147.

## C. SECTION 1986 CLAIMS AGAINST DEFENDANTS GARCIA, DOE, MALITO, AND DEANE

Estes also alleges violations of § 1986. Section 1986 "provides a cause of action against anyone who 'having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1088 (2d Cir.1993) (citation omitted). Thus, a Section 1986 claim must be predicated upon a valid Section 1985 claim. *See id.* (citing *Dacey v. Dorsey,* 568

F.2d 275, 277 (2d Cir.1978)). Because Estes's Section 1985 claims are dismissed, the Court also grants summary judgment for the defendants as to Estes's Section 1986 claims.

## D. PLAINTIFF'S LEGAL MALPRACTICE CLAIMS AGAINST DEFENDANT DEANE

While plaintiff's complaint does not specifically allege a cause of action for legal malpractice, Estes does allege that Deane failed to make the appropriate motions and submit the appropriate citations which would have resulted in a dismissal of Estes's criminal proceedings. The Court thus reads plaintiff's Complaint as raising a claim for legal malpractice against Deane.

To allege legal malpractice, Estes must show that he was innocent or had a colorable claim of innocence of the underlying offense, "for so long as the determination of his guilt for that offense remains undisturbed, no cause of action will lie." *Carmel v. Lunney,* 70 N.Y.2d 169, 173 (1987) (internal citations omitted). Because Estes is precluded by his guilty plea from proving his innocence in this action, he is unable to state a cause of action for legal malpractice. *See Scanio v. Palmiere & Pellegrino, P.C.,* 674 N.Y.S.2d 527, 528 (4th Dep't 1998).

Moreover, on the undisputed facts, Deane did not commit malpractice. Deane vigorously defended Estes. It is undisputed that Deane made a motion to suppress evidence and a motion for a probable cause hearing. The judicial hearing officer found probable cause for the stop and subsequent arrest and his findings were adopted by the criminal court judge. Deane then negotiated a plea bargain for his client whereby Estes would plead guilty to a traffic violation and pay a $50 fine. Estes refused. In June of 1998, Estes, represented by different counsel, pled guilty to a more serious offense, aggravated unlicensed operation of a motor vehicle in the third degree, and paid a $250 fine. The fact that Deane negotiated a plea more favorable than the one Estes later agreed to demonstrates that Deane's representation was adequate. Accordingly, the Court grants summary judgment for defendant Deane as to plaintiff's claim of legal malpractice.

## E. PLAINTIFF'S REMAINING CLAIMS

**\*5** Finally, the plaintiff mentions in his complaint that the city defendants "violated clearly established rights protected under the Constitution, particularly under the

Case 9:15-cv-01485-MAD-DEP   Document 99   Filed 02/16/18   Page 91 of 109
Estes v. Doe, Not Reported in F.Supp.2d (1999)
1999 WL 983886

Fourth, Fifth, Sixth, Eighth, [Thirteenth], and Fourteenth Amendments, and Civil Rights and God given inalienable rights."

## 1. PLAINTIFF'S REMAINING CLAIMS AGAINST ASSISTANT DISTRICT ATTORNEY MALITO

Estes's remaining claims against defendant Malito are barred under the doctrine of prosecutorial immunity. In determining whether prosecutorial immunity is applicable, a court must use a "functional approach," looking to the function being performed rather than to the office or identity of the official. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993). State prosecutors are entitled to absolute immunity for that conduct "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. at 409, 430 (1976). Thus, a district attorney is absolutely immune from civil liability for initiating a prosecution and presenting the case at trial. *See id.* at 430–31. Such official is also immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, *see Buckley,* 509 U.S. at 273, or determining which offenses are to be charged. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). Prosecutorial immunity from § 1983 liability "is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." ' *Hill v. City of New York,* 45 F.3d 653, 661 (2d Cir.1995) (quoting *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994)).

For those acts that historically received no immunity at common law, absolute immunity may not be invoked. *See Buckley,* 509 U.S. at 274 n. 5 (noting that malicious prosecution was traditionally immune while the manufacture of evidence was not). When a district attorney functions outside his or her role as an advocate for the People, the shield of immunity is absent. Immunity does not protect those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings. *See Buckley,* 509 U.S. at 271.

Before any formal legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts. "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley,* 509 U.S. at 274. For example, prosecutors are not entitled to absolute immunity for the act of giving legal advice to the police in the investigative phase of a criminal case, *see Hill,* 45 F.3d at 661, or for assisting in a search and seizure or arrest. *See Day v. Morgenthau,* 909 F.2d 75, 77–78 (2d Cir.1990).

In the instant matter, Estes's claims against Malito are for: (1) bringing charges against plaintiff upon his arrest; (2) deciding not to offer a lesser plea bargain to plaintiff; and (3) conspiring with Judge Wong and defendant Deane "to make a civil matter a criminal matter," thereby depriving plaintiff of his constitutional rights. Such actions are intimately associated with the judicial phase of the criminal process because they are so closely associated with a prosecutor's function as an advocate. *See Imbler,* 424 U.S. at 430; *Hill,* 45 F.3d at 661. There is no allegation by the plaintiff that Malito acted outside his role as an advocate for the People, and functioned as an investigator. Accordingly, the Court finds that Malito is absolutely immune from suit for his alleged actions.

## 2. PLAINTIFF'S REMAINING CLAIMS AGAINST DEFENDANTS GARCIA AND DOE

**\*6** Here, plaintiff's bald assertion that defendants Doe and Garcia violated numerous amendments to the Constitution, without any elaboration, fails to state any cause of action as a matter of law. Accordingly, the Court grants their motion for summary judgment, and dismisses plaintiff's remaining claims.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are granted. The Clerk of the Court is directed to enter final judgment for the defendants.

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 983886

Footnotes

Estes v. Doe, Not Reported in F.Supp.2d (1999)
Case 9:15-cv-01485-MAD-DEP   Document 99   Filed 02/16/18   Page 92 of 109
1999 WL 983886

1    Queens Law Associates, pursuant to a contract with the City of New York, represents a portion of indigent defendants in Queens County.

2    On September 10, 1998, the Court granted defendant Judge Wong's motion to dismiss the complaint upon the grounds that plaintiff's claims against Judge Wong were barred by the doctrine of judicial immunity.

3    To maintain a cause of action for false imprisonment under Section 1983, a plaintiff must show that: (1) the defendant intended to confine him; (2) he was conscious of the confinement; (3) he did not consent to the confinement; and (4) the confinement was not otherwise privileged. *See Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995).

4    In order to prevail on a claim of malicious prosecution, a plaintiff must show that the civil defendant initiated or caused the institution of proceedings against the plaintiff without probable cause, that the proceedings were commenced against him with malice on the part of the civil defendant, and that those proceedings terminated in the plaintiff's favor. *See, e.g., Robinson v. Cattaraugus County,* 147 F.3d 153, 163 (2d Cir.1998); *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995).

5    New York's Vehicle and Traffic Law, Section 511 states:

> (a) A person is guilty of the offense of aggravated unlicensed operation of a motor vehicle in the third degree when such person operates a motor vehicle upon a public highway while knowing or having reason to know that such person's license or privilege of operating such motor vehicle in this state or privilege of obtaining a license to operate such motor vehicle issued by the commissioner is suspended, revoked or otherwise withdrawn by the commissioner.
>
> (b) Aggravated unlicensed operation of a motor vehicle in the third degree is a misdemeanor. When a person is convicted of this offense, the sentence of the court must be: (i) a fine of not less than two hundred dollars nor more than five hundred dollars; or (ii) a term of imprisonment of not more than thirty days; or (iii) both such fine and imprisonment.

6    Even though the New York City Police Department is not named as a party to this action, Estes alleges that the New York City Police Department is responsible for his injuries because it "fail[s] to train their officials and employees [as to the] applicable provisions of the United States Constitution." Municipalities may be sued under 42 U.S.C. § 1983 for constitutional deprivations that result from an officially adopted policy or custom. *See Monell v. Department of Soc. Sevs.,* 436 U.S. 658, 690 (1978); *Sarus v. Rotundo,* 831 F.2d 397, 400 (2d Cir.1987). To hold a municipality liable under 42 U.S.C. § 1983, a plaintiff must show three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *See Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983); *see also Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). Here, plaintiff fails to allege any facts reasonably suggesting that a custom or policy of the New York City Police Department caused such deprivation. Plaintiff's Complaint, therefore, does not raise any § 1983 claims against the New York City Police Department.

---

**End of Document**        © 2018 Thomson Reuters. No claim to original U.S. Government Works.

📁 KeyCite Yellow Flag - Negative Treatment
Distinguished by Lindsey v. Butler, S.D.N.Y., August 29, 2014

2010 WL 935383
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Kerry PULLIAM, Plaintiff,

v.

Suffolk County Police Department Detectives
James LILLY, Tulio Serrata and "John
Does" No. 3 and 4, all in their individual
and/or official capacities, Defendants.

No. 07–CV–1243 (SJF)(AKT).
|
March 11, 2010.

**Attorneys and Law Firms**

Kerry Pulliam, Attica, NY, pro se.

Richard T. Dunne, Susan A. Flynn, Suffolk County
Attorney's Office, Hauppauge, NY, for Defendant.

**Opinion**

**OPINION & ORDER**

FEUERSTEIN, District Judge.

*I. Introduction and Procedural History*

**\*1** On March 21, 2007, *pro se* plaintiff Kerry Pulliam
("plaintiff") filed a complaint against the Suffolk County
Police Department ("SCPD") pursuant to 42 U.S.C. §
1983. By order dated April 19, 2007, I granted plaintiff's
application to proceed *in forma pauperis* and *sua sponte*
dismissed the complaint for failure to state a claim against
the SCPD, with leave to file an amended complaint within
thirty (30) days. On May 10, 2007, plaintiff timely filed an
amended complaint against four (4) "John Doe" SCPD
Detectives [1], in their individual and/or official capacities,
alleging, *inter alia*, that on or about January 20, 2007,
those four (4) detectives assaulted him during a custodial
interrogation, in violation of his constitutional rights.
(Amended Complaint [Compl., ¶ 5). Defendants now
move pursuant to Rule 56 of the Federal Rules of Civil
Procedure for summary judgment dismissing the amended
complaint.

*II. Factual Background*
In his amended complaint, plaintiff alleges, *inter alia,*
the following: "On or about January 20, 2007 ... I was
Assaulted by 4 separate detectives in violation of my
constitutional rights during an interrogation. When I
refused to sign an incriminating statement against myself
SCPD detective John Doe# 1 [Lilly] Strangled me and said
I was "lying".... SCPD detective John Doe# 2 [Serrata]
came in and tried to get me to sign a statement as well.
When I refused to sign for him, SCPD detective John
Doe# 2 [Serrata] pulled my arm behind my back in an
upwards motion while he had me in a choke hold and he
slapped [sic] in the face.... SCPD detective John Doe# 3
came in and immediately started to slap me several times ...
SCPD detective John Doe # 4 came in and grabbed me in
a choke hold and punched me in my back several times....
During the entire time I was being beaten I was hand
cuffed."

Plaintiff has failed to submit any evidence in support
of those allegations and does not contest the following
statements or exhibits submitted by defendants in support
of their motion for summary judgment:

On January 20, 2007, 911 calls were made by Jodi
Isolano and Maureen DeMatteo reporting that Joseph
DeMatteo ("DeMatteo") was being attacked outside his
home, located at 3 Surfside Cove, West Islip, New York,
by a black male. (Defendants' Statement Pursuant to
Local Rule 56.1 [Def. 56.1], ¶ 2, Exhibit [Ex.] 1). In
an affidavit, DeMatteo detailed the robbery attempt
committed by plaintiff and the ensuing struggle. (Def. 56.1
¶ 3, Ex. 3). According to DeMatteo, during the struggle,
he and plaintiff fell to the ground and were hitting each
other. (*Id.*). Additional affidavits of DeMatteo's wife and
neighbors detail their observations of the struggle between
Mr. DeMatteo and plaintiff. (Def. 56.1 ¶ 4, Exhibit 4).
In addition, one of those witnesses reported that he, too,
wrestled plaintiff to the ground. (*Id.*)

On January 20, 2007, plaintiff was arrested on the charge
of robbery in the second degree and was taken to the
Third Precinct to be processed on his arrest. (Def. 56.1 ¶¶
1 and 5). A SCPD police activity log indicates that upon
plaintiff's arrival at the precinct, officers observed a "small
cut on face/forehead area" on plaintiff and that plaintiff
complained that his "face hurts from an altercation with
another subject prior to the police arrival." (Def. 56.1 ¶

2010 WL 935383

5, Ex. 5). Photographs taken of plaintiff during the arrest process depict superficial abrasions consistent with the abrasion noted upon plaintiff's arrival at the precinct five (5) hours earlier. (Def. 56.1 ¶ 6, Ex. 6).

**\*2** On January 21, 2007, plaintiff was turned over to the Suffolk County's Sheriff's Office. (Def. 56.1 ¶ 8). A jail intake form notes that plaintiff had a "cut on head/swollen L eye" and refused medical treatment. (*Id.,* Ex. 8). During a physical examination of plaintiff upon his admission to the jail, plaintiff only complained of "neck stiffness." (Def. 56.1 ¶ 10, Ex. 9). Moreover, a screening sheet from the jail medical unit notes that two (2) days prior, plaintiff was hit in his left eye and the side of his head and that a reddened area was observed on plaintiff's eye. (Def. 56.1 Ex. 9). None of those documents indicate that plaintiff ever claimed any physical contact with investigating officers.

During a taped telephone interview on February 22, 2008, plaintiff claimed that he had been the victim of excessive force, but admitted: (1) that he had been in a fight with DeMatteo, during which he rolled around on the ground; (2) that he was uncertain whether he already had a cut on his head when he entered the precinct; (3) that he never received medical treatment for his eye, which healed itself; (4) that he could not be certain what injuries he may have incurred during his struggle with DeMatteo; and (5) that he probably did have the cut on his head prior to arriving at the precinct. (Def. 56.1 ¶ 12, Ex. 11).

Following a jury trial, plaintiff was convicted of robbery in the second degree, a class C violent felony, for which he was sentenced to a determinate term of imprisonment of seven (7) years. (Def. 56.1 ¶ 9)

### III. *Discussion*

#### A. *Summary Judgment Standard*

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir.2007) (internal quotations and citations omitted); *see Ricci v. DeStefano,* —— U.S. ——, ——, 129 S.Ct.

2658, 2677, 174 L.Ed.2d 490 (2009) (holding that "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (Emphasis added) (internal quotations and citation omitted)). "A fact is material if it 'might affect the outcome of the suit under governing law.' " *Spinelli v. City of New York,* 579 F.3d 160, 166 (2d Cir.2009) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci,* 129 S.Ct. at 2677 (quoting *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

**\*3** If the district court determines that there is a genuine dispute as to a material fact, the court must then "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Spinelli,* 579 F.3d at 166 (internal quotations and citation omitted), to determine whether there is a genuine issue for trial. See *Ricci,* 129 S.Ct. at 2677. A genuine issue exists for summary judgment purposes "where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. County of Nassau,* 524 F.3d 160, 163 (2d Cir.2008) (citing *Guilbert v. Gardner,* 480 F.3d 140, 145 (2d Cir.2007)). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to "come forth with evidence sufficient to allow a reasonable jury to find in [its] favor." *Spinelli,* 579 F.3d at 166 (internal quotations and citation omitted). Thus, the nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. *Id.* (internal quotations and citations omitted); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment is appropriate when the non-moving party has no evidentiary support for an essential element for which it bears the burden of proof. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the

2010 WL 935383

[non-movant]." *Hayut v. State Univ. of N. Y.,* 352 F.3d 733, 743 (2d Cir.2003) (alterations in original).

It is well established that "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they support." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (internal quotations and citations omitted). Nevertheless, a pro se litigant cannot oppose a summary judgment motion by solely relying on "conclusory allegations or denials"; instead, he must produce "some affirmative indication that his version of relevant events is not fanciful." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980).

B. *Plaintiff's Section 1983 Claim*

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (internal quotations and citations omitted). To state a claim under Section 1983, a complaint must contain factual allegations plausibly suggesting (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Velez v. Levy,* 401 F.3d 75, 84 (2d Cir.2005). As it is assumed that the defendants were acting under color of state law, I need determine only whether plaintiff suffered a violation of his constitutional rights under Section 1983.

**\*4** The source of the constitutional right against physically abusive government conduct occurring during the course of a criminal proceeding depends on the context in which it occurred. "Where * * * the excessive force claim arises in the context of an arrest * * *, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham,* 490 U.S. at 394, 109 S.Ct. 1865, 104 L.Ed.2d 443. Where the excessive force claim arises in the context of pre-trial detention, it invokes the protections of the Due Process Clause. *Id.* at 395 n. 10, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443. Where the excessive force claim arises after conviction, "the Eighth Amendment 'serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified.' " *Id.* (quoting *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078,

1088, 89 L.Ed.2d 251 (1986)). Since plaintiff's excessive force claim arises from the custodial interrogation that occurred during the arrest process, the constitutional right invoked is the Fourth Amendment. *See, e.g. Yang Feng Zhao v. City of New York,* 656 F.Supp.2d 375, 389 (S.D.N.Y.2009); *Swift v. Rinella,* No. 07–cv–0748, 2008 WL 4792700, at * 2 (S.D.Ill. Oct.31, 2008).

Under the Fourth Amendment, the relevant inquiry is whether the amount and nature of the force used was "objectively reasonable" under the totality of the circumstances faced by the officer on the scene. *Graham,* 490 U.S. at 396–397, 109 S.Ct. 1865, 104 L.Ed.2d 443. The determinative issue is the nature of the force used, as opposed to the nature of the injury, since a plaintiff may recover if the force used was unreasonable and excessive, notwithstanding that the injuries inflicted were not permanent or severe. *See Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987). "[W]hile 'the extent of the injury suffered ... is one factor to be considered when determining whether the use of force was excessive, an injury need not be serious in order to give rise to a constitutional claim." *Sash v. U.S.,* 674 F.Supp.2d 531, 2009 WL 4824669, at * 6 (S.D.N.Y. Dec.15, 2009) (quoting *Ortiz v. Pearson,* 88 F.Supp.2d 151, 160 (S.D.N.Y.2000)). "Just as reasonable force is not unconstitutional even if it causes serious injury, neither does unreasonable force become immunized from challenge because it causes only minor injury." *Sash,* 2009 WL 4824669, at *6. However, the extent and nature of the injury is probative of the amount and type of force actually used by the officer, which is relevant to a determination of the reasonableness of the force used. *See, Zhao,* 656 F.Supp.2d at 390.

Here, the alleged excessive force did not occur at the time of plaintiff's arrest, but rather while he was being questioned at the precinct following his arrest. Moreover, the record is devoid of any evidence reflecting a reason for the use of any force during the interrogation, i.e., that plaintiff was acting aggressively or otherwise posed a threat to the officers during the interrogation. Accordingly, the use of more than *de minimis* force, if even that, under the circumstances presented here, would not be objectively reasonable. *See, e.g. Zhao,* 656 F.Supp.2d at 391 (finding that no use of force was justified during an interrogation of an unresisting previously-arrested individual).

**\*5** Nonetheless, the only injuries alleged by the plaintiff are a cut or abrasion in the facial area, a swollen eye and neck stiffness, which are wholly consistent with the statements of DeMatteo describing his struggle with plaintiff, the other witnesses to the scuffle between DeMatteo and plaintiff and plaintiff himself when he was asked about these injuries upon arrival at the precinct and in later statements. To the contrary, those injuries are mostly inconsistent with plaintiff's excessive force claims against defendants, i.e., he was strangled, his arm was pulled back, he was placed in a choke hold, he was slapped, and he was punched in the back. Moreover, there is no evidence in the record that plaintiff ever notified the county or defendants of his complaints of excessive force prior to the initiation of this lawsuit, several months after his arrest. Although credibility assessments are improper on a motion for summary judgment, *see McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.2006), plaintiff's version of the events is in such discord with the record evidence as to be "wholly fanciful." *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005) ("At the summary judgment stage, a non-moving party must offer some hard evidence that its version of the events is not wholly fanciful."). "[I]ssues of credibility sufficient to defeat a motion for summary judgment are not created if the \* \* \* evidence is too incredible to be believed by reasonable minds." *Schmidt v. Tremmel,* No. 93 Civ. 8588, 1995 WL 6250 (S.D.N.Y. Jan.6, 1995) (quoting *Price v. Worldvision Enterprises, Inc.,* 455 F.Supp. 252, 266 n. 25 (S.D.N.Y.1978)). "[W]hen the facts alleged are so contradictory that doubt is cast upon their plausibility, [the court] [is] authorized to 'pierce the veil of the complaint's factual allegations,' dispose of '[the] improbable allegations", and dismiss the claim." *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 470–471 (S.D.N.Y.1998) (quoting *Denton v. Hernandez,* 504 U.S. 25, 32, 33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992)).

In light of the undisputed evidence and the fact that plaintiff's belated and unsubstantiated claims are replete with inconsistencies and improbabilities, "[n]o reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in [plaintiff's] complaint or in [his] subsequent missives to the court." *Schmidt,* 1995 WL 6250, at \* 4. Since plaintiff has failed to raise a genuine dispute of material fact which could lead a rational trier of fact to find in his favor on his excessive force claim, there is no genuine issue for trial. Accordingly, defendants' motion for summary judgment is granted.

## IV. *Conclusion*

For the foregoing reaso ns, defendants' motion for summary judgment is granted and the amended complaint is dismissed in its entirety. The Clerk of the Court is directed to enter judgment in favor of defendants and to close this case.

**\*6** SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 935383

Footnotes

1    By order dated August 1, 2007, I granted plaintiff's application to amend the caption to substitute Detectives James Lilly ("Lilly") and Tulio Serrata ("Serrata") for "John Does" 1 and 2.

**End of Document**                © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:15-cv-01485-MAD-DEP    Document 99    Filed 02/16/18    Page 97 of 109

Schmidt v. Tremmel, Not Reported in F.Supp. (1995)

1995 WL 6250

KeyCite Yellow Flag - Negative Treatment

Distinguished by Crews v. County of Nassau, E.D.N.Y., February 11, 2014

1995 WL 6250
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Lily SCHMIDT, Plaintiff,
v.
Mr. TREMMEL/capitan, Officer Diedre Butts/new
c/o., and Domenique Riya, legal consul, Defendants.

No. 93 CIV. 8588 (JSM).
|
Jan. 6, 1995.

**Attorneys and Law Firms**

Lily Schmidt, Manhattan Correctional Center, New York City.

Robert W. Sadowski, Asst. U.S. Atty., New York City.

**Opinion**

## MEMORANDUM OPINION AND ORDER

JOHN S. MARTIN, Jr., District Judge:

**\*1** In this case, plaintiff has brought an action under *Bivens v. Six Unknown Fed'l Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999 (1971), against three federal officers at the Manhattan Correctional Center (MCC). Plaintiff Lily Schmidt, having been convicted on two federal charges and awaiting trial on two more, was being held in the MCC in September 1993. In her complaint, plaintiff alleges that defendant Butts, a correctional officer at MCC, sexually molested her while searching her on September 13 and 16. Plaintiff alleges further that Butts performed these searches at the direction and with the approval of defendant Trammel, Butts' immediate supervisor, and that both Trammel and Butts acted with racial animus. Finally, plaintiff claims that when she sought to inform defendant Raia, a Bureau of Prisons attorney assigned to the MCC, of Butts' and Trammel's conduct, Raia lost her temper and told plaintiff to leave her office and return later.

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, defendants have moved to dismiss the complaint for failure to state a claim or, in the alternative, for summary judgement. The motion is granted.

## BACKGROUND

In February 1992, plaintiff was arrested in New York on charges of bank fraud and impersonating a military officer and incarcerated on Rikers Island. There, plaintiff devised a failed scheme to have her guards killed by hitmen while being transported to this court for a pretrial conference; the scheme led to the return of a second federal indictment in December 1992 for attempted murder, solicitation to commit murder and attempted escape. Plaintiff was convicted of these offenses in March 1993. During September 1993, plaintiff remained in custody awaiting sentencing on her convictions and trial for bank fraud and impersonation.

At plaintiff's trial for attempted murder and attempted escape, psychiatric experts testified that Ms. Schmidt had a personality disorder with paranoid, narcissistic and anti-social features. Decl. of Robert W. Sadowski ("Sadowski Decl."), Ex. B. at 672. [1] They also testified that Ms. Schmidt was "malingering," explaining that "individual[s] malinger[ ] when they wilfully engage in either behaviors or in verbal expressions which are designed to give another individual an impression of them which they hope will help them avoid some event or some outcome." *Id.* at 672; *see id.* at 673, 675–76; *id.* at 618; *see also* Decl. of Dominique Raia ("Raia Decl."), Ex. J at 2. [2]

While imprisoned in 1993, Ms. Schmidt complained of repeated physical and mental abuse by MCC staff members. She claimed in a series of Requests for Administrative Remedies that various guards had hit her, Raia Decl.Exs. L, M, N; deprived her of food, *id.* Exs. N, X; encouraged other prisoners to attack her, *id.* Exs. O, Q, R, S, V; revealed "confidential information" about her to another prisoner, *id.* Exs. T, W; and stated, "I want you hurt and killed," *id.* Ex. P. *See generally id.* Ex. L (declaration to be used by FBI in criminal investigation of "terrible abuse" plaintiff suffered while in MCC).

**\*2** That same year, before filing this lawsuit, plaintiff filed five other suits against prison staff members, the officers who arrested her in 1992, and several others

Case 9:15-cv-01485-MAD-DEP   Document 99   Filed 02/16/18   Page 98 of 109

Schmidt v. Trenmel, Not Reported in F.Supp. (1995)

1995 WL 6250

involved with her detention and 1993 conviction. *See* Sadowski Decl.Exs. F, G, H, I, K. In these suits she alleged, *inter alia,* that perjured medical testimony had been offered at her trial for attempted escape; that she had been deprived of medication while in prison; and that various law enforcement officers had raped, beaten and mentally abused her. *See id.*

### THE PRESENT LAWSUIT

In the present suit, Ms. Schmidt alleges that defendant Butts, "who admits [to being a] lesbian," searched her before an attorney conference on September 13, 1993. Compl. ¶ IV. During the search, Butts allegedly squeezed plaintiff's breasts with "painful force," a "smile on her face indicating she was enjoying what she was doing," and stuck her fingers into plaintiff's vagina through plaintiff's prison uniform. *Id.* Plaintiff further claims that, after the conference, defendant Butts conducted a strip-search during which she probed Ms. Schmidt's vagina with ungloved hands for more than 20 minutes; called her a slave; and "said she was above the law and I was on the floor as she pointed and she pointed to the ceiling to show how above the law she was." *Id.* Plaintiff claims that defendant Butts then sought to conceal her misdeeds by filing an incident report in which she charged the plaintiff with insolence. *Id.* On September 16, 1993, "the same scenario from September 13" was allegedly repeated by Butts "in a much worse form." *Id.*

Plaintiff claims that defendant Trammel "made sure" that defendant Butts molested the plaintiff while searching her. *Id.* ¶¶ II, IV. As to defendant Raia, plaintiff alleges that Raia "ordered [plaintiff] out of her office" when plaintiff came to her seeking "help and protection" from Butts and Trammel. *Id.* Plaintiff further claims that all three defendants acted "with a racial motive ... to get even with a white female and [to] harm and antagonize and scare [her] for life sexually." *Id.* ¶ V. Ms. Schmidt seeks $100 million in damages and the dismissal and criminal indictment of the three defendants. *Id.*

Defendant Butts denies that her searches of the plaintiff deviated from standard MCC procedures prescribed pursuant to 28 C.F.R. § 552.11. Decl. of Deidre Butts ("Butts Decl."). Butts states that she did file an incident report concerning the events of September 13, in which she claimed that Butts called her a lesbian. *Id.* ¶ 11;

see Raia Decl.Ex. A. An MCC staff member, trained in proper search techniques, stated during an investigation of Butts' report that he had witnessed the "pat-down" search conducted by Butts on September 13 before Schmidt's attorney conference, and that the search conformed with standard procedures. Raia Decl.Ex. B. [3] As a result of the investigation, Schmidt's visiting privileges were revoked for two months. *Id.* Ex. A at 1.

**\*3** Plaintiff has not formally responded to defendants' alternative motions for dismissal or summary judgment, but has communicated with the court twice by letter after the motion was made. In her letter of July 7, 1994, she opposed "any dismissal" of the present suit and recounted several misdeeds allegedly committed by the defendants and others at MCC in retaliation for filing this lawsuit. In particular, plaintiff claimed that defendant Trammel told her that he would postpone his scheduled departure from MCC in order to "hurt me and my case as much as he can"; that defendant Butts conducted another search during which she ripped apart the plaintiff's shoes and cursed her incessantly; and that defendant Raia had again thrown the plaintiff out of her office. Plaintiff also alleged that another female officer had sexually molested her during a search.

In her letter of December 4, 1994, plaintiff claimed that, in retaliation for filing this lawsuit, defendant Trammel had schemed with other staff members to "punish me all the time." She claimed that the three defendants had conspired to force her to have a heart attack; that she had been deprived of her daily dose of Prozac; and that defendant Butts once brought plaintiff 114 pills "to kill myself." The Department of Justice, according to plaintiff, is currently investigating these allegations.

### DISCUSSION

Read liberally, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96 (1972), the complaint states claims under the Fourth Amendment, *see Bell v. Wolfish,* 441 U.S. 520, 558–60, 99 S.Ct. 1861, 1864–65 (1979), and Eighth Amendment, *cf. Goff v. Nix,* 803 F.2d 358, 371 (8th Cir.1986), *cert. denied,* 484 U.S. 835, 108 S.Ct. 115 (1987), against defendant Butts. The plaintiff also states a claim against defendant Trammel, who allegedly ordered some of the actions taken by Butts. *See Black v. United States,*

Case 9:15-cv-01485-MAD-DEP    Document 99    Filed 02/16/18    Page 99 of 109

Schmidt v. Trenmei, Not Reported in F.Supp. (1995)

1995 WL 6250

534 F.2d 524, 527–28 (2d Cir.1976); *Home Indemnity Co. v. Brennan,* 430 F.Supp. 828, 832–33 (S.D.N.Y.1977). [4]

However, the court concludes that no genuine issues of fact exist in this case sufficient to survive defendants' summary judgment motion. Although Ms. Schmidt apparently contests the defendants' version of the incidents of September 13 and 16, "issues of credibility sufficient to defeat a motion for summary judgment are not created if the contradicting or impeaching evidence is too incredible to be believed by reasonable minds." *Price v. Worldvision Enterprises, Inc.,* 455 F.Supp. 252, 266 n. 25 (S.D.N.Y.1978) (quotation marks and citation omitted), *aff'd without opinion,* 603 F.2d 214 (2d Cir.1979); *accord, Schneider v. OG & C Corp.,* 684 F.Supp. 1269 (S.D.N.Y.1988); *see Topp–Coca Cola Co. v. Coca–Cola Co.,* 185 F.Supp. 700, 708 (S.D.N.Y.1960) ( "But this does not mean that any plaintiff, armed with a complaint barely sufficient to survive a motion to dismiss, can force a defendant to a protracted trial merely by suggesting that the defendant's affidavits may be false. Such a rule would make a mockery of the summary judgment procedure under Rule 56."). No reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in Ms. Schmidt's complaint or in her subsequent missives to the court.

**\*4** The search procedures described by the defendants are, in light of *Wolfish,* unquestionably within the bounds of the Fourth Amendment. Nor is there any basis to believe that Butts, in violation of the Eighth Amendment, used excessive force when searching Schmidt or acted with a wanton state of mind. *See Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995 (1992); *Davidson v. Flynn,* 32 F.3d 27, 29–30 (2d Cir.1994). Summary judgment in favor of all defendants thus is granted.

SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 6250

Footnotes

1    "Paranoid features" describe "an individual who feels that other people are after them, other people are out to in some way do them harm or to in some way injure them, either physically or emotionally." *Id.* at 674. "Narcissistic features" describe "an individual who thinks that they are a very special person. They usually resent being evaluated in any way by other people. They usually tend more to their own feelings and their own needs even at the expense of the feelings and needs of other people...." *Id.* at 673. "Anti-social features" describe "a person willing to break rules, who is willing to do what they want even though they know it not what society expects of them." *Id.*

2    Beginning in January 1992, plaintiff on request received prescriptions for daily doses of Prozac and Clonopin to stabilize her mood and help her cope with the stresses of imprisonment. Sadowski Decl.Ex. B at 748–49. After a brief stint on lithium instead of Prozac in January 1993, *see* Raia Decl.Ex. J, plaintiff's daily dosages of Prozac were resumed by order of this court, *id.* Ex. K.

3    Notably, plaintiff did not inform the officers investigating the September 13 pat-down search that defendant Butts had squeezed her breasts or probed her vagina. Instead, she stated that Butts "patted" her breasts and crotch, and that she felt this conduct was inappropriate. *See id.* Ex. A at 2.

4    Even a generous reading of the complaint does not suggest any violation of plaintiff's civil rights by defendant Raia. Plaintiff unquestionably has a right to "meaningful access to the courts" to complain of abuses suffered while incarcerated, and "meaningful access" includes access to trained legal staff, law libraries or "other forms of legal assistance" in order to learn more about available legal remedies. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491 (1977). It should be emphasized that the concept of "meaningful access" envisioned in *Bounds* is a flexible one with no *per se* requirements. 430 U.S. at 830–32, 97 S.Ct. at 1499–1500; *see Bellamy v. McMickens,* 692 F.Supp. 205, 214 (S.D.N.Y.1988). Access to a particular staff attorney, on demand, is not mandated.

End of Document                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Shapard v. Attea, --- Fed.Appx. ---- (2017)

2017 WL 4548439

2017 WL 4548439
Only the Westlaw citation is currently available.
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals,
Second Circuit.

Christopher SHAPARD, Plaintiff-Appellant,
v.
John ATTEA, Correction Officer, Edwin
Mendez, Correction Officer, Robert Kyle,
Correction Officer, Defendants-Appellees,
Al Herdzik, Lieutenant, Martin Kearney, Captain,
Anthony Zon, Superintendent, Robert A.
Kirkpatrick, Superintendent, Thomas Schoellkopf,
Commissioner's Hearing Officer, Donald Selsky,
Director, Special Housing Unit, Defendants.

16-3764
|
October 12, 2017

**Synopsis**
**Background:** State inmate brought action against three
corrections officers, alleging that they used excessive force
in violation of § 1983 and the Eighth Amendment. The
United States District Court for the Western District of
New York, Siragusa, J., 2016 WL 4001362, sua sponte
dismissed the claims, on grounds that they were barred by
the *Heck* doctrine. Inmate appealed.

**[Holding:]** The Court of Appeals held that *Heck* doctrine
did not bar excessive force claims since a favorable

adjudication of those claims would not necessarily imply
the invalidity of inmate's prior assault conviction.

Vacated and remanded.

West Headnotes (1)

[1]    **Civil Rights**
       👉 Use of force;protection from violence
       State inmate's § 1983 excessive force claims
       against three corrections officers was not
       barred by the *Heck* doctrine, even though
       inmate was convicted of assaulting one of the
       officers during same incident, since favorable
       adjudication of excessive force claims would
       not necessarily imply the invalidity of his
       prior assault conviction; inmate's plausible
       claim of excessive force could be reconciled
       with his assault of corrections officer, since
       elements of excessive force and second degree
       assault under state law were not incompatible,
       and inmate's complaint did not deny that he
       assaulted the corrections officer. U.S. Const.
       Amend. 8; 42 U.S.C.A. § 1983; N.Y. Penal
       Law § 120.05(7).

       Cases that cite this headnote

Appeal from a judgment of the United States District
Court for the Western District of New York (Siragusa, J.).
**\*1  UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED AND DECREED** that the
judgment of the district court is **VACATED** and
**REMANDED**.

**Attorneys and Law Firms**

FOR    APPELLANT:    LUKE    X.    FLYNN-
FITZSIMMONS, (Cameron S. Friedman, on the brief),
Paul, Weiss, Rifkind, Wharton & Garrison LLP, New
York, NY.

FOR APPELLEES: PATRICK A. WOODS (Barbara
D. Underwood, Solicitor General, Andrea Oser, Deputy
Solicitor, General, on the brief), Assistant, Solicitor

General, for Eric T. Schneiderman, Attorney General of the State of New York, New York, NY.

PRESENT: DENNIS JACOBS, JOSÉ A. CABRANES, RICHARD C. WESLEY, Circuit Judges.

**Opinion**

### SUMMARY ORDER

Christopher Shapard, an inmate in the New York State prison system, appeals the district court's sua sponte dismissal of his claims against defendants-appellees, three corrections officers at the Wende Correctional Facility. [1] Shapard alleged that the officers used excessive force in violation of 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution. The United States District Court for the Western District of New York (Siragusa, J.) dismissed the claims, ruling that they were barred by Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Shapard's complaint, filed pro se in 2008, alleges that on June 7, 2005, the three officers punched and kicked him and beat him with a baton, causing serious physical injuries that required medical treatment. The complaint alleges excessive force in retaliation for grievances Shapard had filed. The complaint also states that prison officials found after a hearing that Shapard had initiated the incident by assaulting one of the officers, John Attea. The complaint itself neither admits nor denies this finding. However, attached to the complaint are various documents that were produced in connection with the incident (including Shapard's grievance submissions and records from the prison disciplinary process), some of which reflect Shapard's contemporaneous denial of wrongdoing. In addition, during his deposition in 2010, Shapard (who was not represented by counsel at the time) denied assaulting Officer Attea.

After the altercation with the officers (but before bringing the present suit), Shapard was charged with second degree assault, in violation of N.Y. Penal Law § 120.05(7). He pleaded guilty, and admitted that "on or about June 7th of the year 2005 [he] was in the Wende Correctional Facility ... and while therein set in forth actions that ultimately led to the injury of ... Correction Officer

John Attea." App'x at 1137-38. Shapard later made an unsuccessful attempt to withdraw his plea and vacate his conviction.

In 2015, approximately five years after the deadline for dispositive motions in Shapard's § 1983 action, the officers moved for leave to file a motion for summary judgment, arguing that Shapard's excessive force claims were barred by Heck because they conflicted with his guilty plea. Defense counsel explained that he "previously failed to recognize the law related to [Shapard's] plea of guilty to assaulting Attea and the ramifications such plea would have on the trial." App'x at 961. The district court found no good cause for the delay and denied the motion. The court nonetheless dismissed Shapard's claims sua sponte. It ruled that although "Heck does not necessarily bar excessive force claims where the plaintiff was convicted of assaulting officers during the same incident[,]" Shapard's version of the facts "clearly impl[ies] the invalidity of his assault conviction, which has not been set aside, and consequently [his claims] are barred by Heck[.]" Shapard v. Attea, No. 08-CV-6146 (CJS), 2016 WL 4001362, at *4–*5 (W.D.N.Y. July 26, 2016), reconsideration denied, 2016 WL 5871360 (W.D.N.Y. Oct. 7, 2016).

**\*2** We review de novo a district court's sua sponte dismissal of claims, accepting the facts alleged in the complaint as true and drawing all inferences in the plaintiff's favor. See Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). To withstand dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). We will reverse the dismissal if "a liberal reading of the complaint gives any indication that a valid claim might be stated." Larkin v. Savage, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam).

Under Heck, a claim that, if successful, would "necessarily imply the invalidity" of the plaintiff's prior state conviction is "not cognizable under § 1983" unless that conviction has already been invalidated. Heck, 512 U.S. at 487, 114 S.Ct. 2364. Shapard's excessive force claims are not Heck-barred because their favorable adjudication would not "necessarily imply the invalidity" of his prior assault conviction. First, the elements of excessive force and second degree assault under N.Y. Penal Law § 120.05(7) are not incompatible. [2] See Griffin v. Crippen, 193 F.3d 89, 92 (2d Cir. 1999) (holding that

appellant's conviction for assaulting prison guards was not incompatible with finding that guards responded with excessive force); Gilbert v. Cook, 512 F.3d 899, 901 (7th Cir. 2008) ("A contention that a guard struck back after being hit is compatible with Heck.").

Second, the complaint does not deny that Shapard assaulted Officer Attea. Although attachments to the complaint reflect Shapard's previous denials, the complaint does not necessarily adopt those denials (which were made years earlier, before Shapard pleaded guilty). A complaint does not necessarily adopt the statements contained in its attachments. See Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 675 (2d Cir. 1995) (holding that "[i]t was [ ] error for the district court to assume that plaintiffs' complaint adopted" the statements made in an attachment). It is improper to assume adoption when the complaint was filed pro se and the assumption results in dismissal. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (requiring that "submissions of a pro se litigant [ ] be construed liberally and interpreted to raise the strongest arguments that they *suggest*" because courts have an "obligation ... to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training" (citations and quotation marks omitted)).

Shapard's claims do not depend on the invalidity of his assault conviction. His counsel (who was retained in February 2014) argued at a March 2014 court conference that although Shapard believed that he did not assault Officer Attea, the use of force applied by the officers would have been excessive even if he had. Shapard reiterated this argument in response to the officers' motion for leave to file for summary judgment:

> **\*3** Plaintiff is aware that the res judicata effect of his guilty plea may prevent him from testifying as to whom initiated the incident that is the subject of this action. However, nothing in Plaintiff's guilty plea or allocution precludes him from testifying as to what happened next, including testifying as to force used against him by the Defendants and testifying as to the injuries he sustained.

App'x at 1279.

Shapard's plausible claim of excessive force can be reconciled with his assault of Officer Attea, and is therefore not barred by Heck. On remand, the district court may take appropriate steps to prevent Shapard from disputing the assault, including limiting his testimony and instructing a jury that he assaulted Officer Attea. See Gilbert, 512 F.3d at 902 ("It would have sufficed to tell the jurors that Gilbert struck the first blow during the fracas at the chuckhole, that any statements to the contrary by Gilbert (as his own lawyer) or a witness must be ignored, and that what the jurors needed to determine was whether the guards used more force than was reasonably necessary to protect themselves from an unruly prisoner.").

For the foregoing reasons, we hereby **VACATE** the judgment of the district court and **REMAND** for further proceedings.

**All Citations**

--- Fed.Appx. ----, 2017 WL 4548439

---

Footnotes

1    Shapard also brought claims against other prison officials. Those claims were dismissed on separate grounds and are not at issue in this appeal.

2    The elements of second degree assault under N.Y. Penal Law § 120.05(7) are: (1) while confined in a correctional facility, (2) after having been charged with or convicted of a crime, (3) an individual causes physical injury to another person, (4) with intent to cause such injury. See N.Y. Penal Law § 120.05(7). To state a claim for excessive force, an inmate must establish that a prison official applied force "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." Hudson v. McMillian, 503 U.S. 1, 6, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

---

End of Document                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:15-cv-01485-MAD-DEP    Document 99    Filed 02/16/18    Page 103 of 109
Simmons v. Officer Carriero, Not Reported in F.Supp.2d (2000)

2000 WL 432793

2000 WL 432793
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Bobby SIMMONS, Plaintiff,
v.
Officer Donald CARRIERO, Officer Tobias
and Officer Gregory Stachowski, Defendants.

No. 95-CV-1078E(F).
|
April 17, 2000.

**Attorneys and Law Firms**

Bobby Simmons, Elmira, NY, Timothy P. Blodgett,
Harris and Chesworth, Rochester, NY, for the Plaintiff.

Michael A. Siragusa, Assistant Attorney General for
NYS, Buffalo, NY, for the Defendant.

**Opinion**

MEMORANDUM and ORDER

ELFVIN, J.

 **\*1** Plaintiff commenced this 42 U.S.C. § 1983 action
asserting that defendants violated his civil rights
September 23, 1995 by using excessive force and subjecting
him to cruel and unusual punishment when they physically
assaulted and attempted to restrain him while he was
in custody of the State of New York at the Attica
Correctional Facility. Presently before the undersigned is
defendants' motion for summary judgment made pursuant
to Rule 56 of the Federal Rules of Civil Procedure
("FRCvP"). For the reasons that follow, that motion will
be granted.

Preliminarily, it must be noted that - although both parties
have complied with FRCvP 56 and Rule 56 of this Court's
Local Rules of Civil Procedure -the materials which have
been submitted are little more than a reiteration of facts
and defenses contained within the Amended Complaint
and the Answers thereto. The present record does not
contain supporting and opposing affidavits made on
personal knowledge, does not contain records of any
depositions that may have taken place and does not
even include answers to any interrogatories that may

have been served. In short, the present motion might
best be characterized as a motion for judgment on the
pleadings made pursuant to FRCvP 12(c). Nevertheless,
inasmuch as the parties have been given an opportunity to
present materials outside the pleadings and inasmuch as
the present motion has procedurally been treated as one
for summary judgment, the standards of FRCvP 56 shall
apply.

Summary judgment "shall be rendered forthwith if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any,
show there is no genuine issue as to any material fact and
that the moving party is entitled to a judgment as a matter
of law." FRCvP 56(c). In making this determination,
"evidence of the non-movant is to be believed, and
all justifiable inferences are to be drawn in his favor."
Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). If
"there is any evidence in the record from any source from
which a reasonable inference could be drawn in favor of
the nonmoving party, summary judgment is improper."
Chambers v. TRM Copy Ctr. Corp., 43 F.3d 29, 37 (2d
Cir.1994). The existence of a mere scintilla of evidence
in support of the non-movant's position is insufficient,
however, as there must be evidence on which a jury
could return a verdict in his favor. Anderson, at 248-249;
Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S.
574, 587 (1986).

The parties in the present matter offer two dramatically
different views of the events that transpired September
23, 1995. According to plaintiff, while standing outside
his cell in anticipation of taking a "keeplock shower,"
defendant Carriero - a correctional officer employed at
plaintiff's place of incarceration - approached plaintiff and
began striking him without provocation. Am. Compl. ¶¶
25-42; Plaintiff's Statement ¶ 1. When plaintiff attempted
to retreat from this attack, defendants Tobias and
Stachowski - also correctional officers employed at that
place - joined in the melee and inflicted additional harm.
Am. Compl. ¶ 43; Plaintiff's Statement ¶ 2. Plaintiff
claims that he pleaded "with them to stop causing
unnecessary and wanton infliction of pain and harm" -
Am. Compl. at ¶ 44 - and disputes defendants' contention
that he was loud and belligerent immediately prior to
the altercation. Plaintiff's Statement ¶¶ 9, 10. As a result
of this attack, plaintiff suffered injury. Am. Compl.
¶ 49; Plaintiff's Statement ¶ 6. On the other hand,
defendants maintain that, when Carriero "let plaintiff

out of his cell for a keeplock shower, * * * plaintiff became loud and belligerent and without provocation * * * struck Officer Carriero." Defendants' Statement ¶ 8. Defendants also state that during this altercation plaintiff "kicked responding [Officer] Stachowski and also kicked responding [O]fficer Tobias." *Id.* at ¶ 9.

**\*2** As a result of this incident, plaintiff was issued a misbehavior report September 29, 1995 charging him with violating New York Department of Corrections Rules 100.11 (assault on staff) and 104.11 (violent conduct). Defendants' Statement ¶ 3. Such misbehavior report states, in part, that plaintiff "in a loud and belligerent manner began protesting * * * shower procedures * * * [and] [w]ithout provocation * * * struck [Officer Carriero] in the facial area" and that the other responding officers were "kicked" before plaintiff could be restrained. Siragusa, Esq., Aff. Ex. C. A disciplinary hearing was then held September 29, 1995 at which plaintiff was found guilty of the charges set forth in the misbehavior report. Defendants' Statement ¶ 6. In rendering the decision, the hearing officer accepted as true and relied upon the account of the incident given by the officers as set forth in the misbehavior report. *Id.* at ¶¶ 13, 14. As punishment, plaintiff was sentenced to 180 days in the Special Housing Unit, 180 days' loss of telephone privileges, 180 days' loss of packages and three months' loss of good-time credits. *Id.* at ¶ 15. Plaintiff appealed this determination pursuant to the provisions of Article 78 of New York's Civil Practice Law and Rules but was denied relief November 19, 1997 - Blodgett, Esq., Aff. Ex. C. - and his conviction has since not been overturned, expunged by executive order or declared invalid. Defendant's Statement ¶ 16. Plaintiff was also released before he could initiate a suit for federal habeas corpus relief. Plaintiff's Statement ¶ 12.

Defendants have moved for summary judgment based on their contention that a judgment in favor of plaintiff in this section 1983 action would imply the invalidity of the disciplinary determination and that therefore this case should be dismissed pursuant to *Edwards v. Balisok,* 520 U.S. 641 (1997), and *Heck v. Humphrey,* 512 U.S. 477 (1994). *Heck* held that "in order to recover damages for * * * harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a

federal court's issuance of a writ of habeas corpus." *Heck,* at 486-487. This requires a determination of "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. However, if "the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.* In *Edwards* the rule announced in *Heck* was elucidated and it was held that, when a section 1983 action necessarily implies the invalidity of a punishment imposed at a prison disciplinary hearing, such a claim is not cognizable even where the prisoner does not challenge the actual outcome of the hearing. *Edwards,* at 648. Nevertheless, the Second Circuit Court of Appeals has cautioned that a " § 1983 suit by a prisoner * * * challenging the validity of a disciplinary or administrative sanction that does not affect the overall length of the prisoner's confinement [such as a suit challenging the 'conditions of confinement'] is not barred by *Heck* and *Edwards." Jenkins v. Haubert,* 179 F.3d 19, 27 (2d Cir.1999). Plaintiff states that the instant action is not so barred inasmuch as he is not challenging the length of his confinement but rather the conditions of his incarceration.

**\*3** While normally such genuine issues of fact would preclude the grant of summary judgment, this Court agrees with defendants that *Heck* and its progeny bar consideration of the instant claims because a successful prosecution of plaintiff's section 1983 action would necessarily imply that the disciplinary hearing determination - which resulted in the loss of good-time credits - was in error. Regardless of how this action is factually characterized, for plaintiff to succeed the trier of fact would have to accept plaintiff's version of the incident which is in direct contradiction to the version relied upon and adopted at the disciplinary hearings. As set forth in the Amended Complaint, accepting plaintiff's version of the altercation requires - *inter alia* - the trier of fact to find that plaintiff did not strike without provocation Officer Carriero or otherwise proceed to assault other members of the Attica correctional staff. Indeed, not only would such a finding undermine the facts as determined during the disciplinary hearings, it would also necessarily imply that the officers fabricated the charges contained in the misbehavior report and for which

plaintiff was found guilty. In short, because plaintiff's action calls into question the validity of the result of his disciplinary hearing - a result which has not been reversed or invalidated -, the instant claims are not cognizable. *See, e.g., Jayne v. Kozak,* 10 F. Supp .2d 1032 (C.D.Ill.1998); *Crooms v. Mercado,* 955 F.Supp. 985 (N .D. Ill.1997); *see also Hudson v. Hughes,* 98 F.3d 868, 973 (5th Cir.1996) (noting that because under state law self-defense is a justification defense to the crime of battery, allowing the plaintiff's section 1983 claim of excessive force during arrest to succeed would necessarily imply the invalidity of his conviction for battery of an officer).

Accordingly, it is hereby *ORDERED* that defendants' motion for summary judgment is granted and that this case shall be closed.

**All Citations**

Not Reported in F.Supp.2d, 2000 WL 432793

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 729730
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Rodney WIGGINS, Plaintiff,

v.

Carlos FIGUEROA and Brian Ferrick, Defendants.

No. 13–CV–1731(JS)(SIL).
|
Signed Feb. 18, 2015.

**Attorneys and Law Firms**

Rodney Wiggins, Gouverneur, NY, pro se.

Richard H. Yorke, Esq., Benjamin Rodkin, Esq., New York State Attorney General's Office, Mineola, NY, for Defendants.

**Opinion**

*MEMORANDUM & ORDER*

SEYBERT, District Judge.

**\*1** Plaintiff Rodney Wiggins ("Plaintiff") commenced this action on March 23, 2013 pursuant to 42 U.S.C. § 1983 claiming that Defendants violated his Eighth Amendment rights against the use of excessive force during a confrontation in an elevator on March 7, 2013. Pending before the Court is defendants Carlos Figueroa ("Figueroa") and Brian Ferrick's ("Ferrick" and together with Figueroa, "Defendants") motion to dismiss the Complaint. (Docket Entry 20.) For the foregoing reasons, Defendants' motion is GRANTED.

*BACKGROUND*

I. *Conversion to Summary Judgment*
Defendants' motion to dismiss relies heavily upon sworn statements made during Plaintiff's plea allocution hearing. (*See* Plea Hearing Transcript, Docket Entry 20–3 ("Plea Hr'g Tr .").) Since the motion relies on information outside of the pleadings, the Court must first address whether to treat Defendants' motion as a motion to dismiss or as a motion for summary judgment. The

Second Circuit has held that "[w]hen a motion to dismiss presents material outside the pleadings, a district court may convert the motion into one for summary judgment provided that the non-moving party receives notice and an opportunity to respond." *Cancel v. Amakwe,* 551 F. App'x 4, 5 (2d Cir.2013) (citations omitted). In addition, Local Civil Rule 12.1 requires a represented party, who moves to dismiss against a *pro se* party and who relies on matters outside the pleadings, to serve and file a form notice advising the *pro se* party that the complaint may be dismissed if the *pro se* litigant does not respond to the motion "by filing sworn affidavits as required by Rule 56(c) and/or other documents." LOCAL CIV. R. 12.1.

Here, the Court will exercise its discretion to convert Defendants' motion to dismiss to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Conversion is proper because Defendants provided Plaintiff with a Local Civil Rule 12.1 notice. *See Hernández v. Coffey,* 582 F.3d 303, 308 n. 2 (2d Cir.2009) (citing cases holding that a Local Civil Rule 12.1 notice provides sufficient notice to *pro se* parties that the motion to dismiss may be converted to one for summary judgment).

II. *Factual Background*
Plaintiff alleges that on March 7, 2013, following an appearance in court, he was traveling in an elevator with Defendants Figueroa and Ferrick. (Compl.¶ IV.) Plaintiff was restrained by handcuffs, leg irons, and a belly strap with two padlocks. (Compl.¶ IV.) Plaintiff alleges that he asked Figueroa to tell him the date of his next court appearance and Figueroa ordered Plaintiff in a "high tone" to face the wall. (Compl.¶ IV.) Plaintiff obeyed, but as he turned around he began "giggling." (Compl.¶ IV.) Plaintiff alleges that Defendants then pulled him down by his leg irons causing him to hit his face on the elevator floor. Ferrick then purportedly held Plaintiff down while Figueroa repeatedly punched Plaintiff in the face. (Compl.¶ IV.) Plaintiff claims that when the elevator "got stuck" he commented that he thought Figueroa was a "big guy" because he was "beating someone who [could not] fight back." (Compl.¶ IV.) Figueroa then allegedly started punching Plaintiff in the face again, causing Plaintiff's nose to bleed. Following the event, Plaintiff went to the hospital. (Compl.¶ IV(a).) Plaintiff claims that his nose was bleeding, his eye was swollen, and that he had "shirt burn marks" on his back. (Compl.¶ IV(a).)

**\*2** On May 3, 2013, Plaintiff appeared before Justice Mark D. Cohan in Suffolk County Criminal Court and pleaded guilty to two counts of Assault in the Second Degree. (Plea Hr'g Tr. at 1, 20:9–22.) Plaintiff testified that he was brought to the Suffolk County criminal courthouse for an appearance on March 7, 2013. (Plea Hr'g Tr. at 16.) Following the appearance Plaintiff admitted riding in an elevator escorted by Defendants. (Plea Hr'g Tr. at 16:18–22.) Plaintiff then made the following admissions about what happened in the elevator:

> [THE PROSECUTOR]: And in an attempt to prevent Court Officers Brian Ferrick and Carlos Figueroa from transporting you back to the jail from which you were brought, did you lunge at them in the elevator, kicking them and elbowing them?
>
> ...
>
> THE DEFENDANT: Yes.
>
> [THE PROSECUTOR]: And did you lunge at those officers, kicking them and elbowing them in an attempt to prevent them from moving you back to the jail where they directed you to?
>
> THE DEFENDANT: Yes.
>
> [THE PROSECUTOR]: And are you now aware that your actions on that day caused injuries to both of those officers, specifically with regard to Officer Ferrick, an elbow injury as well as abrasions and swelling and bruising?
>
> THE DEFENDANT: Yes.
>
> [THE PROSECUTOR]: Are you aware that your actions caused injury to Officer Figueroa, specifically, a broken hand and a damaged knee for which he had to have surgery on?
>
> THE DEFENDANT: Yes.

(Plea Hr'g Tr. at 17:9–18:11.) After admitting to assaulting Defendants, Plaintiff pleaded guilty to Assault in the Second Degree, among other charges, and waived his right to appeal. (Plea Hr'g Tr. at 21:23–22:1; 22:2–22.)

### III. *Procedural History*

Defendants now moves to dismiss. Plaintiff chose not to oppose Defendants' motion even though the Court granted Plaintiff two additional months to submit an opposition. (*See* Minute Entry, Docket Entry 22.) The Court, in its discretion, has converted Defendants' motion to dismiss into a motion for Summary Judgment.

### *DISCUSSION*

The Court will first address the applicable legal standard before turning to the merits of Defendants' motion.

### I. *Legal Standard*

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir.1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." *Id .; see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.' " *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) quoting *Anderson,* 477 U.S. at 256). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986); *see also Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); *Weinstock,* 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

## II. *Defendants' Motion*

**\*3** Defendants argue that Plaintiff's case must be dismissed under the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994) because Plaintiff admitted, in connection with his plea, that he was the aggressor in the altercation with Defendants and that he attempted to prevent Defendants from executing their duty to transport him back to jail. (Defs.' Br., Docket Entry 20–2 at 17.) Defendants assert that because Plaintiff's admissions contradict the allegations of the Complaint, which paints Plaintiff as a helpless victim of assault, his excessive force claim must be dismissed. The Court agrees.

In *Heck v. Humphrey,* the Supreme Court held that:

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck v. Humphrey,* 512 U.S. at 487. Thus, under *Heck,* if a judgment in Plaintiff's favor would invalidate the Plaintiff's previous criminal conviction, his § 1983 suit must be dismissed. In *Douglas v. Smith,* No. 05–CV–1000, 2009 WL 789450, at \*2 (N.D.N.Y. Mar. 20, 2009), the court held that *Heck* barred a § 1983 excessive force claim when the allegations in the complaint directly contradicted admissions the plaintiff made in connection with his criminal plea. There, the plaintiff alleged that his Eighth Amendment rights were violated by a prison guard who assaulted him. *Id.* at \*1. Specifically, the plaintiff claimed that the guard punched him in the face repeatedly as he tried to defend himself. *Id.* Following the altercation, however, the inmate was charged with assaulting the prison guard and pleaded guilty to the lesser charge of attempted assault. *Id.* During his plea allocution hearing, the plaintiff admitted that he "intended to prevent [the guard] from performing his lawful duty by attempting the cause [the guard] physical injury." *Id.* at \*2. The inmate's guilty plea was upheld on appeal. Nevertheless, the inmate sued the prison guard under § 1983 for violating his Eighth Amendment rights. The court granted summary judgment

dismissing the case under *Heck* because the inmate's allegations "directly contradict[ed] his conviction based on his allocution and plea." *Id.* The court explained that "if [the inmate's] current version of the relevant facts were accepted, [the guard] would not have become performing a lawful duty and [the inmate's] plea would become invalid." *Id.; see also Dye v. Virts,* No. 03–CV–6273, 2004 WL 2202638, at \*4 (W.D.N.Y. Sept.28, 2004) (dismissing a § 1983 assault claim under *Heck* because if the plaintiff were to prevail "it would necessarily negate elements of the offense for which he was convicted"). *But see Harley v. Suffolk Cnty. Police Dep't,* No. 09–CV–2897, 2012 WL 642431, at \*9 (E.D.N.Y. Feb.28, 2012) ("Plaintiff's conviction does not preclude her ability to show that even if she assaulted officers at some point during the arrest, their alleged force was still excessive.").

**\*4** Here, as in *Douglas* and *Dye,* Plaintiff pled guilty to assaulting the very same officers he now claims attacked him without provocation. Plaintiff specifically pled guilty to two counts of Assault in the Second Degree (*see* Plea Hr'g Tr. at 20:922.) pursuant to N.Y. Penal Law § 120.05(3) for causing physical injuries to Defendants "with intent to prevent [them] ... from performing a lawful duty." N.Y. PENAL LAW § 120.05(3). Plaintiff admitted during his plea allocution that Defendants were performing their lawful duty by escorting Plaintiff back to jail and that Plaintiff "lunge[ed] at [the Defendants in the elevator], kicking them and elbowing them in an attempt to prevent them from moving [him] back to the jail." (Plea Hr'g Tr. at 17:9–21.) Conversely, in the Complaint, Plaintiff claims that Defendants initiated the altercation by dragging him to the floor by his shackles and punching him repeatedly. (*See* Compl. ¶ IV.)

Plaintiff's § 1983 excessive force claim cannot stand in light of his plea to Assault in the Second Degree. A judgment in Plaintiff's favor would invalidate his criminal conviction because it would negate two required elements of the crime, namely: (1) that Defendants were performing a lawful duty, and (2) that Plaintiff intended to prevent Defendants from performing their lawful duty. *See* N.Y. PENAL LAW § 120.05(3). Therefore, under *Heck,* a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction." Heck, 512 U.S. at 487. Moreover, since Plaintiff knowingly waived his right to appeal, he cannot show that his criminal conviction has been invalidated.

This case is distinguishable from decisions in this Circuit allowing Eighth Amendment claims to proceed notwithstanding the Plaintiff's criminal conviction. *See, e.g., Griffin v. Crippen,* 193 F.3d 89, 90 (2d Cir.1999); *Kuar v. Mawn,* No. 08–CV–4401, 2011 WL 838911, at *10 (E.D.N.Y. Mar.4, 2011). Notably, the Second Circuit's decision in *Griffin v. Crippen* distinguishable. There, the Second Circuit found that even though the plaintiff's excessive force allegations concerning an altercation were "thin," genuine issues of material fact existed with respect to "what transpired after [the plaintiff] was handcuffed and whether the guards maliciously used force against him." *Griffin,* 193 F.3d at 91. There, the plaintiff claimed that the police assaulted him then "faked injuries or inflicted injuries on themselves to cover up their misconduct." *Id.* at 90. However, the plaintiff had pleaded guilty to criminally assaulting the officers. *Id.* When he was questioned about the incident at the pre-trial hearing, however, the plaintiff maintained that "he did not assault the guards and that he was hit by the guards after he was handcuffed." *Id.* at 90–91. The Second Circuit denied summary judgment finding that issues of fact precluded a finding in the defendants' favor. *Id.* at 91–92. Unlike the facts of *Griffin,* Plaintiff's version of events are completely irreconcilable with his sworn statements establishing his guilty plea to Assault in the Second Degree. Moreover, Plaintiff has not submitted additional evidence or testimony to refute his sworn statements, despite being on notice of Defendants' motion and

having six months to respond. Thus, allowing Plaintiff to proceed with his § 1983 suit would invalidate his criminal conviction under Heck. Plaintiff's Eighth Amendment claims therefore must be dismissed. [1]

*CONCLUSION*

**\*5** For the forgoing reasons, Defendants' motion to dismiss the Second Amended Complaint (Docket Entry 20) is GRANTED and Plaintiff's § 1983 claims are DISMISSED WITH PREJUDICE.

The Court certifies that pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and in forma pauperis status is therefore DENIED for the purpose of any appeal. See *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The Clerk of the Court is directed to mark this matter CLOSED and to mail a copy of this Memorandum and Order to *pro se* Plaintiff.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 729730

---

Footnotes

1    Since the court finds that Plaintiff's lawsuit must be dismissed as a matter of law under the Supreme Court's decision in *Heck v. Humphrey,* it need not rule on any of Plaintiff's additional grounds for dismissal.

---

**End of Document**                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.